**Honorable Robert S. Lasnik**
**Trial Date: Not Set**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| ALEXANDRA TABER, ALEXANDRA TABER AS GUARDIAN OF LT | NO. NO. C20-1633RSL |
| PLAINTIFF, | |
| vs. | |
| CASCADE DESIGNS, INCORPORATED, DAVID BURROUGHS, JOHN BURROUGHS, JOHN GEVAERT, JAMES COTTER, ERIC HOBBS, STEVE MCCLURE, HARRY ROSS, JANE/JOHN DOES 1 THROUGH 10, AND THE MARITAL COMMUNITY OF EACH NON-BUSINESS DEFENDANT, CASCADE DESIGNS, INC. OPEN ACCESS PLUS IN-NETWORK MEDICAL BENEFITS, CASCADE DESIGNS, INC. WELFARE BENEFITS PLAN | **SECOND AMENDED COMPLAINT** (Jury Trial Requested) |
| DEFENDANTS. | |

## I.    PARTIES

Plaintiff Alexandra Taber

SECOND AMENDED COMPLAINT-1
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

1.1     From before January 1, 2017 to July 17, 2019, Defendant CDI, Incorporated ("**CDI**") employed Plaintiff Alexandra Taber ("**Taber**").

1.2     On July 17, 2019, Taber was a plan participant within the meaning of 29 U.S.C.A. § 1002(7) in the healthcare plan entitled "Cascade Designs, Inc. Open Access Plus In-Network Medical Benefits" (the "**Healthcare Plan**").

<u>Plaintiff Alexandra Taber as Guardian of LT</u>

1.3     Taber is the mother and legal guardian of LT, who is a minor.

1.4     On July 17, 2019, LT was a plan participant in the Healthcare Plan within the meaning of 29 U.S.C.A. § 1002(7).

<u>Cascade Designs, Incorporated</u>

1.5     Cascade Designs, Incorporated registered as a corporation with the Washington Secretary of State on April 24, 1972 and was so incorporated until the present.

1.6     From April 24, 1972 to the present, CDI operated under UBI number 600 069 796, was located at 4000 1st Ave S, Seattle, WA 98134-2301, and had a mailing address at 4000 1st Ave S, Seattle, WA 98134-2301.

1.7     From June 1, 2017 to the present, CDI conducted business at 4000 1st Ave S, Seattle, WA 98134-2301.

1.8     From June 1, 2017 to the present, CDI registered with the Washington Secretary of State Defendant David Burroughs at 4000 1st Ave S, Seattle, WA 98134-2301 with the same mailing address.

1.9     From July 1, 2019 to the present, CDI was the plan sponsor within the meaning of 29 U.S.C.A. § 1002(16)(B) of in the Healthcare Plan

SECOND AMENDED COMPLAINT-2
NO. C20-1633RSL

1.10    From July 1, 2019 to the present, CDI was the plan administrator within the meaning of 29 U.S.C.A. § 1002(16) of in the Healthcare Plan.

1.11    From July 1, 2019 to the present, CDI exercised discretionary authority or control over the management of the Healthcare Plan.

<u>David Burroughs</u>

1.12    From June 1, 2017 to the present, Defendant David Burroughs was a Vice Chairman of the Board of CDI.

1.13    From June 1, 2017 to the present, Defendant David Burroughs was the President of CDI.

1.14    From June 1, 2017 to the present, Defendant David Burroughs was an owner and shareholder of CDI.

1.15    From June 1, 2017 to the present, Defendant David Burroughs served as a governor of CDI.

1.16    From June 1, 2017 to the present, Defendant David Burroughs had authority to make financial decisions for CDI.

1.17    From June 1, 2017 to the present, Defendant David Burroughs had authority to decide whether to pay wages to CDI's employees.

1.18    From June 1, 2017 to the present, Defendant David Burroughs had authority to settle all lawsuits against CDI.

<u>John Burroughs</u>

1.19    From June 1, 2017 to the present, Defendant John Burroughs was the Chairman of the Board at CDI.

SECOND AMENDED COMPLAINT-3
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

1.20    From June 1, 2017 to the present, Defendant John Burroughs was the President of CDI.

1.21    From June 1, 2017 to the present, Defendant John Burroughs was an owner and shareholder.

1.22    From June 1, 2017 to the present, Defendant John Burroughs served as a governor of CDI.

1.23    From June 1, 2017 to the present, Defendant John Burroughs had authority to make financial decisions for CDI.

1.24    From June 1, 2017 to the present, Defendant John Burroughs had authority to decide whether to pay wages to CDI's employees.

1.25    From June 1, 2017 to the present, Defendant John Burroughs had authority to settle all lawsuits against CDI.

1.26    Defendant John Burroughs resides at ███████████████████████ ██████████ .

<u>John Gevaert</u>

1.27    From June 1, 2017 to the present, Defendant John Gevaert was a member of the board of governors of CDI.

1.28    From June 1, 2017 to the present, Defendant John Gevaert was the Treasurer of CDI.

1.29    From June 1, 2017 to the present, Defendant John Gevaert was an owner and shareholder of CDI.

1.30    From June 1, 2017 to the present, Defendant John Gevaert served as a governor of CDI.

SECOND AMENDED COMPLAINT-4
NO. C20-1633RSL

1.31    From June 1, 2017 to the present, Defendant John Gevaert had authority to make financial decisions for CDI.

1.32    From June 1, 2017 to the present, Defendant John Gevaert had authority to decide whether to pay wages to CDI's employees.

1.33    From June 1, 2017 to the present, Defendant John Gevaert had authority to settle all lawsuits against CDI.

1.34    Defendant John Gevaert resides at ███████████████████████████.

### James Cotter

1.35    From June 1, 2017 to the present, Defendant James Cotter was the Chairman of the Board of CDI.

1.36    From June 1, 2017 to the present, Defendant James Cotter was an officer of CDI.

1.37    From June 1, 2017 to the present, Defendant James Cotter was an owner and shareholder of CDI.

1.38    From June 1, 2017 to the present, Defendant James Cotter served as a governor of CDI.

1.39    From June 1, 2017 to the present, Defendant James Cotter had authority to make financial decisions for CDI.

1.40    From June 1, 2017 to the present, Defendant James Cotter had authority to decide whether to pay wages to CDI's employees.

1.41    From June 1, 2017 to the present, Defendant James Cotter had authority to settle all lawsuits against CDI.

### Erik Hobbs

SECOND AMENDED COMPLAINT-5
NO. C20-1633RSL

1.42    From June 1, 2017 to the present, Defendant Eric Hobbs was a member of the board of governors of CDI.

1.43    From June 1, 2017 to the present, Defendant Eric Hobbs was a corporate secretary of CDI.

1.44    From June 1, 2017 to the present, Defendant Eric Hobbs was an owner and shareholder of CDI.

1.45    From June 1, 2017 to the present, Defendant Eric Hobbs served as a governor of CDI.

1.46    From June 1, 2017 to the present, Defendant Eric Hobbs served as the Corporate Counsel of CDI

1.47    From June 1, 2017 to the present, Defendant Eric Hobbs had authority to make financial decisions for CDI.

1.48    From June 1, 2017 to the present, Defendant Eric Hobbs had authority to decide whether to pay wages to CDI's employees.

1.49    From June 1, 2017 to the present, Defendant Eric Hobbs had authority to settle all lawsuits against CDI.

1.50    Defendant Eric Hobbs resides at ███████████████████████████

### Steve McClure

1.51    From June 1, 2017 to the present, Defendant Steve McClure was a member of the board of directors of CDI.

1.52    From June 1, 2017 to the present, Defendant Steve McClure was the Chief Financial Officer of CDI.

SECOND AMENDED COMPLAINT-6
NO. C20-1633RSL

1.53    From June 1, 2017 to the present, Defendant Steve McClure was an owner and shareholder of CDI.

1.54    From June 1, 2017 to the present, Defendant Steve McClure served as a governor of CDI.

1.55    From June 1, 2017 to the present, Defendant Steve McClure had authority to make financial decisions for CDI.

1.56    From June 1, 2017 to the present, Defendant Steve McClure had authority to decide whether to pay wages to CDI's employees.

1.57    From June 1, 2017 to the present, Defendant Steve McClure had authority to settle all lawsuits against CDI.

1.58    Defendant Steve McClure resides at ███████████████████.

1.59    Defendant Steve McClure resides at ████████████████████ ███.

<u>Harry Ross</u>

1.60    From June 1, 2017 to the present, Defendant Harry Ross was a member of the board of directors of CDI.

1.61    From June 1, 2017 to the present, Defendant Harry Ross the Human Resources Director at CDI.

1.62    From June 1, 2017 to the present, Defendant Harry Ross was an owner and shareholder of CDI.

1.63    From June 1, 2017 to the present, Defendant Harry Ross served as a governor of CDI.

SECOND AMENDED COMPLAINT-7
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

1.64    From June 1, 2017 to the present, Defendant Harry Ross had authority to make financial decisions for CDI.

1.65    From June 1, 2017 to the present, Defendant Harry Ross had authority to decide whether to pay wages to CDI's employees.

1.66    From June 1, 2017 to the present, Defendant Harry Ross had authority to settle all lawsuits against CDI.

<u>John/Jane Does 1 through 10</u>

1.67    From June 1, 2017 to the present, Defendants Jane/John Doe 1 through 10 had authority to make financial decisions for CDI.

1.68    From June 1, 2017 to the present, Defendants Jane/John Doe 1 through 10 had authority to decide whether to pay amounts CDI's employees claimed as wages.

1.69    From June 1, 2017 to the present, Defendants Jane/John Doe 1 through 10 had authority to settle all lawsuits against CDI.

<u>Cascade Designs, Inc. Open Access Plus In-Network Medical Benefits</u>

1.70    From July 1, 2019 to the present, Cascade Designs, Inc. Open Access Plus In-Network Medical Benefits (the **"Healthcare Plan"**) was the healthcare plan that CDI offered its employees in Washington State.

1.71    From July 1, 2019 to the present, the Healthcare Plan was the plan sponsor within the meaning of 29 U.S.C.A. § 1002(16)(B) of in the Healthcare Plan.

1.72    From July 1, 2019 to the present, the Healthcare Plan was the plan administrator within the meaning of 29 U.S.C.A. § 1002(16)(A) of in the Healthcare Plan.

1.73    From July 1, 2019 to the present, the Healthcare Plan exercised discretionary authority or control over the management of the Healthcare Plan.

SECOND AMENDED COMPLAINT-8
NO. C20-1633RSL

Cascade Designs, Inc Welfare Benefits Plan

1.74    From July 1, 2019 to the present Cascade Designs, Inc Welfare Benefits Plan (the **"Benefits Plan"**) was a benefit plan that CDI offered its employees in Washington State.

1.75    From July 1, 2019 to the present, the Benefits Plan was the plan sponsor within the meaning of 29 U.S.C.A. § 1002(16)(B) of in the Healthcare Plan.

1.76    From July 1, 2019 to the present, the Benefits Plan was the plan administrator within the meaning of 29 U.S.C.A. § 1002(16)(A) of in the Healthcare Plan.

1.77    From July 1, 2019 to the present, the Benefits Plan exercised discretionary authority or control over the management of the Healthcare Plan.

1.78    From July 1, 2019 to the present, the Benefits Plan was governed by a plan description entitled "Cascade Designs, Inc. Welfare Benefits Plan and Summary Plan Description" (the **"Plan Description"**).

1.79    From July 1, 2019 to the present, the Benefits Plan identified itself in the Plan Description as the plan sponsor.

1.80    From July 1, 2019 to the present, the Benefits Plan identified itself in the Plan Description as the plan administrator.

1.81    From July 1, 2019 to the present, the Benefits Plan identified as its "Agent for Service of Legal Process" in the Plan Description the "Financial Controller" of the Benefits Plan with an address for legal service at 4000 1st Ave. S. Seattle, WA 98134-2301.

1.82    From July 1, 2019 to the present, the Benefits Plan identified as its "Agent for Service of Legal Process" in the Plan Description the "Plan Administrator" of the Benefits Plan with an address for legal service at 4000 1st Ave. S. Seattle, WA 98134-2301.

1.83

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

## II.     JURISDICTION AND VENUE

2.1     CDI does business in King County, Washington.

2.2     CDI has offices located in King County, Washington.

2.3     CDI has a sales room in King County, Washington.

2.4     CDI produces products in King County, Washington.

2.5     Defendants David Burroughs, John Burroughs, John Gevaert, James Cotter, Eric Hobbs, Steve McClure, and Harry Ross worked for CDI in King County, Washington.

2.6     Plaintiff Taber resides in King County, Washington.

2.7     Taber worked for CDI in King County. Washington.

2.8     Taber and Alexandra Taber as guardian of LT have standing to bring this action under 29 U.S.C.A. § 1132(a)(1)(A) and (B), 29 U.S.C.A. § 1132(a)(3), and federal common law established pursuant to ERISA.

2.9     The COBRA-notice claim in this action arises under the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C.A. § 1001 et seq. ("ERISA"), specifically including the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C.A. §§ 1161 et seq. ("COBRA") and federal common law created and existing pursuant to ERISA.

2.10     Jurisdiction over this action is based upon 29 U.S.C.A. § 1132(e)(1) and 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1367 (supplemental jurisdiction).

2.11     Venue is proper in this Court pursuant to 29 U.S.C.A. § 1132(e)(2) and 28 U.S.C.A. 1391(b) because the employee benefit plan is administered in this District, the breaches of duty took place in this District, and Defendant Cascade Design, Inc. has its main office in this District, and Plaintiff worked for Defendant Cascade Design, Inc. in this District.

SECOND AMENDED COMPLAINT-10
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

## III.   SERVICE

### Service on CDI

3.1     A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to the president or other head of CDI, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of CDI, registered agent, secretary, cashier or managing agent.

3.2     CDI has been served with the Summons and Complaint in this lawsuit.

### Service on Defendant David Burroughs

3.3     A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to Defendant David Burroughs.

3.4     Defendant David Burroughs has been served with the Summons and Complaint in this lawsuit.

### Service on Defendant John Burroughs

3.5     A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to Defendant John Burroughs.

3.6     Defendant John Burroughs has been served with the Summons and Complaint in this lawsuit.

### Service on Defendant John Gevaert

3.7     A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to Defendant John Gevaert.

3.8     Defendant John Gevaert has been served with the Summons and Complaint in this lawsuit.

### Service on Defendant James Cotter

SECOND AMENDED COMPLAINT-11
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

3.9     A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to Defendant James Cotter.

3.10    Defendant James Cotter has been served with the Summons and Complaint in this lawsuit.

<u>Service on Defendant Eric Hobbs</u>

3.11    A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to Defendant Eric Hobbs.

3.12    Defendant Eric Hobbs has been served with the Summons and Complaint in this lawsuit.

<u>Service on Defendant Steve McClure</u>

3.13    A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to Defendant Steve McClure.

3.14    Defendant Steve McClure has been served with the Summons and Complaint in this lawsuit.

<u>Service on Defendant Harry Ross</u>

3.15    A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to Defendant Harry Ross.

3.16    Defendant Harry Ross has been served with the Summons and Complaint in this lawsuit.

<u>Service on the Defendant Healthcare Plan</u>

3.17    A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to the president or other head of an administrator of the Healthcare Plan, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or

SECOND AMENDED COMPLAINT-12
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

office assistant of the president or other head of the administrator, or the registered agent, secretary, cashier or managing agent of the administrator.

3.18    The service described immediately above constitutes service on the Healthcare Plan of the Summons and Complaint in this lawsuit.

<u>Service on the Defendant Benefit Plan</u>

3.19    A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to president or other head of an administrator of the Benefit Plan, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the administrator, or the registered agent, secretary, cashier or managing agent of the administrator.

3.20    The service described immediately above constitutes service on the Healthcare Plan of the Summons and Complaint in this lawsuit.

<u>Service on Defendant CDI as the Healthcare Plan Administrator</u>

3.21    A person who was not Taber delivered a copy of the Summons in this lawsuit and this Complaint to president or other head of CDI in its capacity as the administrator of the Healthcare Plan, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of CDI in its capacity as the administrator, or the registered agent, secretary, cashier or managing agent of the administrator.

3.22    The service described immediately above constitutes service on the Healthcare Plan of the Summons and Complaint in this lawsuit.

<u>Service on The Secretary of the Treasury and the Secretary of Labor</u>

SECOND AMENDED COMPLAINT-13
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

3.23    After the Court grants Plaintiffs' Motion to Amend the Complaint, Plaintiff will serve a copy of this Amended Complaint on the Secretary of the Treasury and the Secretary of Labor by certified mail in accordance with 29 U.S.C.A. § 1132(h).

## IV.    FACTS

### CDI Failed to Pay Taber's 2017 Wages on The Payday

4.1    From August 3 to December 21, 2017, CDI had instructions from Taber to deduct a specific amount of wages from each of Taber's wage payments and deposit each deduction into Taber's health savings account ("**HSA**").

4.2    From August 3 to December 21, 2017, CDI deducted the amounts that Taber had instructed CDI to deduct from each wage payments (deductions hereinafter referred to as the "**wage deductions**").

4.3    From August 3 to December 21, 2017, CDI did not deposit the wage deductions into Taber's HSA on the paydays when the deductions were taken.

4.4    From August 3 to December 21, 2017, CDI kept the wage deductions for itself on the payday.

4.5    By the end of 2017, CDI had taken $6,300 in wage deductions that CDI had not deposited into Taber's HSA on the payday when the deduction was taken.

4.6    From August to December 2017, CDI had instructions from other CDI employees to deduct specific amounts of wages from each of those employee's wage payments and deposit each deduction into that employee's health savings account.

4.7    From August through December 2017, CDI deducted the amounts that other CDI employees had instructed CDI to deduct from each of their wage payments.

SECOND AMENDED COMPLAINT-14
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.8    From August to December 2017, CDI did not deposit some of the wage deductions taken from other employees' wages into those employees' HSAs on the paydays when the deductions were taken.

<u>CDI Issued False and Misleading Pay Records in 2017</u>

4.9    CDI listed each of Taber's 2017 HSA contributions on the paystub CDI issued for the wage payment from which that deduction was taken.

4.10    CDI listed the purpose of each 2017 wage deductions on the paystub for that period next to the label "Hsa Ee" under the title "Deductions" and subtitle "this period."

4.11    The amount listed next to the label "Hsa Ee" under the title "Deductions" and subtitle "this period" on each of Taber's 2017 paystubs was incorrect. CDI had not deposited the amount deducted into Taber's HSA on the payday when the wage deduction was taken. CDI had kept the deduction for itself.

4.12    CDI listed the total amount that Taber had contributed to her HSA in 2017 up to that payday on each of Taber's 2017 paystubs next to the label "Hsa Ee" under the title "Deductions" and under the subtitle "year to date."

4.13    The amount listed next to the label "Hsa Ee" under the title "Deductions" and subtitle "year to date" on each of Taber's 2017 paystubs was incorrect. CDI had not deposited the "year to date" amount listed on each of the paystubs. CDI had kept the deductions for itself.

4.14    Sometime before April 17, 2018, CDI issued to Taber a 2017 W-2 that stated CDI had deposited $6,300 of employee contributions into Taber's HSA.

4.15    The 2017 W-2 referenced in the paragraph immediately above was incorrect. CDI had not paid or delivered the $6,300 of 2017 wage deductions to Taber by April 17, 2018. CDI had kept the $6,300 of wage deductions for itself

SECOND AMENDED COMPLAINT-15
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

### CDI Failed to Pay 2017 Quarterly Employer Contributions

4.16    CDI had a duty under the HSA plan that CDI sponsored (hereinafter the "**HSA plan**") to contribute $300 of employer contributions into Taber's HSA every quarter during Taber's participation in the plan (hereinafter "**employer contributions**").

4.17    Each quarterly employer contribution was due on a specified predetermined payday.

4.18     CDI had a duty under the HSA plan to make a $300 employer contribution into Taber's HSA on the employer-contribution payday for the third quarter of 2017.

4.19    CDI did not make the $300 employer contribution into Taber's HSA on the employer-contribution payday for the third quarter of 2017.

4.20    CDI had a duty under the HSA plan to make a $300 employer contribution into Taber's HSA on the employer-contribution payday for the fourth quarter of 2017.

4.21    CDI did not make the $300 employer contribution into Taber's HSA on the employer-contribution payday for the fourth quarter of 2017.

### CDI Failed to Issue Pay Records for Employer Contributions

4.22    CDI did not issue Taber paystubs for employer contributions.

4.23    CDI did not issue other CDI employees paystubs for employer contributions.

4.24    CDI did not issue Taber a scheduled periodic statement that provided an accounting of employer contributions.

4.25    CDI did not issue other CDI employees a scheduled periodic statement that provided an accounting of employer contributions.

4.26    CDI did not issue Taber a record of any kind that provided an accounting of employer contributions other than an IRS form W-2.

SECOND AMENDED COMPLAINT-16
NO. C20-1633RSL

4.27     CDI did not issue other CDI employees a record of any kind that provided an accounting of employer contributions other than an IRS form W-2.

<u>CDI Failed to Contribute Withheld Wages Immediately after Taber Told CDI about the Withheld Wages</u>

4.28     CDI Human Resources Generalist / Payroll Specialist Julie Sarchett (hereinafter "**Sarchett**") processed HSA employee contributions by transferring money from CDI's account to CDI's sponsored HSA's account.

4.29     In mid-December 2017, Taber told Sarchett that CDI had taken deductions from Taber's wages but had failed to deposit those deductions into Taber's HSA.

4.30     In mid-December 2017, Taber told Sarchett that CDI had failed to deposit the 2017 third quarter employer contribution into Taber's HSA.

4.31     On that day in mid-December 2017 when Taber told Sarchett about the missing contributions, Sarchett responded that she would review Taber's HSA accounting and correct it if there was a problem.

4.32     Neither Sarchett nor anyone else at CDI deposited the missing contributions after Taber told Sarchett about the missing contributions and before the 2017 contribution deadline on April 17, 2018.

<u>CDI Continued Failing to Pay Wages on The Payday Even Though Taber Had Told CDI about the Wrongful Withholding</u>

4.33     From January 1 to February 1, 2018, CDI had instructions from Taber to deduct a specific amount of wages from each of Taber's wage payments and deposit each deduction into Taber's HSA.

4.34     From January 1 to February 1, 2018, CDI deducted the amounts that Taber had instructed CDI to deduct from each wage payment.

SECOND AMENDED COMPLAINT-17
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.35    From January 1 to February 1, 2018, CDI did not deposit the wage deductions into Taber's HSA on the paydays when the deductions were taken.

4.36    From January 1 to February 1, 2018, CDI kept the wage deductions for itself on the payday.

4.37    From January 1 to February 1, 2018, CDI had taken $2,125 in 2018 wage deductions that CDI had not deposited into Taber's HSA on the payday when the deduction was taken.

<u>CDI Continued Issuing False and Misleading Pay Records in 2018</u>

4.38    From January 1 to February 1, 2018, CDI listed each of Taber's 2017 HSA contributions on the paystub CDI issued for the wage payment from which that deduction was taken.

4.39    From January 1 to February 1, 2018, CDI listed the purpose of each 2017 wage deductions on the paystub for that period next to the label "Hsa Ee" under the title "Deductions" and subtitle "this period."

4.40    From January 1 to February 1, 2018, the amount listed next to the label "Hsa Ee" under the title "Deductions" and subtitle "this period" on each of Taber's paystubs was incorrect. CDI had not deposited the amount deducted into Taber's HSA on the payday when the wage deduction was taken. CDI had kept the deduction for itself.

4.41    From January 1 to February 1, 2018, CDI listed the total amount that Taber had contributed to her HSA in 2018 up to that payday on each of Taber's paystubs next to the label "Hsa Ee" under the title "Deductions" and under the subtitle "year to date."

4.42    From January 1 to February 1, 2018, the amount listed next to the label "Hsa Ee" under the title "Deductions" and subtitle "year to date" on each of Taber's paystubs was incorrect.

SECOND AMENDED COMPLAINT-18
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

CDI had not deposited the "year to date" amount listed on each of the paystubs. CDI had kept the deductions for itself.

4.43    From January 1 to February 1, 2018, CDI issued no record to Taber of HSA contributions other than the bi-monthly paychecks and annual W-2 discussed herein above.

<u>CDI Failed to Comply with Taber's Instructions to Deduct and Contribute $500 to Her HSA on February 15, 2018</u>

4.44    Taber had instructed CDI to deduct and contribute $500 to Taber's HSA on February 15, 2018.

<u>CDI Recorded a Nonexistent Deduction and Contribution on Taber's February 15, 2018 Paystub</u>

4.45    On February 15, 2018, CDI listed "$500" on Taber's paystub next to the label "Hsa Ee" under the title "Deductions" and subtitle "this period."

4.46    On February 15, 2018, CDI did not deduct a $500 amount for wage payment and did not deposit $500 into Taber's HSA. (The claimed February 15, 2018 $500 withdrawal and deposit is hereinafter referred to as the "**nonexistent $500 deposit**.")

4.47    On February 15, 2018, CDI listed "$2,625" next to the label "Hsa Ee" under the title "Deductions" and under the subtitle "year to date."

4.48    The "$2,625" amount that CDI listed on February 15, 2018 paystub included the nonexistent $500 deposit.

4.49    On each paystub CDI issued to Taber from February 15, 2018 through Taber's last 2018 paystub on December 20, 2018, CDI included this $500.

4.50    On each paystub issued to Taber from February 15, 2018 to the end of 2018, CDI included the nonexistent $500 deposit in the amount listed on Taber's paystubs next to the label "Hsa Ee" under the title "Deductions" and under the subtitle "year to date."

SECOND AMENDED COMPLAINT-19
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.51    On May 25, 2018, CDI deposited into Taber's HSA the $2,125 2018 wage deductions that CDI had failed to deposit on the payday when the deductions were taken.

4.52    CDI did not at any time deposit $500 into Taber's HSA for the nonexistent $500 deposit.

4.53    From February 15, 2018 until CDI stopped working with Taber to pay all of Taber's wages and damages on August 12, 2019, Taber thought CDI owed her the nonexistent $500 deduction.

4.54    From February 15, 2018 until CDI stopped working with Taber to pay all of Taber's wages and damages on August 12, 2019, Taber asked CDI to pay her the nonexistent $500 deduction.

4.55    On August 12, 2019, Corporate Secretary and Corporate Counsel, Eric Hobbs. (hereinafter "**Hobbs**") told Taber that CDI did not owe Taber the nonexistent $500 deduction.

4.56    Hobbs did not explain why CDI did not owe the nonexistent $500 deduction or what happened to the nonexistent $500 deduction.

4.57    On August 12, 2019, referring to the nonexistent $500 deduction, Hobbs wrote in his final email to Taber, "I looked at our records which show definitively that you received a full employer HSA match in both 2017 and 2018; hence, there being matches, there are no matches for which to provide you compensation."

4.58    In his August 12, 2019 email, Hobbs did not provide Taber the records that he reviewed.

4.59    CDI never provided an accounting for why the 2018 HSA balance listed on Taber's paystubs was overstated by $500.

SECOND AMENDED COMPLAINT-20
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.60    CDI never provided an accounting for how or when the $500 excess 2018 HSA balance was removed from her accounting.

4.61    The final record that included an accounting of Taber's 2018 HSA was the December 20, 2018 paystub CDI issued to Taber.

4.62    CDI included the nonexistent $500 deduction in the total amount listed next to the label "Hsa Ee" under the title "Deductions" and under the subtitle "year to date."

4.63    Sometime in early 2019, CDI issued the first of two 2018 IRS forms W-2 to Taber.

4.64    The first IRS formW-2 listed $2,125

4.65    On May 2, 2019, CDI amended Taber's 2018 form W-2 by increasing Taber's total income and HSA contributions by the nonexistent $500 deposit.

<u>CDI Failed to Deposit the Wage Debt When It Corrected the Failure to Deposit Bi-Monthly Wage Deductions</u>

4.66    On March 1, 2018, CDI stopped taking wage deductions without depositing those deductions into Taber's HSA. From March 1, 2018 until Taber stopped participating in the HSA plan, when CDI took a wage deduction from Taber's wages, it deposited the same amount into Taber's HSA.

4.67    Although CDI stopped taking deductions without making corresponding deposits, CDI continued withholding Taber's wages.

4.68    From March 1 through May 24, 2018, CDI did not deposit the $6,300 of Taber's 2017 wage deductions that CDI had been keeping for itself.

4.69    From March 1 through May 24, 2018, CDI did not deposit the $2,125 of Taber's 2018 wage deductions that CDI had been keeping for itself.

4.70    On March 6, 2018, CDI deposited five checks into Taber's HSA.

SECOND AMENDED COMPLAINT-21
NO. C20-1633RSL

4.71    On March 14, 2018, the five checks CDI had deposited into Taber's HSA on March 6 were returned unpaid.

4.72    Within a week of March 14, 2018, CDI received the five checks that were returned on March 14, 2018.

CDI Failed to Deposit Withheld 2017 HSA Contributions Before the 2017 Contribution Deadline Expired

4.73    CDI had at least 107 days from the date Taber informed CDI of the fact that CDI had been taking wage deductions without depositing the wages into Taber's HSA to the 2017 HSA contribution deadline on April 17, 2018.

4.74    CDI did not deposit Taber's 2017 wage deductions on or before the 2017 HSA contribution deadline.

CDI Did Not Pay the Withheld Wages Directly to Taber When Taber's Instructions Expired

4.75    Before the end of the day on April 17, 2018, CDI could have fulfilled Taber's instructions to deposit her 2017 wage deductions into her HSA as 2017 employee contributions.

4.76    After April 17, 2018, CDI could no longer fulfill Taber's instructions to deposit her 2017 wage deductions into her HSA as 2017 employee contributions.

4.77    After April 17, 2018, CDI had a duty to pay directly to Taber her 2017 wage deductions to Taber.

4.78    From April 18 through May 24, 2018, CDI continued keeping Taber's 2017 wage deductions.

CDI Contributed the 2017 Wage Deductions into Taber's HSA as 2018 Contributions Without Taber's Authority

4.79    Taber never gave CDI permission to deposit her 2017 wage deductions into her account as 2018 employee contributions

SECOND AMENDED COMPLAINT-22
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.80    After April 17, 2018, the law did not permit CDI to deposit Taber's 2017 wage deductions into Taber's account as 2017 employee contributions.

4.81    After April 17, 2018, the law did not permit CDI to recharacterize money in Taber's HSA from being a 2018 employee contribution to being a 2017 employee contribution.

4.82    On May 25, 2018, CDI had identified no legal authority to support the conclusion that it could deposit Taber's 2017 wage deductions as a 2018 employee contribution and obtain permission from the IRS to recharacterize that deposit as a 2017 employee contribution.

4.83    On May 25, 2018, CDI deposited the $6,300 of Taber's 2017 wage deductions into Taber's HSA as 2018 contributions.

4.84    After depositing the $6,300 of Taber's 2017 wage deductions into Taber's HSA as 2018 contributions, CDI told Taber that it would obtain permission from the IRS to recharacterize the $6,300 of Taber's 2017 wage deductions from 2018 employee contributions to 2017 employee contributions.

<u>CDI Triggered IRS Fines and Penalties for Taber by Causing Taber to Exceed The 2018 HSA Annual Contribution Limit</u>

4.85    CDI listed on Taber's May 24, 2018 paystub $5,625 next to the label "Hsa Ee" under the title "Deductions" and under the subtitle "year to date."

4.86    On May 24, 2018, Taber expected to receive another $1,200 of 2018 employer contributions.

4.87    On May 24, 2018, the total balance of Taber's 2018 employee contributions plus the expected $1,200 of 2018 employer contributions added to $6,825.

4.88    On May 24, 2018, Taber needed to contribute $75 as 2018 employee contributions to reach the annual combined contribution limit of $6,900.

SECOND AMENDED COMPLAINT-23
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.89   CDI's May 25, 2018, deposit of Taber's $6,300 of 2017 wage deductions caused Taber to exceed the annual combined contribution limit by more than $6,000.

4.90   CDI knew that depositing Taber's $6,300 of 2017 wage deductions would cause Taber to exceed the annual combined HSA contribution limit.

4.91   On each of Taber's remaining 2018 paystubs, CDI excluded the $6,300 deposit of 2017 wage deductions from the total 2018 annual employee contributions listed on paystub next to the label "Hsa Ee" under the title "Deductions" and under the subtitle "year to date."

4.92   CDI's deposit of Taber's $6,300 2017 wage deductions as 2018 employee contributions caused Taber to incur IRS penalties, fines, and interest.

CDI Caused Taber to Contribute Even More in 2018 to Her HSA by Making False and Misleading Statements in Taber's Paystubs, Failing to Correct Its Errors, and Making Misleading Promises

4.93   After May 24, 2018, Taber did not know how much she needed to deposit to reach the 2018 combined HSA annual limit.

4.94   CDI's paystubs had repeatedly listed deductions that had not occurred.

4.95   CDI's paystubs after May 24, 2018 did not include the May 25, 2018 deposit of Taber's $6,300 2017 wage deductions as a 2018 employee contribution.

4.96   Taber was confused by the five bounced checks that CDI deposited on March 2, 2018. Those checks appeared as deposits and then reversed deposits on Taber's HSA statement.

4.97   On March 2, 2018, CDI should have deposited $6,150 of the $6,300 that it had deducted from Taber's wages in 2017.

4.98   On March 2, 2018, CDI should have deposited $600 for the 2017 employer contributions it owed.

SECOND AMENDED COMPLAINT-24
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.99   On March 2, 2018, CDI should have returned $150 of Taber's $6,300 wage deductions because Taber needed to contribute only $6,150 to reach the 2017 annual combined limit.

4.100   On March 2, 2018, CDI should have deposited $2,625 as a 2018 employee contribution because that was the difference between the total 2018 employee contributions listed on Taber's paystub and the 2018 employee contributions actually in the HSA.

4.101   As of March 24, CDI did not yet owe a 2018 employer contribution.

4.102   On March 2, 2018, CDI deposited $5,700.

4.103   CDI designated the March 2, 2018 $5,700 deposit as a 2018 employee contribution.

4.104   On March 2, 2018, CDI deposited $600 as an employer contribution.

4.105   CDI designated the March 2, 2018 $600 deposit as a 2018 employer contribution

4.106   On March 2, 2018 and in the weeks that followed, CDI did not pay $150 directly to Taber.

4.107   On March 2, 2018, CDI deposited $2,725 as 2018 employee contributions.

4.108   The March 2, 2018 $2,725 employee contribution was $100 more than the difference between the total 2018 employee contributions listed on Taber's paystub and the 2018 employee contributions actually in her HSA.

4.109   On March 2, 2018, CDI deposited two $300 payments as 2018 employer contributions.

4.110   Taber was confused by CDI's May 25, 2018 contributions.

4.111   On May 25, 2018, CDI should have deposited $6,150 of the $6,300 that it had deducted from Taber's wages in 2017.

SECOND AMENDED COMPLAINT-25
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.112   On May 25, 2018, CDI should have returned $150 of Taber's $6,300 wage deductions because Taber needed to contribute only $6,150 to reach the 2017 annual combined limit.

4.113   On May 25, 2018, CDI should have deposited $2,625 as a 2018 employee contribution because that was the difference between the total 2018 employee contributions listed on Taber's paystub and the 2018 employee contributions actually in the HSA.

4.114   On May 25, 2018, CDI deposited $8,425 as a 2018 employee contribution.

4.115   The May 25, 2018 deposit of $8,425 did not equal $6,300 plus $2,625.

4.116   The May 25, 2018 deposit of $8,425 did not equal $6,150 plus $2,625.

4.117   In the next two months after May 25, 2018, Taber repeated her request for an accurate accounting of her wage deductions and HSA contributions.

4.118   In the next two months after May 25, 2018, CDI did not provide Taber an accurate accounting of her wage deductions and HSA contributions.

4.119   CDI processed four more $500 employee contributions to Taber's HSA in June and July 2018.

<u>CDI Kept the 2017 Wage Deductions from Taber Through Deception and Incompetence</u>

4.120   On May 25, 2018, CDI had a duty to immediately determine whether it could get permission from the IRS to reallocate any of Taber's HSA contributions from 2018, to 2017.

4.121   From May 25 to February 19, 2019, CDI repeatedly told Taber that it would get IRS permission to recharacterize Taber's 2017 wage deductions from a 2018 employee contribution to a 2017 employee contribution.

SECOND AMENDED COMPLAINT-26
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.122   CDI did not investigate or research whether it could get IRS permission to recharacterize Taber's 2017 wage deductions from a 2018 employee contribution to a 2017 employee contribution until December 12, 2018.

4.123   From May 25 to December 12, 2018, CDI did not:

- call, write, or read resources on the website of the US Internal Revenue Service (https://www.irs.gov/publications/p969),
- call, write, or read resources on the website of the US Treasury Department (https://www.treasury.gov/resource-center/faqs/Taxes/Pages/Health-Savings-Accounts.aspx),
- call, write, or read resources on the website of the Washington State Insurance Commissioner (https://www.insurance.wa.gov/health-savings-accounts),
- the US Department of Treasury,
- consult a tax/ERISA/employee-benefits attorney, or
- consult a human-resources expert such as an expert from the Society of Human Resources Management ("SHRM"),
- call, write, or read resources on the website of City of Seattle Office of Labor Standards,
- call, write, or read resources on the website of the Washington State Department of Labor and Industries, or
- call, write, or read resources on the website of US Department of Labor

to determine whether CDI could have Taber's 2017 wage deductions reallocated from 2018 employee contributions to 2017 employee contributions.

4.124   On August 7, 2018, CDI's custodian, HSA Bank sent a letter to Taber stating that Taber had overcontributed to Taber's HSA.

4.125   HSA Bank's August 7, 2018 letter to Taber did not state how much Taber had overcontributed to Taber's HSA.

4.126   HSA Bank's August 7, 2018 letter to Taber instructed Taber to submit an excess contribution form to remove the amount that exceeded the annual limit.

SECOND AMENDED COMPLAINT-27
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.127   On August 7, 2018, Taber had 2018 employee contributions that totaled $14,625, which was comprised of the $6,300 of 2017 wage deductions plus $7,125 of 2018 employee contributions plus $1,200 that CDI would contribute as 2018 employer contributions.

4.128   On August 7, 2018, Taber had already contributed more than the combined employer and employee annual contribution limit of $6,900.

4.129   Sometime in the month after August 7, 2018, Taber asked CDI how much she had overcontributed to Taber's HSA.

4.130   Sometime between August 7 and November 8, 2018, CDI told Taber that Taber had contributed $800 too much as 2018 HSA employee contributions.

4.131   Sometime between August 7 and November 8, 2018, CDI told Taber to withdraw $800 from her HSA.

4.132   November 8, 2018, CDI's custodian HSA Bank refunded $800 of Taber's employee contributions to Taber.

4.133   On December 7, 2018, Taber emailed Sarchett and Benefits Administrator Vivian Gould (hereinafter "**Gould**") requesting that CDI fix the errors. Taber wrote in the email,

> I just got off the phone with HSA. And my account is still not correct.
>
> It's showing that my 2017 contribution was only .01 It is showing my 2018 contribution as 14,625[.]
>
> Even though the money was taken out in 2017 – those transactions and CDI's contribution was posted in 2018 so that is the year that it's counting towards. So my account according to them is still over by $7,125 and not the $800 check that was requested a few weeks ago.
> …
> This is incredibly frustrating as I lost out on 2017 and did not get the full CDI contribution for that[.]

SECOND AMENDED COMPLAINT-28
NO. C20-1633RSL

4.134   On December 12, 2018, Sarchett emailed Cigna Corporation Regional Sales & Service Senior Client Manager Moradshahi (hereinafter "**Moradshahi**") and instructed him to recharacterize the 2017 wage payments for Taber's HSA. Sarchett wrote:

> Effected employee: Alex Taber
> There should be $6,150 applied to 2017 from 2018 as an employee contribution[.]

4.135   In the December 12, 2018 email to Moradshahi, Sarchett stated that Taber had overcontributed an additional $775 to her HSA but did not explain how that amount was calculated.

4.136   On December 13, 2018, Moradshahi emailed Sarchett and told her that Taber's 2017 HSA wage deductions could not be recharacterized as 2017 contributions because the contribution deadline had passed. Moradshahi wrote:

> I wanted to share an update… So far, I am being told we are past the deadline to do anything to 2017. I have pushed back, given the circumstances to see if there are an extraordinary circumstances that will allow us to push those deadlines (I worry it may be IRS-limiting, but want to be sure).

4.137   On December 19, 2018, Moradshahi confirmed with Sarchett that Taber's 2018 HSA wage deductions could not be recharacterized as 2017 contributions. Moradshahi wrote:

> I had escalated hoping I would get a different answer. Unfortunately, it is not a Cigna call (regardless of the background reason for the mix-up).

> The HSA is IRS regulated so there is no flexibility. The deadline to post 2017 funds was April 17, 2018. Since that time has passed there is no way to apply 2018 contributions towards 2017.

> … They will have until the 2018 tax deadline to make corrections. Unfortunately, I don't think this solves for the issue at hand.

4.138   On December 19, 2018, Sarchett did not inform Taber of the information she had received from Moradshahi.

SECOND AMENDED COMPLAINT-29
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.139   On December 19, 2018, Sarchett told Moradshahi that Sarchett wanted to call the IRS. Sarchett wrote:

> Is there a number for someone in the department that can help guide me to the right IRS person. It just has to be a way since the deductions happened in 2017 and I have all the stubs to prove that and her w2 shows the same. The only issue is the deposit into her account was labeled wrong year.

4.140   On December 20, 2018, Sarchett emailed Gould stating, "Please see the attachment as discussed to make the adjustment to Alexandra Taber's account for 2017/2018."

4.141   Sarchett attached a blank uncompleted "Contribution Removal Form" to the December 20, 2018 form.

4.142   CDI did not send the "Contribution Removal Form" to Taber ever.

4.143   On December 20, 2018, Gould wrote a letter requesting that Taber's 2017 wage deductions be recharacterized as a 2017 contribution.

4.144   Gould's December 20, 2018 letter was not addressed to anyone.

4.145   The body of the above-mentioned letter started with, "To Whom It May Concern."

4.146   By October 16, 2019, CDI had placed no document that discussed Gould's December 20, 2018 letter in Taber's employee file.

4.147   Referring to Taber as "her," Gould admitted in the December 20, 2018 letter that, "There was an error in the entry of her direct deposit and the funds were not going into her account."

4.148   Gould admitted in the December 20, 2018 letter that, "There were both 2017 and 2018 funds missing."

4.149   In the December 20, 2018 letter, Gould asked the intended recipient to recharacterize $6,150 of the 2018 employee contributions to the year 2017.

SECOND AMENDED COMPLAINT-30
NO. C20-1633RSL

4.150   In the December 20, 2018 letter, Gould failed to mention the missing $600 of 2017 employer contributions.

4.151   On December 21, 2018, Cigna HSA Senior Account Specialist Megan Skubic (hereinafter "**Skubic**") told Sarchett again that there was no way to recharacterize Taber's 2017 HSA wage deductions from 2018 employee contributions to 2017 employee contributions. Skubic wrote:

> I received notification from HSA Bank that they are not able to change the contribution year for Alexandra Taber's HSA deposit on 5/23/18. Per IRS regulations, any deposits for the prior tax year would need to be made before the tax filing deadline. Because of those regulations, there unfortunately isn't an option to recode the contribution year for deposits made after the tax filing deadline.

4.152   On December 21, 2018, Sarchett did not tell Taber that there was no way to recharacterize Taber's 2017 HSA wage deductions from 2018 employee contributions to 2017 employee contributions.

4.153   On January 8, 2019, Moradshahi emailed Sarchett stating:

> I apologize for the delay in getting back to you …. I have the question out to my HSA team, and hope to hear back shortly. I have a feeling they will reiterate that the question is for a tax professional, but escalating nonetheless.

4.154   On February 19, 2019, Sarchett emailed Taber and told her that there was no way to recharacterize Taber's 2017 HSA wage deductions from 2018 employee contributions to 2017 employee contributions.

4.155   Sarchett's February 19, 2019 email included emails that Sarchett had exchanged with other people before February 19, 2019.

SECOND AMENDED COMPLAINT-31
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.156   The email attached to Sarchett's February 19, 2019 revealed that before December 2018, CDI made no effort whatsoever to recharacterize Taber's 2017 HSA wage deductions from 2018 employee contributions to 2017 employee contributions.

4.157   The email attached to Sarchett's February 19, 2019 revealed that CDI had not spoken with anyone at the IRS about obtaining permission to recharacterize Taber's 2017 HSA wage deductions from 2018 employee contributions to 2017 employee contributions.

4.158   Later on February 19, 2019, Taber responded to Sarchett's February 19, 2019 email and reminded Sarchett that she, Taber, had brought up problems with the 2017 contributions in early 2018. Taber wrote:

> I brought this issue up at the beginning of 2018 but it looks like the first contact with Cigna wasn't until December?
>
> I thought you'd said you'd also already spoken to someone at the IRS regarding this.

4.159   Later on February 19, 2019, Sarchett responded to Taber's responsive email and confirmed that the statements in Taber's email were correct. Sarchett wrote:

> You are correct you and I where [sic] working very hard on this issue and we had been working with your spreadsheets for a few months. The email chain is the chain with the contact information you requested for those who told me no. It did take sometime to figure out what was missing and work with your spread sheet. My IRS conversation started with the customer service # and a series of transfers, as we discussed IRS stated that HAS [sic] Bank and Cigna are correct, that the time line had expired. Here is the # I called IRS: 1-800-829-1040 hours 7 AM - 7 PM local time Monday-Friday
>
> I highly recommend that you work with your tax professional on this going forward, it is beyond my ability and contacts with tax knowledge. I hope the waiver is possible.

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.160   Later on February 19, 2019, Taber replied to Sarchett's responsive email and requested a record of people Sarchett had spoken with and raised several issues concerning her HSA contributions. Taber wrote:

So you have no record of who you spoke with?
…
When the original checks bounced in March it should have been addressed and it wasn't. I still don't understand how CDI didn't know that it's [*sic*] checks were bouncing. I know within a day if I do that on my personal account.
…
My spreadsheet technically didn't matter because the urgency was that what was taken out of my paycheck needed to be deposited into my account and allocated properly to the year. Any additional discrepancies could have been addressed later.

I'd like to confirm that my fees to involve a tax professional will be covered in addition to the additional tax and any other fines the IRS may assess me at this point.

There also remains the issue that what was taken out of my paychecks is not in the HSA account. I'm not sure I understand how or why that has happened as it seems that accounting reconciles all the bank balances. Since I'm still missing over $1K in my account, does that mean that that money was put into someone else's account? I would think that CDI's bank balances would have been off for all of 2018 as a result? I need this additional amount returned to me as well before the tax deadline since I will want to apply any amounts I have to take a distribution on to my after tax 2017 Roth 401K.

4.161   Sarchett did not respond to Taber's February 19, 2019 responsive email.

4.162   Later in February 2019, Taber called the IRS telephone number that Sarchett had provided in her February 19, 2019 responsive email. The call was answered by an IRS answering service. The answering service did not offer the caller a way to speak with an IRS representative.

4.163   On February 20, 2019, Taber emailed Sarchett an accounting of her HSA contributions that showed CDI had failed to contribute $1,100 to Taber's HSA.

4.164   The $1,100 missing 2017 HSA contributions consisted of the missing $600 of 2017 employer contributions and the nonexistent $500 deposit.

SECOND AMENDED COMPLAINT-33
NO. C20-1633RSL

4.165   Later on February 20, 2019, Sarchett responded to Taber's February 20, 2019 email.

4.166   In her February 20, 2019 responsive email, Sarchett indicated that Taber could still recharacterize her 2017 HSA wage deductions from 2018 employee contributions to 2017 employee contributions. Sarchett wrote:

> There should be $6,150 applied to 2017 from 2018 as an employee contribution
> 2018 should be maxed out at $6900
> We will need a return $775 over contributed funds.

4.167   In her February 20, 2019 responsive email, Sarchett assumed that CDI had made the 2017 employer deposit of $600.

4.168   Sarchett did not provide a detailed accounting to support her statements in her February 20, 2019 responsive email.

4.169   Later on February 20, 2019, Taber responded to Sarchett's responsive email and asked Sarchett to clarify how Sarchett calculated the $775 amount. Taber wrote, "Can you please clarify how the $775 was reached?"

4.170   Later on February 20, 2019, Sarchett responded to Taber's responsive email. In her response, Sarchett did not explain how she calculated the $775 amount. Instead, Sarchett wrote, "We can always walk through it again, all you would need to do is bring a current account statement from HSA bank or your log in."

4.171   Later on February 20, 2019, Taber responded to Sarchett's second responsive email and stated that she did not understand how Sarchett had calculated the $775 amount. Taber wrote, "Here's what I have based on my paychecks and W2's.: I'm not following how you have $775."

4.172   Sarchett did not respond to Taber's second responsive email.

SECOND AMENDED COMPLAINT-34
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.173   On March 31, 2019, CDI Controller Robert Yanak (hereinafter "**Yanak**") and CDI Assistant Controller Colleen Taylor (hereinafter "**Taylor**") met with Taber and told Taber that they and the rest of the finance department had not previously heard that there were problems with Taber's wage deductions and HSA contributions.

4.174   On March 31, 2019, Yanak and Taylor confirmed that the 2017 wage deductions could not be recharacterized from 2018 employee contributions to 2017 employee contributions.

4.175   On March 31, 2019, Taber withdrew the $6,300 of 2017 wage deductions from her HSA.

<u>CDI Wrongfully Terminated Taber in Retaliation for Making a Wage Claim</u>

4.176   CDI and CDI's clients gave Taber very good performance reviews.

4.177   In a March 20, 2017 review, Taber's manager Andy Zuchetto (hereinafter "**Zuchetto**") stated Taber was articulate, patient, professional, and an intelligent, analytical, hard worker who "likes a good challenge" and who "took on a huge breadth of process" and met the challenges with "great enthusiasm and effective solutions" while providing clients "excellent service." Zuchetto wrote:

> Alexandra has provided excellent service to her customers. Since she started at CDI last year, she has taken on a huge breadth of process, BI, and data challenges and has met these challenges with great enthusiasm and effective solutions.
> …
> Alexandra is articulate, patient, and professional in her interactions with both her peers and customers. She listens well and provides her own persuasive incite and knowledge. She enjoys working with people and this comes through in her communications.
> …
> Alexandra is an intelligent, analytical, hard worker who likes a good challenge and is enjoyable to work with. She needs to continue to grow as a data expert with respect to CDI's many complex processes and systems, but is learning very fast. She has a large workload and because of this needs to balance coming up with the perfect solution vs just getting things done.

SECOND AMENDED COMPLAINT-35
NO. C20-1633RSL

4.178   In a On September 13, 2017 review, Zuchetto wrote:

Alex has done a great job over the past six months, is a pleasure to work with, and continues to grow by learning the complexities of our many systems and data structures.

4.179   On October 15, 2018, Taber's supervisor Jun Delovino (hereinafter "**Delovino**") wrote a letter praising Taber's work. Delovino wrote:

Alexandra continued to provide excellent reporting support for our users.

It's been a pleasure of having Alexandra as a member to our team. In addition to her outstanding work with developing and maintaining our reports and end-user support, she has also been heavily involved helping the company in several ways such as: assisting with the company warehouse sales in Reno and Seattle or creating new opportunities in the past year to help the company reduce inventory through donations and charity work. I look forward to Alexandra playing a huge role in our teams success in 2019.

4.180   On July 26, 2019, Zuchetto wrote Taber a letter of recommendation, stating:

During Alexandra Taber's employment at Cascade Designs, I was initially her manager and later her colleague. I could not have asked for a better employee and colleague due to her exceptional technical and analytical skills and her ability to produce results in an efficient, timely manner. She was an excellent team member who listened well, contributed at a high level, respected her teammates, and could be counted on to do her part. She was passionate about her job and seemed to really enjoy taking on new challenges and learning new things. I highly recommend Alexandra to any employer looking for a star to add to their team.

4.181   On July 17, 2019, CDI Director of Technology Asif Eshbhani wrote Taber a letter of recommendation, stating:

Alexandra is a team player! Very responsive and highly skilled. I had the opportunity to work with Alexandra on a project where she displayed an exceptional ability to lead JAD sessions in an agile environment. She would take extra time to explain options while providing technical details in a manner easily understood by the business. Always attempting to alleviate ambiguity to bring structure. Alexandra 'owns' her work and makes every attempt to follow-up, follow-thru and complete her assignments

4.182   On August 6, 2019, CDI's former CDI CEO and President David Burroughs wrote Taber a letter of recommendation praising Taber's work, stating:

SECOND AMENDED COMPLAINT-36
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

During my time with Alex, I saw her go beyond the call of duty on multiple occasions where she brought an infectious energy and leadership to teams. She received rave reviews from our company's sales team for her work on and at special sales events where her ideas and IT skills led to increased customer participation, profit margin, and fun.

I highly recommend Alex. She has that much sought-after mix of technology skills, leadership and interpersonal skills to be effective and create value for the organization

4.183   While at CDI, Taber worked on ETL projects.

4.184   While at CDI, Taber created automated processes within the Microsoft BI Stack to eliminate time-consuming manual steps.

4.185   On July 17, 2019, CDI still needed the services that Taber provided.

4.186   On July 17, 2019, CDI had no other employee with the skills required to do the work Taber did on ETL projects.

4.187   On July 17, 2019, CDI had no other employee with the skills required to create automated processes within the stack to eliminate time-consuming manual steps.

4.188   On July 17, 2019, CDI terminated Taber.

4.189   CDI terminated Taber for complaining about CDI's withholding of Taber's HSA contributions.

4.190   In mid-July 2019, CDI told Taber that CDI was terminating Taber as part of a layoff.

4.191   CDI made Taber's termination effective on July 17, 2019.

<u>CDI Terminated Taber in Part Based on Taber's Age</u>

4.192   The percentage of people over forty years old employed by CDI over the past few years is less than the percentage of people over forty years old in the marketplace for CDI's jobs during the same period.

SECOND AMENDED COMPLAINT-37
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.193   The difference between the percentage of people over forty years old employed by CDI over the past few years and the percentage of people over forty years old in marketplace for CDI's jobs during the same period is statistically significant.

4.194   The difference between the percentage of people over forty years old terminated by CDI over the past few years and the percentage of people over forty years old remaining as CDI employees after those terminations during the same period is statistically significant.

4.195   CDI terminated Taber in part because she was older than forty years old.

<u>CDI Terminated Taber in Part Based Taber's Gender Discrimination</u>

4.196   The percentage of women employed by CDI over the past few years is less than the percentage of women in the marketplace for CDI's jobs during the same period.

4.197   The difference between the percentage of women employed by CDI over the past few years and the percentage of women in marketplace for CDI's jobs during the same period is statistically significant.

4.198   The difference between the percentage of women terminated by CDI over the past few years and the percentage of women remaining as CDI employees after those terminations during the same period is statistically significant.

4.199   CDI terminated Taber in part because she is a woman.

<u>CDI Refused to Pay The $600 of 2017 Employer Contributions</u>

4.200   On April 5, 2019, CDI Controller Robert Yanak (hereinafter "**Yanak**") sent an email to CDI Human Resources Director Harry Ross (hereinafter "**Ross**") and CDI Chief Financial Officer Steve McClure (hereinafter "**McClure**") and endorsed Taylor's reconciliation of Taber's HSA contributions. Taylor's reconciliation stated that CDI owed Taber $1,100, an

SECOND AMENDED COMPLAINT-38
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

amount that consisted of the missing $600 2017 employer contributions and the nonexistent $500

deduction. Yanak wrote:

> There is absolutely nothing Alex can do to fix the problem. Alex has put more
> time into this problem to date than any employee should be required to do as a
> result of a company caused error. As you know, this has been going on for over a
> year. Collene [Taylor] has completed a reconciliation of the misallocated funds,
> so we have the numbers.
> …
> This subject (HSA, taxes, govt regulation) is complicated and technical. You
> should not feel that you need to have all the answers – no one in this company has
> all the answers to these technical issues. However, you have to recognize when
> an issue is outside of your knowledge and to reach out to any of us in Finance,
> Legal, or our benefit partners immediately.

4.201   In 2019, Taber hired tax accountant, Chitra Senthivel (hereinafter "**Senthivel**").

4.202   Senthivel worked with Taylor to prepare accurate accounting for Taber's 2017

and 2018 HSA contributions.

4.203   Senthivel and Taylor both concluded that CDI owed Taber $1,100 for unpaid HSA

contributions.

4.204   Sometime after June 24, 2019, and before CDI terminated Taber, Taber provided

CDI with a letter dated June 24, 2019 from Senthivel.

4.205   In her June 24, 2019 letter, Senthivel stated that CDI owed Taber $1,100 for

unpaid 2017 and 2018 HSA contributions.

4.206   The $1,100 referred to in Senthivel's June 24, 2019 letter consisted of the missing

$600 2017 employer contributions and the nonexistent $500 deposit.

4.207   On July 7, 2019, Corporate Secretary and Corporate Counsel, Eric Hobbs received

an email from Taber stating that Taber had informed CDI of the missing employer contributions

as early as December 2017. Taber wrote:

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

I had originally brought the issue of the missing money from my account to Julie in December of 2017. There had been some issues with her agreeing on the amount (what was on my paychecks did not match what she said she saw in ADP). There had also been money missing from the CDI contribution portion which she did not agree on but Collene eventually documented was right and that CDI had not made $1100 of their contribution to my account.

4.208   Sometime after receiving Senthivel's letter, Hobbs wrote in notes on Senthivel's letter, "Contrary to the above, Alexandra received both her full employer HSA contributions in 2017 and 2018; accordingly, the erroneous $1,100 has been removed from the calculation above."

4.209   On August 8, 2019, Hobbs sent an email to Taber and stated that CDI had already compensated Taber for the $600 of 2017 employer contributions. Hobbs wrote:

CDI will also not pay what your tax advisor noted as "missed HSA employer contribution for 2017 and 2018." I checked ADP: even though the $6,150 HSA contribution did not enter your HSA account in 2017 (which was CDI's error), CDI did, nonetheless, make the employer contribution (which was $600) in 2017; likewise, CDI made its full employer HSA contribution in 2018 (which was $1,200). Hence, there being no missed HSA employer contribution in either 2017 or 2018, there is no missed contribution for CDI to pay.

4.210   Hobbs provided no accounting in his August 8, 2019 email to Taber to support his conclusion that CDI had made the $600 2017 employer contribution.

4.211   On August 12, 2019, Taber emailed Hobbs and explained that CDI had previously agreed to pay Taber the $1,100 for HSA employer contributions as part of a $11,232.77 payment for various damages.

4.212   Later on August 12, 2019, Hobbs responded to Taber's August 12, 2019 email and stated that, according to CDI's records, Taber had received full employer HSA matches in both 2017 and 2018. Hobbs wrote:

The $11,232.77 includes $1,100 for "*Missed HSA employer contribution for 2017 and 2018.*" I looked at our records which show definitively that you received a

SECOND AMENDED COMPLAINT-40
NO. C20-1633RSL

full employer HSA match in both 2017 and 2018; hence, there being no missed HSA matches, there are no matches for which to provide you compensation.

4.213   In his August 12, 2019 responsive email to Taber, Hobbs did not provide a copy of the records he claimed to have looked at.

4.214   In his August 12, 2019 responsive email to Taber, Hobbs did not provide any evidence for his conclusion that CDI had made the $600 2017 employer contribution.

4.215   CDI had never paid Taber the missing $600 of 2017 employer contributions.

<u>CDI Refused to Pay Taxes on the $600 of 2017 Employer Contributions</u>

4.216   In her June 24, 2019 letter, Senthivel stated that CDI owed Taber a reimbursement for taxes Taber would pay on the previously withheld $600 2017 employer contribution when CDI paid Taber that $600.

4.217   In his August 8, 2019 responsive email to Taber, Hobbs refused to reimburse Taber for the taxes Taber will be required to pay once she receives the previously withheld $600 2017 employer deposit, stating:

> What CDI will not pay is the following:
> • Tax on the 2017 employer match;

4.218   CDI has not reimbursed Taber for the taxes Taber will be required to pay once she receives the previously withheld $600 2017 employer deposit.

<u>CDI Paid No Interest on the HSA Contributions That CDI Kept for Itself and Then Kept from Taber</u>

4.219   CDI has not paid interest to Taber for the time CDI kept for itself the $600 of 2017 employer contributions, the $6,300 of 2017 employee contributions, and the $2,125 of 2018 employee contributions that CDI failed to deposit into Taber's HSA on the payday.

SECOND AMENDED COMPLAINT-41
NO. C20-1633RSL

4.220   CDI has not paid interest to Taber for the time CDI kept for itself the $600 of 2017 employer contributions and the $6,300 of 2017 employee contributions that CDI kept out of Taber's hands by depositing that money into Taber's HSA as a 2018 employee contribution.

<u>CDI Failed to Pay Most of the Lost Interest on the 2017 Employer and Employee Contributions.</u>

4.221   CDI compensated Taber at 4% per year for 18 years for lost HSA interest on $6,150 of the missed 2017 employee contributions.

4.222   CDI did not compensate Taber any amount for lost HSA interest on the $600 of the missed 2017 employer contributions.

4.223   CDI is required by Seattle and Washington State law to compensate Taber at 12% per year for lost HSA interest.

<u>CDI Failed to Pay Taxes on The Lost Interest That CDI Owes for the Missed 2017 Employer and Employee Contributions</u>

4.224   Investors are not required to pay taxes on interest earned in an HSA when the interest is withdrawn so long as the money is used for qualified healthcare costs.

4.225   CDI did not compensate Taber for the taxes she must pay when she withdraws the interest she earns on the money CDI paid Taber for the lost HSA interest.

<u>CDI Refused to Pay Lost Interest on The IRA Contribution That Taber Was Denied Because CDI Inflated Her 2018 Income</u>

4.226    In 2018, a head of household earning $63,000 or less could deposit $5,500 into a deductible IRA. The deduction phased out between $63,000 and $73,000.

4.227   CDI inflated Taber's 2018 income from $61,036 to $66,836 by including $5,800 of the $6,300 of 2017 HSA wage deductions in Taber's 2018 IRS formW-2.

4.228   The incorrect overstatement of Taber's 2018 income on the W-2 CDI issued to Taber caused Taber's contribution eligibility to phase by approximately $3,836. As a result,

SECOND AMENDED COMPLAINT-42
NO. C20-1633RSL

Taber lost the opportunity to contribute to Taber's IRA by the amount that corresponds the with $3,836 phaseout.

4.229   CDI did not compensate Taber for the lost IRA interest.

CDI Refused to Pay Increased 2018 Taxes That Resulted from Excessive HSA Contributions

4.230   CDI refused to pay Taber's increased taxes that resulted from exceeding the 2018 combined HSA contribution limit. In the final email to Taber on August 12, 2019, Hobbs stated that the inconsistencies were Taber's fault and that CDI would not be reimbursing Taber for Taber's 2017 and 2018 HSA contributions. Hobbs wrote:

> Second, the $858 was due to over contribution to your HSA in 2018. Although CDI contributed to the 2017 HSA mishap, other than confusion, the over-contribution in 2018 does not sit squarely on CDI's shoulders. Even with the 2017 contribution that didn't make it into your HSA account until 2018, you still would have over-contributed in 2018; hence, this being the case (that there would have an over-contribution even if there had been 2017 HSA mishap), it is not reasonable for CDI to reimburse these amounts.

CDI Failed to Reimburse Taber for Paid Time Off

4.231   CDI did not compensate Taber for two days of accrued paid time off.

CDI Failed to Maintain Proper Wage Documentation

4.232   CDI repeatedly issued Taber inaccurate paystubs in 2017 and 2018.

4.233   CDI failed to issue Taber a paystub for employer contributions in 2017, 2018, and 2019.

4.234   CDI did not provide Taber an accounting that showed that CDI had paid the $600 of 2017 employer contributions.

4.235   CDI did not keep any accounting of employer contributions to Taber's account.

4.236   CDI did not provide Taber an accounting that explained the nonexistent $500 deposit.

SECOND AMENDED COMPLAINT-43
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.237   CDI would not provide Taber an accounting of the amounts CDI claimed Taber had overcontributed to her HSA.

4.238   On July 27, 2019, Taber sent an email to Hobbs requesting for documentation of Taber's HSA deductions and contributions. Taber wrote:

> I will also need documentation from CDI as to what transpired. I had originally brought the issue of the missing money from my account to Julie in December of 2017. There had been some issues with her agreeing on the amount (what was on my paychecks did not match what she said she saw in ADP). There had also been money missing from the CDI contribution portion which she did not agree on but Collene eventually documented was right and that CDI had not made $1100 of their contribution to my account. She eventually had CDI write a check to HSA to fund my account but the amount was incorrect and the check bounced which caused the tax deadline for 2018 to be missed. So as you can see I now have 3 years of taxes with issues and should the IRS audit me because of the discrepancies between my paychecks, W2 and HSA and incorrect taxable income for all 3 years, I need to be able to provide clear documentation of what happened and that this was a CDI error and errors on my part.

4.239   On August 8, 2019, Hobbs responded to Taber's July 27, 2019 email but did not address Taber's request for documentation.

4.240   On August 12, 2019, Taber sent another email to Hobbs requesting documentation regarding Taber's HSA deductions and contributions to avoid discrepancies should Taber be audited by the IRS. Taber wrote:

> I also still feel that a brief letter documenting the error, effect and resolution would be helpful in the event that I am contacted or audited by the IRS due to the discrepancies between my accounts and taxes. In the absence of such documentation I will have to rely on emails and texts and my concern is that it will initiate a deeper investigation for all parties involved due to the length this issue has gone on, the number of players involved and the errors made. I feel a brief document summarizing it would show a better resolution to the matter.

4.241   Later on August 12, 2019, Hobbs responded to Taber's August 12, 2019 email stating that he did not think Taber needed the documentation and explaining that CDI's accounting and handling of Taber's HSA had been "very transparent." Hobbs wrote:

SECOND AMENDED COMPLAINT-44
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

Everything that has transpired with your HSA and taxes is very transparent; I think you have all the documentation you need (plus you have dozens on e-mail on this topic between you and the company.). Also (and this is not tax advice—I'm not a tax attorney or advisor) the IRS generally only looks back three years. Also, my understanding is (again, I'm not a tax advisor or attorney, so you'll need to verify this yourself), the IRS generally isn't too upset by those who revise their filings to pay *more* taxes; i.e., my understanding is that revising your filing to pay more taxes isn't viewed by the IRS as particularly suspicious and, therefore, generally has a low probability of, in and of itself, triggering an audit. If in the next three years the IRS requires additional explanation, and you don't already have the information you need in e-mails, etc. to explain it, I'm sure that company will be happy to provide any missing information.

4.242   During the time Taber worked for CDI, CDI did not post wage-law posters in the workplace that are required by city, state, and federal law.

<u>CDI Denied Taber Severance Pay in Retaliation for Taber's Making A Wage Claim</u>

4.243   CDI offered severance pay to Taber and other CDI employees laid off at the same Taber was terminated.

4.244   CDI offered employees a severance amount that CDI calculated using a formula in a plan called the Exempt Employee severance plan ("the Plan").

4.245   To receive the severance, CDI required all employees other than Taber to release hypothetical unlikely-to-materialize legal claims.

4.246   To receive the severance, CDI required Taber to release her claim for the $600 2017 employee contribution. CDI knew Taber was claiming that CDI had not paid the $600 2017 employer contribution.

4.247   To receive the severance, CDI required Taber to release her claim for the nonexistent $500 deduction that Taber still thought CDI owed to her.

4.248   When CDI offered the severance pay, CDI knew Taber thought CDI owed her he nonexistent $500 deduction.

SECOND AMENDED COMPLAINT-45
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.249   To receive the severance, CDI required Taber to release all of the other claims asserted in this lawsuit.

4.250   When CDI offered the severance pay, CDI knew that it was liable for at least double damages for the wage deductions that CDI had failed to deposit on the payday pursuant to city, state, and federal law.

4.251   Hobbs is an attorney who was admitted to the Washington State Bar in 2006.

4.252   In an August 12, 2019 email, Hobbs made clear that CDI would not make any substantive changes to Taber's severance offer. Hobbs wrote:

> The upshot of the below is that the company will not be making any additional changes to your severance agreement—the final offer is the one you are now in receipt of; likewise the company's HSA reimbursement/payment decision (the reimbursement/payment you will be receiving this Thursday) is also final. Hence, while I suspect that may not agree with some of the company's decisions/responses below, and may wish to submit additional rebuttals, please know that the company is not open to further negotiation on these topics. As I point out below, if you don't agree with the severance agreement verbiage, you have every right to let the 45 days' time in which you have to consider and sign the agreement lapse, and receive nothing. I point this out, not to be snarky at all, but to simply reiterate the fact that we're not requiring you to sign anything; the decision to sign is solely up to you.

### CDI Failed to Provide Taber COBRA Notice

4.253   On July 17, 2019, CDI terminated Taber's employment effective July 17, 2019.

4.254   On July 17, 2019, Taber was a plan participant pursuant to 29 U.S.C.A. § 1002(7) in the Healthcare Plan.

4.255   CDI's termination of Taber caused Taber to lose health insurance coverage under the Healthcare Plan.

4.256   CDI's July 17, 2019 termination of Taber was a qualifying event under 29 U.S.C.A. § 1163.

SECOND AMENDED COMPLAINT-46
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

4.257   After being terminated on July 17, 2019, Taber was entitled to a notice of COBRA continuation coverage from the Healthcare Plan's administrator pursuant to 29 U.S.C.A. § 1166.

4.258   After CDI terminated Taber on July 17, 2019, CDI did not provide Taber a notice of COBRA continuation coverage.

4.259   After CDI terminated Taber on July 17, 2019, nobody sent Taber a notice of COBRA continuation coverage.

<u>CDI Failed to Provide LT COBRA Notice</u>

4.260   On July 17, 2019, LT was a plan participant pursuant to 29 U.S.C.A. § 1002(7) in the Healthcare Plan.

4.261   CDI's July 17, 2019 termination of Taber caused LT to lose health insurance coverage under Healthcare Plan

4.262   CDI's July 17, 2019 termination of Taber was a qualifying event for LT under 29 U.S.C.A. § 1163.

4.263   After Taber was terminated on July 17, 2019, LT was entitled to a notice of COBRA continuation coverage from the Healthcare Plan's administrator pursuant to 29 U.S.C.A. § 1166.

4.264   After CDI terminated Taber on July 17, 2019, CDI did not provide LT a notice of COBRA continuation coverage.

4.265   After CDI terminated Taber on July 17, 2019, nobody sent LT a notice of COBRA continuation coverage.

<u>Taber Incurred Medical Expenses</u>

4.266   After losing coverage under the Healthcare Plan, Taber incurred medical expenses.

SECOND AMENDED COMPLAINT-47
NO. C20-1633RSL

<u>LT Incurred Medical Expenses</u>

4.267   After losing coverage under the Healthcare Plan, LT incurred medical expenses.

## V.   <u>CAUSES OF ACTION, DAMAGES, AND RELIEF REQUESTED</u>

5.1   Taber realleges here the paragraphs in section IV.

### FIRST: <u>WILLFUL WITHHOLDING OF 2017 EMPLOYEE CONTRIBUTIONS</u>

5.2   An employer shall pay all compensation owed to an employee on an established pay day. Defendants Healthcare Plan and CDI in its capacity as the Healthcare Plan administrator (hereinafter, the "**Employer Defendants**") did not pay the Plaintiff on the established payday or at any time the $600 owed as 2017 HSA employer contributions. The Employer Defendants' conduct, acts, and/or omissions including willful withholding of wages constitutes a willful failure to pay wages pursuant to SMC 14.20.090, RCW 49.52.050, and RCW 49.522.070.

5.3   As a result of the Employer Defendants' willful withholding of wages, Taber suffered the following damages and seeks the following award and remedies:

(1) $600 of unpaid employer contributions;

(2) $ 1,200 in double liquidated damages pursuant to SMC 14.20.090;

(3) $ 1,200 in double punitive damages pursuant to RCW 49.48.050 and RCW 49.48.070; and,

(4) Interest on the unpaid $600 pursuant to SMC 14.20.090 at 12 percent per annum, or the maximum rate permitted under RCW 19.52.020, in an amount to be proven at trial.

### SECOND: <u>UNLAWFUL WAGE REBATE AND WILLFUL WITHHOLDING OF 2017 EMPLOYEE CONTRIBTIONS</u>

SECOND AMENDED COMPLAINT-48
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

5.4     The Employer Defendants deducted and kept for itself $6,300 of Taber's 2017 wages. The Employer Defendants' conduct, acts, and/or omissions constitute an unlawful wage rebate and willful withholding of wages pursuant to SMC 14.20.090, RCW 49.52.050, and RCW 49.522.070.

5.5     As a result of the Employer Defendants' unlawful wage rebate and willful withholding of wages, Taber suffered the following damages and seeks the following award and remedies:

(1) $0 of the eventually paid $6,300 late wage payments;

(2) $12,600 in double liquidated damages pursuant to SMC 14.20.090;

(3) $12,600 in double punitive damages pursuant to RCW 49.48.050 and RCW 49.48.070; and,

(4) $1,104 in interest on $6,300 pursuant to SMC 14.20.090 at "12 percent per annum, or the maximum rate permitted under RCW 19.52.020" for 533 days from October 15, 2017 to March 31, 2019 when Taber withdrew the funds from the HSA. (Daily interest accrued: $2.071).

### THIRD: WILLFUL WITHHOLDING OF WAGES IN 2017 DUE TO APPLICATION OF PAYMENTS TO ONGOING WAGE DEBT

5.6     The Employer Defendants took wages from Taber and kept those wages maintaining a wage debt owed to Taber from mid-2017 to the end of 2017. As a result of the Employer Defendants' choice to maintain an ongoing wage debt to Taber, each of CDI's payments to Taber after the debt began is applied to the prior debt pursuant to the doctrine of application of payments. Since the payments were applied to the past wage debt, those payments did not cover the full amount of wages due on the date of the payment.

SECOND AMENDED COMPLAINT-49
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

5.7     As a result of the Employer Defendants' failure to pay 2017 wages on payday, Taber suffered the following damages and seeks the following award and remedies:

(1) $0 of the eventually paid $11,044 late wage payments;

(2) $22,088 in double liquidated damages pursuant to SMC 14.20.090, RCW 49.46.020; 29 U.S.C. § 206, 29 U.S.C. § 207, and 29 U.S.C. § 216(b);

(3) $22,088 in double punitive damages pursuant to RCW 49.46.020, RCW 49.48.050 and RCW 49.48.070; and,

(4) Interest at 12 percent per year on at least $22,088 pursuant to SMC 14.20.090, RCW 19.52.020, and 29 U.S.C. § 216(b).

## FOURTH: DENIAL OF INTEREST ON MISSED 2017 EMPLOYEE CONTRIBUTIONS

5.8     The Employer Defendants failed to deposit $6,300 of employee contributions into Taber's HSA in 2017. The Employer Defendants paid 4% interest on $6,150 of the $6,300 for 18 years of interest accrual. The Employer Defendants owed 12% interest for 18 years pursuant to SMC 14.20.090 and RCW 19.52.020.

5.9     As a result of the Employer Defendants' failure to deposit Taber's 2017 employee contributions into Taber's HSA, Taber suffered the following damages and seeks the following award and remedies:

(1) $22,746, which consists of $41,143 (tax-free interest pursuant to SMC 14.20.090 at 12 percent per annum or the maximum rate permitted under RCW 19.52.020 for 18 years on $6,150 of wrongfully withheld 2017 employee contributions) plus $4,937 (for future 12% income taxes on $41,143 of interest earned that would not have been taxed when withdrawn from the HSA) reduced to the present value $22,746.38

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

(which is the present value of $46,080 ($41,143 + $4,937) at 4% over 18 year period);

(2) $6,309, which CDI previously paid for lost tax-deferred income at four percent on $6,150 of wrongfully withheld 2017 employee contributions;

(3) $45,492. in double liquidated damages pursuant to SMC 14.20.090; and,

(4) $45,492. in double punitive damages pursuant to RCW 49.48.050 and 49.48.070.

## FIFTH: <u>DENIAL OF TAX-FREE INTEREST ON 2017 EMPLOYER CONTRIBUTIONS</u>

5.10   The Employer Defendants failed to deposit $600 of employer contributions into Taber's HSA in 2017. The Employer Defendants owe 12% interest pursuant to SMC 14.20.090 and RCW 19.52.020.

5.11   As a result of the Employer Defendants' failure to deposit Taber's 2017 employer contributions into Taber's HSA, Taber suffered the following damages and seeks the following award and remedies:

(1) $210, which is the 2020 income tax on the $600 of 2017 employer contributions at a rate of 35%;

(2) $339, which consists of $615.49 (tax-free interest of pursuant to SMC 14.20.090 at 12 percent per annum, or the maximum rate permitted under RCW 19.52.020 for 18 years on $600 of wrongfully withheld 2017 employee contributions) plus $74 (for the future 12% income taxes on $615.49 of interest that would not have been taxed when withdrawn from the HSA) reduced to the present value of $339 (which is the present value of $689 ($615 + $74) at 4% over 18 year period;

(3) $678 in double liquidated damages pursuant to SMC 14.20.090; and,

SECOND AMENDED COMPLAINT-51
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

(4) $678 in double punitive damages pursuant to RCW 49.48.050 and 49.48.070.

**SIXTH: UNLAWFUL WAGE REBATE AND WILLFUL WITHHOLDING OF 2018 EMPLOYEE CONTRIBUTIONS**

5.12    The Employer Defendants deducted and kept for itself $2,125 of Taber's 2017 wages. The Employer Defendants' conduct, acts, and/or omissions constitute an unlawful wage rebate and willful withholding of wages pursuant to SMC 14.20.090, RCW 49.52.050, and RCW 49.522.070.

5.13    As a result of the Employer Defendants' unlawful wage rebate and willful withholding of wages, Taber suffered the following damages and seeks the following award and remedies:

(1) $0 of the eventually paid $2,125 late wage payments;

(2) $4,250 in double liquidated damages pursuant to SMC 14.20.090;

(3) $4,250 in double punitive damages pursuant to RCW 40.49.050 and 49.48.070; and,

(4) $79 in Interest on $2,125 pursuant to SMC 14.20.090 at "12 percent per annum, or the maximum rate permitted under RCW 19.52.020" for 113 days from February 1, 2018 to May 25, 2018 (Daily interest accrued: $0.699)

**SEVENTH: WILLFUL WITHHOLDING OF 2018 EMPLOYER CONTRIBUTIONS**

5.14    An employer shall pay all compensation owed to an employee on an established regular pay day. The Employer Defendants did not pay any of Plaintiff's four 2018 employer contributions on or before the payday.

5.15    As a result of the Employer Defendants' willful withholding of employer contributions, Taber suffered the following damages and seeks the following award and remedies:

SECOND AMENDED COMPLAINT-52
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

(1) $0 of the eventually paid $1,200 late wage payments;

(2) $2,400 in double liquidated damages pursuant to SMC 14.20.090; and,

(3) $2,400 in double punitive damages pursuant to RCW 40.49.050 and 49.48.070.

## EIGHTH: WILLFUL WITHHOLDING OF WAGES IN 2018 DUE TO APPLICATION OF PAYMENTS TO ONGOING WAGE DEBT

5.16    The Employer Defendants maintained a wage debt to Taber for the entire year of 2018. As a result of the Employer Defendants' choice to maintain an ongoing debt to Taber, each of CDI's payments to Taber in 2018 is applied to the prior debt pursuant to the doctrine of application of payments. Because payments were applied to the past wage debt, those payments did not cover the full amount of wages due on the date of the payment.

5.17    As a result of the Employer Defendants' failure to pay employer contributions, Taber suffered the following damages and seeks the following award and remedies:

(1) $0 of the eventually paid $53,141 late wage payments;

(2) $106,282 in double liquidated damages pursuant to SMC 14.20.09;

(3) $106,282 in double punitive damages pursuant to RCW 49.48.050 and RCW 49.48.070; and,

(4) Interest on $53,141 pursuant to SMC 14.20.090 at 12 percent per annum, or the maximum rate permitted under RCW 19.52.020, in an amount to be proven at trial.

## NINTH: WILLFUL WITHHOLDING OF WAGES IN 2019 DUE TO APPLICATION OF PAYMENTS TO ONGOING WAGE DEBT

5.18    The Employer Defendants maintained a wage debt to Taber for the entire time Taber worked for CDI in 2019. As a result of the Employer Defendants' choice to maintain an ongoing debt to Taber, each of CDI's payments to Taber in 2019 is applied to the prior debt pursuant to the doctrine of application of payments. Because payments were applied to the past

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

wage debt, those payments did not cover the full amount of wages due on the date of the payment.

5.19    As a result of the Employer Defendants' failure to pay 2019 wages on payday, Taber suffered the following damages and seeks the following award and remedies:

(1) $0 of the eventually paid $15,646 late wage payments;

(2) $31,292 in double liquidated damages pursuant to SMC 14.20.090;

(3) $31,292 in double punitive damages pursuant to RCW 49.48.050 and RCW 49.48.070; and,

(4) Interest on $15,646 pursuant to SMC 14.20.090 at 12 percent per annum, or the maximum rate permitted under RCW 19.52.020, in an amount to be proven at trial.

### TENTH: FAILURE TO REIMBURSE PAID TIME OFF

5.20    The Employer Defendants had a policy to offer paid time off and failed to pay Taber two days of accrued paid time off when Taber was terminated. Paid time off qualifies as a wage.

5.21    As a result of the Employer Defendants' failure to reimburse paid time off, Taber suffered the following damages and seeks the following award and remedies:

(1) $524 for unreimbursed two days of paid time off at $262 per day;

(2) $1,048 in double liquidated damages pursuant to SMC 14.20.090;

(3) $1,048 in double punitive damages pursuant to RCW 49.48.050 and RCW 49.48.070; and,

(4) Interest on $524 pursuant to SMC 14.20.090 at 12 percent per annum, or the maximum rate permitted under RCW 19.52.020, in an amount to be proven at trial.

SECOND AMENDED COMPLAINT-54
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

## ELEVENTH: EMOTIONAL DISTRESS CAUSED BY WILLFUL WAGE WITHHOLDING

5.22    Pursuant to SMC 14.20.090, an employee denied wages may recover any legal or equitable relief, which includes emotional-distress damages. The Employer Defendants intentionally and recklessly withheld Taber's wages.

5.23    As a result of the Employer Defendants' willful withholding of wages and recklessly incompetent attempts to correct the withholding, Taber suffered the following damages and seeks the following award and remedies:

(1) $100,000 in emotional distress pursuant to SMC 14.20.090.

## TWELFTH: FAILURE TO REIMBURSE INCOME TAX REFUND ON $500 REPORTED ON 2018 W-2

5.24    The Employer Defendants overstated Taber's income by $500 on an amended 2018 IRS form W2 that they issued to Taber.

5.25    As a result of the Employer Defendants' inaccurate accounting, Taber suffered the following damages and seeks the following award and remedies:

(1) 2018 income tax on the $500 overstatement of income, in an amount to be proven at trial; and,

(2) Interest on the taxes awarded in an amount to be proven at trial pursuant to SMC 14.20.090 at "12 percent per annum, or the maximum rate permitted under RCW 19.52.020").

## THIRTEENTH: LOST TAX DEFERRED INTEREST ON IRA CONTRIBUTION LOST DUE TO 2018 INCOME INFLATION

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

5.26     The Employer Defendants issued an incorrect IRS form W2 that overstated Taber's 2018 thereby causing Taber to lose the right to invest in an IRA. As a result, Taber lost future IRA interest.

5.27     As a result of the Employer Defendants' inflation of Taber's income and the loss of the IRA interest, Taber suffered the following damages and seeks the following award and remedies:

(1) $660 in lost tax deferred interest on IRA contributions;

(2) $1,320 in double liquidated damages pursuant to SMC 14.20.090; and,

(3) $1,320 in double punitive damages pursuant to RCW 49.48.050 and RCW 49.48.070.

**FOURTEENTH: DAMAGES RESULTING FROM HSA OVERCONTRIBUTIONS**

5.28     The Employer Defendants deposited $6,300 of Taber's 2017 wage deductions into Taber's HSA thereby causing Taber to exceed the annual contribution limit.

5.29     As a result of the Employer Defendants' overcontribution, Taber suffered the following damages and seeks the following award and remedies:

(1) $858 in increased taxes resulting from excessive HSA contributions; and,

(2) Interest on $858 pursuant to SMC 14.20.090 at 12 percent per annum, or the maximum rate permitted under RCW 19.52.020, in an amount to be proven at trial.

**FIFTEENTH: AN INJUNCTION TO REMEDY DEFENDANT'S WAGE-LAW VIOLATIONS**

5.30     The Employer Defendants repeatedly egregiously violated Seattle and Washington State wage laws in their interactions with Taber. Taber requests injunctive relief pursuant to SMC 14.20.090 and RCW 49.46.100 to prevent future violations.

SECOND AMENDED COMPLAINT-56
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

5.31    As a result of the Employer Defendants' wage-law violations, Taber requests the following injunction requiring the CDI to do the following:

(1) Prominently post notice on CDI's property where CDI's employees will see the post a detailed description of CDI's violations described above,

(2) Provide written notice to each of CDI's employees for a period of time determined by the Court that details CDI's violations described above,

(3) Provide mandatory advanced professional training on city, state, and federal wage laws to CDI's management in its human-resources and finance departments;

(4) Provide mandatory advanced professional training on city, state and federal HSA laws to CDI's management in its human-resources and finance departments;

(5) Provide mandatory non-management training on city, state and federal wage rights to CDI's non-management employees in its human resources and finance departments;

(6) Provide mandatory non-management training on city, state and federal HSA law to CDI's non-management employees in its human resources and finance departments;

(7) Prominently post notice a copy of the injunction that this court enters on CDI's property where CDI's employees will see the post;

(8) Mail by certified mail a copy of the injunction to (a) the City of Seattle Office of Labor Standards, (b) the Washington State Department of Labor, and (c) the US Department of Labor; and,

(9) File with the Court proof of the mailing described above, including a date stamped copy of the certified mail receipt.

SECOND AMENDED COMPLAINT-57
NO. C20-1633RSL

## SIXTEENTH: ATTORNEY FEES AND COSTS FOR WAGE-WITHHOLDING CLAIMS

5.32    City and state law provide for attorney fees and costs to employees who prevail in claims for wages.

5.33    As a result of the Employer Defendants' wage-law violations, Taber suffered the following damages and seeks the following award and remedies:

(1) Attorney fees pursuant to SMC 14.20.090, RCW 4.84.010, RCW 4.84.080, RCW 4.84.090, RCW 49.46.090, RCW 49.48.030, RCW 49.52.050, and RCW 49.52.070 in an amount that will be proven at trial; and,

(2) Costs pursuant to SMC 14,20.090, RCW 4.84.010, RCW 4.84.080, RCW 4.84.090, RCW 49.46.090, RCW 49.48.030, RCW 49.52.050, and RCW 49.52.070 in an amount that will be proven at trial.

## SEVENTEENTH: WRONGFUL WITHHOLDING OF SEVERANCE PAY IN RETALIATION FOR MAKING WAGE CLAIM

5.34    The Employer Defendants retaliated against Taber in violation of SMC 14.20.090, RCW 49.46.100(2), RCW 49.58.010, 49.58.040, 49.58.050, 49.58.070, 49.58.080, and 29 U.S.C § 215(a)(3). The Employer Defendants refused to give Taber severance pay that the Employer Defendants gave to other employees unless Taber abandoned her right to earned wages and her right to sue for the violations described in the Complaint. The Employer Defendants knew or should have known after a reasonable investigation that CDI owed Taber wages and that CDI had repeatedly egregiously violated Taber's wage rights. CDI retaliated by forcing Taber to pay consideration for the severance agreement that far exceeded that paid by other CDI employees.

SECOND AMENDED COMPLAINT-58
NO. C20-1633RSL

5.35    As a result of the Employer Defendants' retaliatory withholding of severance

pay, Taber suffered the following damages and seeks the following award and remedies:

(1) $9,183 Severance payment owed to Taber;

(2) $18,366 in double liquidated damages pursuant to SMC 14.20.090;

(3) $18,366 in double punitive damages pursuant to RCW 49.48.050 and RCW

49.48.070; and,

(4) $5,000 in statutory penalties pursuant to SMC 14.20.90

(5) Interest on $9,182.68 pursuant to SMC 14.20.090 at 12 percent per annum, or the

maximum rate permitted under RCW 19.52.020, in an amount to be proven at trial.

**EIGHTEENTH: <u>WRONGFUL DISCHARGE IN RETALIATION FOR MAKING WAGE CLAIM</u>**

5.36    The Employer Defendants retaliated against Taber in violation of SMC

14.20.090, RCW 49.46.100(2), 29 U.S.C § 215(a)(3), and 29 U.S.C. § 216(b) by wrongfully

terminating Taber in retaliation for making a wage clam.

5.37    As a result of the Employer Defendants' wrongful and retaliatory discharge,

Taber suffered the following damages and seeks the following award and remedies:

(1) Lost past wages of $3,673.07 every two weeks from July 17, 2019 until entry of

judgment in this case, in an amount to be proven at trial;

(2) Interest at 12 percent per year on lost past wages pursuant to SMC 14.20.090,

RCW 19.52.020, 29 U.S.C § 215(a)(3), and 29 U.S.C. § 216(b) in an amount to be

proven at trial;

(3) Lost future wages at $3,673.07 every two weeks, in an amount to be proven at trial;

(4) Lost past health insurance coverage, in an amount to be proven at trial;

SECOND AMENDED COMPLAINT-59
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

(5)   Future health insurance coverage, in an amount to be proven at trial;

(6)   Other past lost benefits, in an amount to be proven at trial;

(7)   Other future lost benefits, in an amount to be proven at trial;

(8)   Lost earning capacity due to Taber's unemployment, in an amount to be proven at trial; and,

(9)   Double liquidated damages for lost past and future wages pursuant to SMC 14.20.090 and 29 U.S.C. § 216(b).

(10) Consequential damages pursuant to SMC 14.20.090, in an amount that will be proven at trial; and,

(11) $5,000 in statutory penalties pursuant to SMC 14.20.90.

## NINETEENTH: EMOTIONAL DISTRESS CAUSED BY RETALIATORY DENIAL OF SEVERANCE PAYMENT AND REALIATORY DISCHARGE

5.38   The Employer Defendants' retaliatory denial of severance pay and retaliatory termination caused emotional distress. Taber seeks emotional distress damages pursuant to SMC 14.20.090,   29 U.S.C § 215(a)(3), and 29 U.S.C. § 216(b).

5.39   As a result of the Employer Defendants' retaliatory denial of severance payment and discharge, Taber suffered the following damages and seeks the following award and remedies:

(1) $250,000 in emotional distress pursuant to SMC 14.20.090.

## TWENTIETH: AN INJUNCTION TO PREVENT FUTURE RETALIATION

5.40   To prevent the Employer Defendants from engaging in unlawful retaliation in the future, Taber requests the same injunctive relief as is described above, pursuant to SMC 14.20.090, RCW 49.46.100, 29 U.S.C § 215(a)(3) and 29 U.S.C. § 216(b).

SECOND AMENDED COMPLAINT-60
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

## TWENTY-FIRST: WRONGFUL DISCHARGE AND AGE AND GENDER DISCRIMINATION

5.41     The Employer Defendants terminated Taber in part due to age and gender discrimination in violation of RCW Ch. 49.60. The termination also constitutes wrongful discharge in violation of public policy.

5.42     As a result of the Employer Defendants' discriminatory and wrongful termination, Taber was damaged in the same ways that she was damaged by the wrongful discharge in retaliation for making wage claim, described above.

## TWENTY-SECOND: ATTORNEY FEES AND COSTS FOR WRONGFUL AND RETALIATORY DENIAL OF SEVERANCE PAY

5.43     As a result of the Employer Defendants' wrongful and retaliatory denial of severance pay, Taber suffered the following damages and seeks the following award and remedies:

(1) Attorney fees pursuant to SMC 14.20.090, RCW 4.84.010, RCW 4.84.080, RCW 4.84.090, RCW 49.46.090, RCW 49.48.030, RCW 49.52.050, RCW 49.52.070, and RCW 49.60.030 in an amount that will be proven at trial; and,

(2) Costs pursuant to SMC 14,20.090, RCW 4.84.010, RCW 4.84.080, RCW 4.84.090, RCW 49.46.090, RCW 49.48.030, RCW 49.52.050, RCW 49.52.070, and RCW 49.60.030 in an amount that will be proven at trial.

## TWENTY-THIRD: VIOLATIONS OF ERISA § 502(a)(1)(B)

5.44     In the alternative to the claims set forth above, as a result of the Employer Defendants' wrongful conduct in this case, Taber alleges that the Employer Defendants have violated the Employee Retirement Income Security Program ("ERISA") and seeks an award of

SECOND AMENDED COMPLAINT-61
NO. C20-1633RSL

damages and equitable relief for such violations of ERISA including damages pursuant to 29 U.S.C. § 502(a)(1)(B).

## TWENTY-FOURTH: BREACH OF CONTRACT

5.45   The Employer Defendants' conduct constitutes breaches of contracts with Taber.

5.46   As a result of the Employer Defendants' breach of contracts, Taber suffered the following damages and seeks the following award and remedies:

(1) Contract damages including direct and consequential damages, in an amount to be proven at trial.

## TWENTY-FIFTH: FAILURE TO PROVDE TABER AND LT COBRA NOTICE

5.47   CDI in its capacity as the Healthcare Plan administrator, CIGNA, and the Healthcare Plan (hereinafter the "**COBRA Defendants**") violated ERISA (including 29 U.S.C.A. §§ 1104, 1132, & 1161-1166) and are liable to Taber and LT for failing to provide Taber and LT COBRA notice.

5.48   As a result of the COBRA Defendants' failure to provide Taber and LT COBRA notice, Taber and LT suffered the following damages and seek the following award and remedies:

(1) Damages of $110 a day for every day after the first day following the last date on which CDI was obligated to provide Taber COBRA notice until the present day;

(2) Entry of judgment and an order that the COBRA Defendants are equitably estopped from denying COBRA coverage for Taber;

(3) Entry of judgment and an order that the statutory election period has been tolled until sixty days after this Court enters judgment in the present matter;

SECOND AMENDED COMPLAINT-62
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

(4) Entry of judgment and an order that Taber is entitled to elect COBRA benefits for any length of time after her termination, and entry of judgment and an order that the COBRA Defendants shall pay and indemnify Taber for all costs covered under the Healthcare Plan for the period of coverage Taber elects; and,

(5) Entry of judgment and an order that the COBRA Defendants shall pay Taber's attorney fees and costs pursuant to state and federal law including 29 U.S.C.A. §§ 1132(c)(1) & 1132(g)(1).

## TWENTY-SIXTH: BREACH OF FIDUCIARY DUTY FOR FAILURE TO PROVIDE COBRA NOTICE

5.49    The COBRA Defendants breached their fiduciary duty under ERISA by failing to provide Taber and LT COBRA notice and failing to provide insurance.

5.50    As a result of the COBRA Defendants' breach of their fiduciary duties, Taber and LT suffered the following damages and seek the following award and remedies:

(1) Entry of judgment and an order that the COBRA Defendants are equitably estopped from denying COBRA coverage for Taber and LT;

(2) Entry of judgment and an order that the statutory election period has been tolled until sixty days after this Court enters judgment in the present matter;

(3) Entry of judgment and an order that Taber and LT are entitled to elect COBRA benefits for any length of time after her termination, and entry of judgment and an order that the COBRA Defendants shall pay and indemnify Taber and LT for all costs covered under the Healthcare Plan for the period of coverage Taber elects for herself and LT; and,

SECOND AMENDED COMPLAINT-63
NO. C20-1633RSL

(4) Entry of judgment and an order that the COBRA Defendants shall pay Taber's and LT's attorney fees and costs pursuant to state and federal law including 29 U.S.C.A. §§ 1132(c)(1) & 1132(g)(1).

## TWENTY-SEVENTH: VIOLATIONS OF THE WASHINGTON STATE CONSUMER PROTECTION ACT FOR FAILURE TO PROVIDE COBRA NOTICE

5.51    The COBRA Defendants violated the Washington State Consumer Protection Act (the "**CPA**"), RCW Ch. 19.86 by denying COBRA notice.

5.52    As a result of the COBRA Defendants' violations the CPA, Taber and LT suffered the following damages and seek the following award and remedies:

(1) Entry of judgment and an order that the COBRA Defendants shall pay treble damages under the Washington Consumer Protection Act, RCW 19.86.090; and,

(2) Entry of judgment and an order that the COBRA Defendants shall pay Taber's and LT's attorney fees and costs pursuant to state and federal law including 29 U.S.C.A. §§ 1132(c)(1) & 1132(g)(1) and RCW 19.86.090.

## TWENTY-EIGHTH: NEGLIGENT FAILURE TO PROVIDE COBRA NOTICE

5.53    The COBRA Defendants were negligent in failing to provide Taber and LT COBRA notice.

5.54    As a result of the COBRA Defendants' violations the CPA, Taber and LT suffered the following damages and seek the following award and remedies:

(1) Medical expenses; and,

(2) Additional damages to be proven at trial.

## TWENTY-NINTH: BREACH OF HEALTHCARE PLAN CONTRACT

SECOND AMENDED COMPLAINT-64
NO. C20-1633RSL

5.55    The COBRA Defendants breached the terms of the Healthcare Plan and breached the employment contract with Taber by failing to provide Taber and LT COBRA notice.

5.56    As a result of the COBRA Defendants' violations the CPA, Taber and LT suffered the following damages and seek the following award and remedies:

(1) Medical expenses; and,

(2) Additional damages to be proven at trial.

## THIRTIETH: EQUITABLE ESTOPPEL REGARDING COBRA COVERAGE

5.57    The COBRA Defendants must be equitably estopped from denying COBRA coverage due to their failure to provide Taber and LT COBRA notice.

5.58    As a result of the COBRA Defendants' violations the CPA, Taber and LT suffered the following damages and seek the following award and remedies:

(1) Medical expenses; and,

(2) Additional damages to be proven at trial.

## THIRTY-FIRST: FRAUD, CONSTRUCTIVE FRAUD, NEGLIGENT MISREPRESENTATION REGARDING FAILURE TO PROVIDE COBRA NOTICE

5.59    The COBRA Defendants committed fraud, constructive fraud, and/or negligent misrepresentation under Washington common law by failing to provide Taber COBRA notice.

5.60    As a result of the COBRA Defendants' violations the CPA, Taber and LT suffered the following damages and seek the following award and remedies:

(1) Medical expenses; and,

(2) Additional damages to be proven at trial.

## THIRTY-SECOND: EQUITABLE RELIEF

SECOND AMENDED COMPLAINT-65
NO. C20-1633RSL

5.61    Taber requests additional equitable relief that the Court deems appropriate.

### THIRTY-THIRD: TAX GROSS UP

5.62    Taber requests a *Blaney* tax up pursuant to *Blaney v. International Association of Aero. Workers*, in an amount proven at trial.

### THIRTY-FOURTH: INTEREST

5.63    Taber requests prejudgment and post judgement interest at the statutory rate

### JOINT AND SEVERAL LIABILITY

5.64    Taber requests that judgment be entered against the Employer Defendants jointly and severally on all claims brought against them other than COBRA-related claims. Taber requests that judgment be entered against the COBRA Defendants jointly and severally on all claims brought against them other than non-COBRA-related claim.

## VI.    RELIEF REQUESTED

Plaintiff asks the Court to grant all damages and equitable relief requested in this complaint, all damages awardable pursuant to the claims listed above, and all damages and equitable relief awardable for the Defendants' conduct set forth in this complaint.

EXECUTED at Issaquah, Washington this November 11, 2021.

_____
John G. Barton, WSBA No. 25323
Attorney for Plaintiffs
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960
TheBartonLawFirm@GMail.com

SECOND AMENDED COMPLAINT-66
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

5.61     Taber requests additional equitable relief that the Court deems appropriate.

### THIRTY-THIRD: TAX GROSS UP

5.62     Taber requests a *Blaney* tax up pursuant to *Blaney v. International Association of Aero. Workers*, in an amount proven at trial.

### THIRTY-FOURTH: INTEREST

5.63     Taber requests prejudgment and post judgement interest at the statutory rate

### JOINT AND SEVERAL LIABILITY

5.64     Taber requests that judgment be entered against the Employer Defendants jointly and severally on all claims brought against them other than COBRA-related claims. Taber requests that judgment be entered against the COBRA Defendants jointly and severally on all claims brought against them other than non-COBRA-related claim.

### VI.     RELIEF REQUESTED

Plaintiff asks the Court to grant all damages and equitable relief requested in this complaint, all damages awardable pursuant to the claims listed above, and all damages and equitable relief awardable for the Defendants' conduct set forth in this complaint.

EXECUTED at Issaquah, Washington this November 11, 2021.

John G. Barton, WSBA No. 25323
Attorney for Plaintiffs
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960
TheBartonLawFirm@GMail.com

SECOND AMENDED COMPLAINT-66
NO. C20-1633RSL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com