1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEXANDRA TABER,

                 Plaintiff,

    v.

CASCADE DESIGNS, INC., et al.,

               Defendants.

CASE NO. 2:20-cv-01633-TL

ORDER REGARDING PARTIAL
SUMMARY JUDGMENT AND
MOTIONS FOR RELIEF FROM
DEADLINES

       This matter comes before the Court on Defendants' motion for partial summary judgment (Dkt. No. 59), Plaintiff's "Motion for Relief from the Amendment Deadline & Motion to Amend" (Dkt. No. 102) and Plaintiff's "Motion for Relief from Deadline and Objection/Surreply" (Dkt. No. 114). Having reviewed all of the parties' submissions, for the reasons explained in this Order, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for partial summary judgment; DENIES Plaintiff's request to strike portions of the motion for summary judgment (Dkt. No. 68); DENIES Plaintiff's requests for sanctions and for equitable estoppel raised in her response to the motion for summary judgment (Dkt. No. 64); GRANTS IN

PART and DENIES IN PART Plaintiff's first motion for relief from deadlines (Dkt. No. 102); and

DENIES Plaintiff's second motion for relief from deadlines (Dkt. No. 114).

## I.   BACKGROUND

Plaintiff Alexandra Taber initiated this case in state court in July 2020. Dkt. No. 1-1 at 57. She sued her employer, Cascade Designs, Inc. ("CDI"), individual CDI board members, and several Doe defendants (hereinafter "Defendants")[1] under city and state law for, *inter alia*, wrongful termination and mishandling of Health Savings Account ("HSA") contributions. *Id.* at 1–57. Defendants removed the case to federal court on November 5, 2020, on grounds that the gravamen of the complaint centered on claims arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), over which federal courts have exclusive, original jurisdiction. *See generally* Dkt. No. 1. After requiring additional briefing by the parties, the Court was satisfied that the complaint gave rise to federal jurisdiction. Dkt. No. 27; *see also* Dkt. Nos. 8, 11, 12, 13, and 14.[2]

Though Plaintiff seems to have made mountains of a molehill, the central facts of this case are quite simple. In 2017, Plaintiff elected to contribute $6,300 to her HSA account (an employee contribution) and CDI was to contribute $600 (an employer contribution). Dkt. No. 85 at 15, 26. Due to a series of banking errors, CDI was unable to deposit these amounts into Plaintiff's HSA account until shortly after the 2017 contribution deadline had passed. Dkt.

---

[1] Defendants have been inconsistent in labeling of motions. Beginning with the motion for partial summary judgment, counsel began filing motions solely on behalf of Defendant Cascade Designs, Inc. ("CDI"). *See* Dkt. No. 59 at 1. Yet, even that motion contained references to all remaining Defendants. *See, e.g.*, *id.* at 8 ("The Court should therefore grant judgment to all remaining Defendants on all of Plaintiff's wage claims.") Additionally, when the case was first removed to this Court, attorneys for Defendants certified that they were serving as counsel for "all named Defendants," and they have since appeared on behalf of all current Defendants. *See* Dkt. No. 2. For consistency and simplicity and as the same arguments would apply to all Defendants, the Court considers this motion as if filed on behalf of all remaining Defendants.

[2] Though Plaintiff Taber contests that ERISA preempts her HSA and severance claims, she did ask the Court to retain jurisdiction based on other federal law claims. Dkt. No. 14 at 1–3.

Nos. 59 at 2–3, 60 at 1–3. For several years, Plaintiff sought compensation from her employer

for the harms she claims resulted from these mistakes. *See generally* Dkt. No. 63-13 (emails

between the parties from 2019 regarding 2017 and 2018 HSA issues). CDI laid off Plaintiff in

July 2019. Dkt. No. 91 at 37. She did not receive severance after she refused to sign the company

separation agreement. Dkt. No. 59 at 12–13. She also claims CDI owes her two days of unused

paid time off (PTO), valued at $524. Dkt. No. 91 at 54. Plaintiff also alleges that she was never

mailed a Consolidated Omnibus Budget Reconciliation Act (COBRA) election notice and, thus,

was denied the opportunity to continue health insurance coverage for herself and a minor child.

*Id*. at 2, 46–47.

### 1.   Relevant History of this Litigation

Since the case was removed to the Western District of Washington, the parties have

engaged in unnecessarily bitter and counterproductive litigation tactics. Defendants sought to

strike the initial complaint, claiming violations of FRCP 8. *See* Dkt. No. 9 at 1–2. In opposition

to the motion, Plaintiff characterized Defendants' request as being motivated by a desire to

"delay," "hold the facts at bay," and "[o]bstruct and obfuscate to conceal [their] wrong." Dkt.

No. 15 at 13. The Court ultimately denied the motion to strike while simultaneously granting

Plaintiff's first motion to amend the complaint, finding that "the original pleading was not

unusually defective (notwithstanding certain editing failures) and that striking the pleading

would not 'secure the just, speedy, and inexpensive determination' of this action." Dkt. No. 40

at 2 (citing Fed. R. Civ. P. 1). Even while briefing the motion to amend the complaint, the parties

failed to meet a Court-ordered deadline to meet-and-confer and provide a Joint Status Report,

resulting in issuance of an order to show cause why the Court should refrain from imposing

sanctions. *See* Dkt. Nos. 28–32. The Court subsequently granted the parties' stipulated motion to

seal, Dkt. No. 50, but without cause, Plaintiff's counsel waited for over four months to comply

with the Court's directive to file nine redacted documents pursuant to that motion. *See* Dkt. No. 51 at 1–2 (order granting motion to seal entered on June 25, 2021); Dkt. Nos. 77–85 (all filed on November 8, 2021). The case was reassigned to Judge Tana Lin on December 13, 2021.

2.    **Motion for Summary Judgment**

On September 16, 2021, Defendants moved for partial summary judgment. They maintain that Plaintiff Taber's claims regarding the HSA, severance, COBRA notice, and taxes fail as a matter of law. *See generally* Dkt. No. 59. Specifically, they seek summary judgment on the following twenty-one (out of thirty-four) counts of Plaintiff's second amended complaint:

- Re: Employer Contributions to Plaintiff's HSA
    - Count 1: Willful Withholding of 2017 Employer[3] Contributions
    - Count 3: Willful Withholding of Wages in 2017 Due to Application of Payments to Ongoing Wage Debt
    - Count 5: Denial of Tax-Free Interest on 2017 Employer Contributions
    - Count 7: Willful Withholding of 2018 Employer Contributions
    - Count 8: Willful Withholding of Wages in 2018 Due to Application of Payments to Ongoing Wage Debt
    - Count 9: Willful Withholding of Wages in 2019 Due to Application of Payments to Ongoing Wage Debt
- Re: Plaintiff's Own Contributions to her HSA
    - Count 2: Unlawful Wage Rebate and Willful Withholding of 2017 Employee Contributions
    - Count 4: Denial of Interest on Missed 2017 Employee Contributions
    - Count 6: Unlawful Wage Rebate and Willful Withholding of 2018 Employee Contributions
- Re: Paid Time Off
    - Count 10: Failure to Reimburse Paid Time Off
- Re: Taxes
    - Count 12: Failure to Reimburse Income Tax Refund on $500 Reported on 2018 W-2
    - Count 13: Lost Tax Deferred Interest on IRA Contribution Lost Due to 2018 Income Inflation
    - Count 14: Damages Resulting from HSA Overcontributions

---

[3] Plaintiff mislabeled this count as one regarding "employee" contributions. *See* Dkt. No. 91 at 48. Other than this correction, the Court has labeled the various counts in this section to match Plaintiff's language in her second amended complaint.

- Re: Severance
    - o Count 17: Wrongful Withholding of Severance Pay in Retaliation for Making Wage Claim
- Re: COBRA Notice
    - o Count 24: Breach of Contract
    - o Count 25: Failure to Provide Taber and LT COBRA Notice
    - o Count 26: Breach of Fiduciary Duty for Failure to Provide COBRA Notice
    - o Count 27: Violations of the Washington State Consumer Protection Act for Failure to Provide COBRA Notice
    - o Count 28: Negligent Failure to Provide COBRA Notice
    - o Count 29: Breach of Healthcare Plan Contract
    - o Count 30: Equitable Estoppel Regarding COBRA Coverage

*See generally* Dkt. Nos. 59 and 91.

As Defendants have noted, some of Plaintiff's counts constitute requested remedies rather than legal claims. Dkt. No. 59 at 8, n.1 ("A number of Plaintiff's causes of action are requests for various forms of relief and do not state independent legal bases for relief."). Those seven counts are:

- Count 15: An Injunction to Remedy Defendant's Wage-Law Violations
- Count 16: Attorney Fees and Costs for Wage-Withholding Claims
- Count 20: An Injunction to Prevent Future Retaliation
- Count 22: Attorney Fees and Costs for Wrongful and Retaliatory Denial of Severance Pay
- Count 32: Equitable Relief
- Count 33: Tax Gross Up
- Count 34: Interest

The remaining six legal claims were not addressed in the motion for summary judgment:

- Count 11: Emotional Distress Caused by Willful Wage Withholding
- Count 18: Wrongful Discharge in Retaliation for Making Wage Claim
- Count 19: Emotional Distress Caused by Retaliatory Denial of Severance Payment and Retaliatory Discharge
- Count 21: Wrongful Discharge and Age and Gender Discrimination
- Count 23: Violations of ERISA § 502(a)(1)(B)
- Count 31: Fraud, Constructive Fraud, Negligent Misrepresentation Regarding Failure to Provide COBRA Notice

1    In her opposition to summary judgment, Plaintiff requested sanctions against Defendant

2    CDI, proclaiming that the party had "lied about facts and brazenly mischaracterized law." Dkt.

3    No. 64 at 20.  On October 8, 2021, Defendants filed their reply brief. Dkt. No. 66. Thereafter, on

4    October 12, 2021, Plaintiff submitted a motion to strike that did not relate to the reply brief. *See*

5    Dkt. No. 68. Rather, Plaintiff moved to strike portions of "Dkt # 59 and 60"—*i.e.,* Defendants'

6    motion for partial summary judgment, and a declaration supporting that motion, respectively. *Id.*

7    at 2; Dkt. No. 67 at 1. The motion was replete with legal and factual arguments attempting to

8    rebut some of Defendants' representations, but it cited no legal authority establishing Plaintiff's

9    ability to raise such arguments post-briefing. *See generally* Dkt. No. 68. The motion to strike

10   lists each section of the summary judgment motion and accompanying declaration that Plaintiff

11   objects to and seeks to strike. *See id*. In it, Plaintiff refers to "a new argument and new law"

12   allegedly raised by Defendants in their reply brief, but she did not request that the Court strike

13   any portions of that brief. *See id*. at 4.

14   On February 14, 2022, Plaintiff filed a "Motion for Relief from Deadline and Objection

15   to Unpleaded Affirmiative [*sic*] Defense in Defendant's Summary Judgment Motion." Dkt.

16   No. 114. In that motion, Plaintiff requested relief from an unspecified deadline to object to the

17   "new affirmative defense and arguments based on that defense" that were allegedly raised in

18   Defendants' Motion for Summary Judgment. *Id*. at 3. Notably, Plaintiff did not challenge in

19   either her response brief or motion to strike any of the arguments raised by Defendants in their

20   motion as a new purported affirmative defense. *See generally* Dkt. Nos. 64, 68.

21        3.    **Motions to Amend the Complaint**

22   Since Defendants moved for summary judgment, Plaintiff has twice sought leave to keep

23   amending her complaint. *See* Dkt. Nos. 65, 102. Defendants did not oppose the first of these

24   requests—which was filed on the deadline for amending the pleadings—and the Court approved

1   it. *See* Dkt. Nos. 65, 72, 73. Defendants do, however, oppose the most recent amendment

2   request, which was made on January 6, 2022. *See* Dkt. Nos. 102, 105.

3                    **II.    DISCUSSION**

4       **A.    Plaintiff's Motions to Strike/Surreplies**

5           The Court first considers Plaintiff's request to strike portions of Defendants' summary

6   judgment briefing (Dkt. No. 68) and her "Motion for Relief from Deadline and Objection to

7   Unpleaded Affirmiative [*sic*] Defense in Defendant's Summary Judgment Motion" (Dkt.

8   No. 114) because they impact the scope of evidence to be considered in assessing Defendants'

9   motions. The Court determines that Plaintiff's motions are both substantively deficient and

10  procedurally improper under the Local Rules of the Western District of Washington.

11          Courts in this district regularly strike filings that violate the local rules. *See, e.g.*, *Atanda*

12  *v. Norgren (IMI Precision Eng'g)*, No. C20-0796-JCC, 2022 WL 251966, at *2–3 (W.D. Wash.

13  Jan. 27, 2022) (striking an untimely and procedurally defective "motion to dismiss" a reply),

14  *appeal dismissed*, No. 22-35160 (9th Cir. Feb. 25, 2022); *Quinteros v. InnoGames*, No. C19-

15  1402-RSM, 2020 WL 3574268, at *4 (W.D. Wash. July 1, 2020) (declining to consider an

16  attempted surreply that raised new facts and arguments).

17          In this district, a party seeking to strike material "contained in or attached to submissions

18  of opposing parties" should include the request to strike in their response brief. LCR 7(g). The

19  "single exception to this rule is for requests to strike material contained in or attached to a reply

20  brief," for which the party must file a notice of intent to file the surreply "as soon after receiving

21  the reply brief as practicable." *Id*. "Surreplies in this district are strictly limited in their content

22  (requests to strike objectionable material filed in a reply brief) and length (three pages)." *Halle v.*

23  *Providence Health & Servs.-Wash.*, No. C10-354-MJP, 2010 WL 3259699, at *4 (W.D. Wash.

24  Aug. 18, 2010).

1      "It is not acceptable legal practice to present new evidence or new argument in a reply

2  brief." *United Specialty Ins. Co. v. Shot Shakers, Inc.*, No. C18-0596-JLR, 2019 WL 199645,

3  at *6 (W.D. Wash. Jan. 15, 2019), *aff'd*, 831 F. App'x 346 (9th Cir. 2020); *see also Farnes v.*

4  *Metro. Grp. Prop. & Cas. Ins. Co.*, No. 2:18-cv-1882-BJR, 2019 WL 4044102, at *1 (W.D.

5  Wash. July 31, 2019) ("Plaintiff's request to strike certain materials is an appropriate, indeed the

6  only, basis for filing a sur-reply."). That said, "[e]vidence submitted in direct response to

7  evidence raised in the opposition is not 'new.' " *Shot Shakers*, 2019 WL 199645, at *6 (quotation

8  omitted).

       1.    **Plaintiff's Motion to Strike Portions of the Motion for Partial**
9
               **Summary Judgment and Portions of the Declaration of Julie Sarchett**
10                **(Dkt. No. 68)**

11      LCR 7(g) requires that a notice of intent to file a surreply be filed as soon as practicable

12  and the surreply itself must be filed within five days of the filing of a *reply* brief. LCR 7(g)(2).

13  Plaintiff filed a notice of intent to file a surreply/motion to strike (Dkt. No. 67) and the surreply

14  (Dkt. No. 68) within five days of Defendant's reply. However, the arguments raised in the

15  surreply do not respond to the reply brief. Rather, Plaintiff admits that she seeks in the surreply

16  to strike arguments from Defendant's original motion (Dkt. No. 59, which was filed twenty-six

17  days before the surreply). Dkt. No. 68. Plaintiff cites no authority that would allow for the filing

18  of her surreply, and the Court knows of none. *See generally id*. Plaintiff's motion to strike

19  regarding portions of the summary judgment briefing is untimely; it should have been filed as

20  part of Plaintiff's response brief to the motion for summary judgment. *See* LCR 7(g).

21      Even looking to the substance of the motion, Plaintiff's motion fails. Plaintiff seeks to

22  strike segments of Defendants' filings that allegedly mischaracterize the law or misrepresent

23  facts. *See generally* Dkt. No. 68. However, at the summary judgment stage, the Court does not

24  weigh the credibility of the evidence presented. While the Court may "only consider admissible

evidence in ruling on a motion for summary judgment," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002), Plaintiff presents no argument that the material she seeks to strike from Defendants' summary judgment motion and supporting declaration are inadmissible under the federal rules of evidence. *See generally* Dkt. No. 68.

Finally, Plaintiff claims that Defendants raise a new argument in their reply brief regarding "application of payments." However, Defendants properly raised the argument in direct rebuttal to Plaintiff's calling out of this issue in her response brief. *Compare* Dkt. No. 64 at 11 (Plaintiff's response arguing that "CDI owes damages for choosing to run an ongoing debt to Taber without Taber's consent pursuant to the doctrine of application of payments.") *with* Dkt. No. 66 at 9 (Defendants' reply explaining why "Plaintiff's reliance on the application of payment doctrines to create hundreds of thousands of dollars of liability out of an alleged $600 error fails on so many levels."). Plaintiff's motion to strike (Dkt. No. 68) is DENIED.

2.   **Plaintiff's Motion for Relief from Deadline (Dkt. No. 114)**

Plaintiff then inexplicably waited nearly five months after receiving the summary judgment motion to yet again seek to strike part of the motion—*i.e.*, an argument that employee contributions to an HSA are plan assets, not wages—as an "extremely late, short-notice affirmative defense." *See* Dkt. No. 114 at 2–3. Claiming prejudice and lack of fair notice, Plaintiff asks this Court to grant relief from an unspecified deadline to make this late objection to Defendants' motion. *Id*. Specifically, Plaintiff asks for the "new affirmative defense and arguments based on that defense" to be stricken, or to be rejected on the merits. *Id*. at 3. Plaintiff attached a declaration with two exhibits to this motion. *See* Dkt. No. 115.

As an initial matter, if Defendants had buried the argument in a passing sentence that might have been easily missed, the Court might understand the oversight. But here, the argument was laid out in plain sight and even set apart in its own subsection. *See* Dkt. No. 59 at 13–14.

Further, Plaintiff already dedicated nearly two full pages to this very section in its response to Defendants' motion for summary judgment, Dkt. No. 64 at 6–7, and she attempted to take a second bite at it in the surreply, as discussed in Section II.A.1 of this Order. *See* Dkt. No. 68 at 2, 4. Plaintiff's belated realization that she had yet another potential angle of attack on the argument does not justify relief from a deadline. Plaintiff clearly could have and should have addressed the lack of notice regarding the defense in her response to Defendants' summary judgment motion.

Under the local civil rules, a motion for relief from a deadline "should, whenever possible, be filed sufficiently in advance of the deadline to allow the court to rule on the motion prior to the deadline." LCR 7(j). Additionally, the rules make evident that such motions are disfavored, instead encouraging the parties to meet and confer to file a stipulation and proposed order. *Id*. Regardless, whether the Court treats this motion as a motion for relief from a deadline, a motion to strike, or an entirely separate motion, Plaintiff's motion does not conform to the local rules. Moreover, it would prejudice Defendants to allow Plaintiff to strike material presented in a motion that had been fully briefed five months earlier.

Finally, Plaintiff asserts in her reply to the motion seeking relief from a deadline that the Court has the authority pursuant to Fed. R. Civ. P. 12(f) to strike an unpled affirmative defense on its own initiative at any time. Dkt. No. 117 at 3. The Court declines Plaintiff's invitation to do so, as it relates to Defendants' motion for partial summary judgment for the reasons previously discussed in this Order.

The Court finds this motion and the attached declaration to be untimely, procedurally improper, and prejudicial. The motion for relief from deadline (Dkt. No. 114) is DENIED. Should Plaintiff still choose to pursue this argument, she may file a separate motion on this issue if she complies with all applicable federal and local rules for any such filing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**B.      Motion for Partial Summary Judgment**

As an initial matter, though Plaintiff requested remote oral argument on this motion, Dkt. No. 64 at 1, the Court has determined that the motion can be decided on the papers, rendering argument unnecessary. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument."); *see also, e.g.*, *Moore v. USC Univ. Hosp. Inc.*, 803 F. App'x 131, 132, n.1 (9th Cir. 2020) ("The Federal Rules of Civil Procedure . . . expressly permit district courts to determine motions without oral argument.") (citing Fed. R. Civ. P. 78(b)).

**1.      Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. A genuine triable issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248; *see also McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009) (explaining that this is the inquiry at the summary judgment stage, "[s]tripped to its core"). Additionally, "all justifiable inferences" must be drawn in the non-movant's favor, *id*. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), "only in the sense that, where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied*."* *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Once the movant has made such a showing, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence"); *accord In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986); *see also Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798, 805 (9th Cir. 2010), *cert. denied*, 563 U.S. 1008, (affirming grant of summary judgment against appellant who had "failed to adduce any evidence or authority to support her claim").

2.   **The Claims**

a)   ***Health Savings Account Claims (Counts 1, 2, 4-7)***

In the motion for partial summary judgment, Defendants argue that contributions to a Health Savings Account (HSA) are not wages and, thus, that Plaintiff cannot maintain wage claims related to her HSA at CDI. Dkt. No. 59 at 13. Specifically, they argue that employee contributions to HSAs constitute "plan assets" rather than "wages," while employer contributions are discretionary, contingent benefits. *Id*. at 13–16. Defendants also proffer an

1   independent ground for granting summary judgment on the HSA claims: they allege that, to the

2   extent they had harmed Plaintiff Taber with respect to her HSA, CDI made Plaintiff whole by

3   paying her $8,545.77 "to compensate her for any alleged financial consequences of the late

4   [HSA] contributions." *Id*. at 16.

5                     (1)      Whether Contributions to an HSA are Plan Assets or
                               "Wages"
6

7             Based on the law and facts presented by the parties at this stage, the Court is unable to

8   determine whether the HSA contributions at issue (from either employee Taber or employer

9   CDI) are wages as a matter of law. The parties have not provided enough information about the

10  HSA plan for the Court to determine which laws apply.

11            Defendants cite to a regulation and a field assistance bulletin from the Department of

12  Labor (DOL) for the proposition that employee contributions to an HSA become plan assets once

13  they are deducted from employee paychecks. Dkt. 59 at 14. However, the DOL regulation, by its

14  own terms, applies only for purposes of ERISA and a tax statute. *See* 29 C.F.R. § 2510.3–

15  102(a)(1). Throughout Defendants' briefings in this case, they have asserted that the HSA is

16  covered under ERISA, but Defendant has not yet provided any support for this assertion.

17  *Compare e.g.*, Dkt. No. 1 at 2 (Defendants' assertion in notice of removal) *with* Dkt. No. 11

18  at 1-2 (Defendants' response to the order to show cause focusing only on how Plaintiff's

19  severance claims are completely preempted by ERISA) *and* Dkt. No. 14 at 2–3 (Plaintiff's

20  response to order to show cause pointing out that Defendants did not support this assertion). The

21  Court cannot so readily assume that the HSA is covered by ERISA, and unless it is covered by

22  ERISA, Defendants' argument fails.

23            Plaintiff correctly points out in her response that HSAs are generally not welfare benefit

24  plans covered under ERISA, and that Defendants have not established that the HSA at issue here

1    is a covered welfare benefit plan under ERISA. Dkt. No. 64 at 6–7, n.22 (citing DOL Field

2    Assistance Bulletin Nos. 2004-01 and 2006-02). First, ERISA excludes from coverage certain

3    group or group-type insurance programs where: (1) there are no employer contributions,

4    (2) employee participation is voluntary, (3) the employer does not endorse the program, and

5    (4) the employer receives no consideration in connection with the program, other than reasonable

6    compensation for administrative services actually rendered in connection with payroll

7    deductions. 28 C.F.R. § 2510.3-1(j). Second, the DOL has explained that it does not consider

8    HSAs that are "completely voluntary" for an employee to participate in to be covered under

9    ERISA even if the employer contributes to it, unless the employer takes certain other actions

10   (such as "represent that the HSAs are an employee welfare benefit plan established or maintained

11   by the employer"). DOL Field Assistance Bulletin No. 2004-01 (interpreting 29 U.S.C. § 2510.3-

12   1(j)). Defendants have cited no facts to establish that CDI's HSAs would be considered ERISA-

13   covered plans under the DOL's interpretation. Accordingly, the Court cannot determine whether

14   the employee contributions to the HSA are wages or not as a matter of law.

(2)    Whether Employer Contributions to an HSA are
       Discretionary, Contingent Benefits or Wages

16          As to employer contributions to an HSA, Defendants allege that CDI's contributions to

17   Taber's HSA were contingent interests and therefore are not wages. Dkt. No. 59 at 15. Plaintiff

18   opposes this characterization, claiming that "Taber had earned the withheld wage deductions and

19   withheld employer-contribution wages by performing under her employment contract," and

20   those contributions vested upon her performance. Dkt. No. 64 at 7–8. If CDI's employer

21   contributions were vested benefits, Taber would be guaranteed to receive them. If they were

22   contingent, she would only receive them if particular circumstances were to occur.

1    Neither Defendants' nor Plaintiff's explanations provide the Court sufficient information to

2    determine whether the wages would be considered vested or contingent under Washington law.

3    *See, e.g.*, *Teamsters, Local 117 v. Nw. Beverages, Inc.*, 976 P.2d 1262, 1263 (1999) (explaining

4    that sick leave paid out only in event of sickness would be considered a contingent benefit, but

5    that sick leave that could be cashed-out if unused upon termination is a vested benefit); *see also*

6    *Sorinsin v. Scout Media, Inc.*, 450 P.3d 193, 195–96 (2019) (extending the reasoning of

7    *Teamsters*, 976 P.2d at 1263, to affirm denial of payment for unused PTO at termination where

8    employees had no contractual right to payment for accrued PTO and had shown no affirmative

9    statutory entitlement to such a payment).[4] As such, Defendants have failed to establish that either

10   Taber's employee contributions or CDI's employer contributions to the HSA are wages as a

11   matter of law.

12                    (3)    Whether "Accord and Satisfaction" Has Been Established

13            Plaintiff admits that CDI paid her $8,545.77 in relation to the delayed HSA contributions.

14   Dkt. No. 64 at 5, 10, 20. But she offers conflicting accounts of why CDI made this payment. At

15   first, Plaintiff states that the $8,545.77 payment "was paid for specific damages that CDI caused

16   [her]." *Id.* at 10; *see also id.* at 4–5 ("In an attempt to recharacterize evidence proving that it stole

17   Taber's wages, CDI claims that a payment of $8,545.77 to Taber was made 'out of a desire to

18   support its employee' and not to compensate Taber for damages that resulted from the wage

19   theft."). But later, she insists "CDI paid [her] $8,545.77 because it made mistakes in [her] HSA

20   account" and that CDI should be "estopped from claiming that the payment was for damages and

21   estopped from applying the payment as an offset." *Id.* at 20. Though these characterizations are

22

23   _____

24   [4] Employers in Washington State were not required to provide paid sick leave to their employees until Jan. 1, 2018.
     *See* RCW 49.46.200.

1    deeply inconsistent, Plaintiff raises a genuine dispute of fact as to whether these payments made

2    her whole.

3         Plaintiff filed a declaration alongside the response brief that included email exchanges

4    with CDI representatives while she was employed there. One of those email chains lays out that

5    Plaintiff Taber had specifically requested HSA-related compensation in the amount of

6    $11,232.77, to be paid out to her separately from her severance. Dkt. No. 63-13 at 14, 27–29. It

7    further showed that CDI ultimately agreed pay her a smaller amount of $8,545.77 as HSA-

8    related compensation. *Id*. at 18–19. Though CDI had previously offered Plaintiff Taber her

9    originally requested amount of $11,232.77 in total for the delayed HSA contributions, *id*. at 14,

10   upon further review, a CDI employee explained that they were unable to pay her the full amount

11   because she received the full HSA employer contribution for 2017 and 2018 (therefore she

12   wasn't owed $1,100 of the amount originally promised). *Id*. at 14–15.   The representative

13   explained that CDI wouldn't pay her the remaining $1,587 because a reimbursement would not

14   be reasonable since (1) she shouldn't have had to pay taxes on the employer HSA contribution,

15   (2) the 2018 over-contribution due to late deposit of 2017 funds was not "squarely" the fault of

16   CDI, and (3) even if CDI had managed to deposit the 2017 contribution on time, there still would

17   have been an over-contribution to her HSA in 2018. *Id*. at 14–15. Instead, CDI agreed to

18   compensate her with a total of $8,545.77 to account for: (1) $1,432, the increased amount of tax

19   she paid in 2017 due to the delayed HSA contributions, (2) $250, the penalty and interest she

20   paid due to the additional 2017 income, (3) $600 she had paid for tax preparation in 2017

21   and 2018, and (4) $6,308.77 for the amount of interest she would have received at 4% annual

22   interest assuming CDI had correctly deposited $6,150 into her HSA account in 2017 and that

23   amount had remained untouched in her HSA for eighteen years. *Id*. at 18–19.

24

1    In their answer to the operative complaint, Defendants pled an affirmative defense based

2    in contract law of "accord and satisfaction." Dkt. No. 92 at 91 ("Plaintiff's claims are barred, in

3    whole or in part, by accord and satisfaction."). This appears to be their "separate and independent

4    reason" for seeking summary judgment on Plaintiff's HSA claims. *See* Dkt. No. 59 at 16–17

5    (citing *Schilling v. JPMorgan Chase & Co.*, No. C17-0060-RSM, 2017 WL 1479369, at *4–6

6    (W.D. Wash. Apr. 25, 2017) for the proposition that "acceptance of funds equal to alleged debt

7    [is] regarded as agreement to satisfy debt").

8    Accord and satisfaction occurs when there is "(1) a bona fide dispute; (2) an agreement to

9    settle that dispute (accord); and (3) execution of that agreement (satisfaction)." *Milgard*

10   *Tempering Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 712 (9th Cir. 1990) (citation omitted);

11   *accord Eagle Ins. Co. v. Albright*, 474 P.2d 920, 931 (1970). Defendants have not shown that

12   Plaintiff agreed to accept the $8,545.77 as full payment for the HSA errors, and Plaintiff's filings

13   indicate her disagreement with the amount offered, as she had initially asked for $2,687.00 more.

14   Dkt. No. 63-13 at 13–21; *see also* Dkt. No. 64 at 8–10. The second element ("accord") of the

15   defense has thus not been established. Finally, Defendants cite to *Schilling.*, 2017 WL 1479369,

16   at *4–6, in support of the proposition that they made Plaintiff whole. However, as pointed out in

17   Defendants' parenthetical explaining the case, "acceptance of funds *equal* to the alleged debt [is]

18   regarded as agreement to satisfy debt." Dkt. No. 66 at 11 (emphasis added). However, there is a

19   factual dispute as to whether the funds accepted equaled the alleged debt.

20   Viewing the facts and evidence in the light most favorable to the nonmovant, a dispute

21   over the material fact of whether Defendants have made Plaintiff whole for any HSA-related

22   injuries exists, making summary judgment inappropriate. Therefore, Defendants' motion for

23   summary judgment on Counts 1, 2, 4, 5, 6, and 7 is DENIED. However, the Court observes that at

24   trial, Plaintiff will need to scale quite a large hill to prove she is entitled to the litany of

1  additional damages, penalties, and interest that she seeks (and could potentially amount to

2  hundreds of thousands of dollars)[5] for the alleged original underpayment of a couple thousand

3  dollars (at most) where Defendant also paid a not-insignificant amount of additional money in an

4  attempt to resolve the dispute.

5              ***b)        Paid Time Off Claim (Count 10)***

6          Plaintiff alleges that Defendant CDI did not compensate her for two days of accrued paid

7  time off (PTO), per their policy, when she was laid off. Dkt. No. 91 at 43, 54. She claims that

8  PTO "qualifies as a wage" and thus requests not only reimbursement for the allegedly unpaid

9  PTO but also double liquidated damages, double punitive damages, and interest. *Id*. at 54.

10         Defendants have proven that Plaintiff Taber was fully paid for her accrued PTO. The

11  declaration of CDI Human Resources Manager Julie Sarchett establishes that Plaintiff had 96.59

12  hours of unused PTO and CDI paid Plaintiff for each of those hours. Dkt. No. 60 at 4; *see also*

13  *generally* Dkt. Nos. 60-1 and 60-2 (Plaintiff's payroll records). To refute this, Plaintiff points to

14  her April 11, 2019, paystub, which shows a "PTO balance" of 157.47 hours. Dkt. No. 64 at 11;

15  Dkt. No. 63-2 at 1. But, as Ms. Sarchett explained, the PTO balance on Plaintiff's paystub

16  reflected both unused PTO (which CDI pays out to terminated employees) and floating holidays

17  (which are forfeited if unused). Dkt. No. 60 at 4. The Court finds support for this fact in

18  Plaintiff's own documents. Plaintiff Taber submitted emails showing that back in 2019, a CDI

19  employee had explained to her that her "PTO balance" on her paystubs included all PTO,

20  "including floating [holidays]." Dkt. No. 63-10 at 1–5. Plaintiff's documents also show

21  Defendants' policy on floating holidays. Dkt. No. 63-10 at 9–10 ("they will not be cashed out if

22  an employee leaves the company"). As Plaintiff has failed to develop any evidence that rebuts

23

24  ---
[5] If Defendants' estimates are correct, Plaintiff seeks hundreds of thousands of dollars as compensation for only the delayed employer contributions to her HSA, which totaled $600. *See* Dkt. No. 66 at 9.

1    this showing, there is no genuine dispute of material fact. Defendants' motion for summary

2    judgment is GRANTED on Plaintiff's PTO claim (Count 10), which is DISMISSED with prejudice.

3                    **c)    Application of Payments Doctrine Claims (Counts 3, 8, and 9)**

4            Plaintiff alleges that the employer defendants "took wages from Taber and kept those

5    wages maintaining a wage debt owed to Taber from mid-2017 to the end of 2017." Dkt. No. 91

6    at 49. Plaintiff argues that Washington law allows a creditor to "apply payments to any part of

7    [a] debt, as he sees fit," absent "specific instructions from the debtor as to how payments are to

8    be applied." Dkt. No. 64 at 11. Defendants have explained that CDI did not withhold payments

9    to Plaintiff in a manner that would have created a debt, and that, even if they had done so, CDI

10   included clear directions in all of Plaintiff's paystubs about the applicable pay period during

11   which each payment had been earned. Dkt. No. 66 at 9; *see also* Dkt. Nos. 60 at 5, 60-4

12   at 3, 60-5 at 2.

13           Upon reviewing the record, the Court is satisfied that the paystubs Defendant CDI issued

14   clearly indicate the exact pay period and pay date for which each payment applied. These clear

15   and regular earnings statements distinguish this case from the cases cited by Plaintiff. Plaintiff's

16   argument lacks merit, and she has failed to properly flesh out these three claims regarding why

17   and how the application of payments doctrine applies—let alone raise a genuine dispute of

18   material fact to defend them. Defendants' motion for summary judgment on the "application of

19   payments" claims (Counts 3, 8, and 9) is thus GRANTED, and those counts are DISMISSED with

20   prejudice.

21                    **d)    Local and State Law Severance Claim (Count 17)**

22           Defendants seek summary judgment on Plaintiff's severance claim, explaining that it is

23   completely preempted by ERISA. The parties agree that a severance plan is covered by ERISA if

24   it implicates an ongoing administrative scheme. *Compare* Dkt. No. 59 at 20 *with* Dkt. No. 64

at 13 (both citing *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994), *cert. denied*, 514 U.S. 1037 (1995)). Plans that "require the employer to exercise discretion in making eligibility determinations are generally sufficient to implicate an ongoing administrative scheme." *Edwards v. Lockheed Martin Corp.*, 954 F. Supp. 2d 1141, 1149 (E.D. Wash. 2013) (citation omitted), *aff'd*, 617 F. App'x 648 (9th Cir. 2015), *cert. denied*, 577 U.S. 956.

Defendant avers that CDI's severance policy "is an ERISA plan because it requires CDI to make eligibility and benefits decisions on an individual, case-by-case basis." Dkt. No. 59 at 20. Plaintiff contests this factual characterization, claiming that the separation agreement CDI presented to Plaintiff Taber involved no discretion to administer because: (1) there was only one participant, (2) no calculations were required to determine the amount of benefits and when they would be paid, and (3) the plan required "no discretion to determine eligibility." Dkt. No. 64 at 15–16.

CDI's severance policy is covered by ERISA. The separation agreement itself states, "the Company [CDI] has full discretionary authority to administer and interpret the Plan, including discretionary authority to determine eligibility for participation and for benefits under the Plan, the amount of benefits (if any) payable per participant, and to interpret ambiguous terms." Dkt. No. 60-3 at 4. Thus, the plain language of the severance policy calls for CDI to make individualized decisions about which employees are eligible to participate. Indeed, CDI exercised discretion in deciding the amount of severance Taber was eligible to receive—offering her five weeks' pay instead of four—and then in declining to provide severance at all when she refused to sign the separation agreement. *See* Dkt. No. 63-5 at 4; 63-13 at 13, 20. Further, employees are not automatically guaranteed severance under the CDI policy. Dkt. No. 60-3 at 2-3. These undisputed facts distinguish this case from those cited by Plaintiff. Defendants have

established, and Plaintiff has failed to rebut, that their severance plan is subject to ERISA

regulation under the facts of this case as well as the relevant case law.

Plaintiff asserts that her claim for severance pay is not preempted but her argument

presumes that the severance plan does not involve an ongoing administrative scheme and she

"claims severance pay and emotional distress as consequential damages pursuant to claims

of retaliation under non-ERISA statutes and pursuant to wrongful termination." Dkt. No. 64

at 18. For the reasons stated in the prior paragraph, the Court finds the severance plan does

implicate an ongoing administrative scheme and, therefore, is covered under ERISA.

The Court also rejects Plaintiff's characterization of the severance pay claim as a

wrongful termination claim. Plaintiff drafted Count 17 (the severance pay claim) to allege the

"retaliatory withholding of severance pay." Dkt. No. 91 at 58–59. Plaintiffs are the masters of

their own complaints. *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) ("A plaintiff is

the master of his complaint and responsible for articulating cognizable claims."). Here, the

master drafted a claim where a severance plan (which is covered by ERISA)—not wrongful

termination—is the heart of the claim. As such, Plaintiff's cited cases are inapt, and the Court

finds the severance pay claim is preempted. Defendants' motion for summary judgment on

Plaintiff's local and state law severance claim (Count 17) is GRANTED, and the claim is

DISMISSED with prejudice.

### e)    COBRA Claims (Counts 25–30)

Plaintiff brings six claims related to COBRA, alleging that Defendant CDI and the health

plan failed to provide a COBRA election notice to Taber and her minor child, LT. Dkt. No. 91

at 62–65. In the motion for partial summary judgment, Defendants detail how CDI fulfilled its

COBRA notice requirement. *See* Dkt. No. 59 at 22. CDI engages an outside firm to send

COBRA notices and forms on its behalf. *Id*. The firm has a record of mailing a COBRA election

1  notice to Plaintiff's last known address on July 19, 2019, two days after Plaintiff was laid off. *Id*.

2  Defendants even included a declaration from a COBRA specialist at the outside firm verifying

3  they mailed the COBRA election notice as Defendants had described. Dkt. No. 61 at 1–2.

4  Plaintiff's response did not even address this claim. *See generally* Dkt. No. 64. The unrefuted

5  facts proffered by Defendants establish their entitlement to summary judgment on all of

6  Plaintiff's COBRA notice claims. Defendants' motion for summary judgment on Plaintiff's

7  COBRA notice claims (Counts 25 through 30) is GRANTED, and those claims are DISMISSED with

8  prejudice.

9         *f)*   ***Tax Claims (Counts 12–14)***

10     Plaintiff alleges that Defendants issued an incorrect W-2 form in 2018 that overstated her

11  income by $500, causing her to pay excess income tax and losing "the right to invest in an IRA."

12  Dkt. No. 91 at 55–56. She also claims that "Defendants deposited $6,300 of Taber's 2017 wage

13  deductions into Taber's HSA thereby causing Taber to exceed the annual contribution limit" and

14  (presumably) suffering tax penalties. *See id*. at 56. Plaintiff cites no case law to support these

15  claims except in her request for damages in her complaint, which does not provide any legal

16  support for the underlying tax claims. *See id*. at 55–56.

17     Defendants offer several bases for summary judgment on Plaintiff's tax claims: (1) these

18  claims fail because the HSA-wage claims they were predicated on also fail; (2) the state and

19  local laws Plaintiff cite "neither apply to nor provide a private right of action to bring a claim for

20  recovery of paid taxes or lost tax deferred interest"; and (3) CDI had reported Plaintiff's income

21  to the IRS in good faith and that fraud is required for a claim under federal law to exist. Dkt.

22  No. 59 at 24. Defendants' second basis establishes grounds for the granting of summary

23  judgment on the tax claims in their favor without the need to reach the other bases.

24

The local and state statutes Plaintiff cites in her complaint (with respect to damages sought) do not give rise to the tax claims she has attempted to craft. The Seattle Wage Theft Ordinance provides that "[a]n employer shall pay all compensation owed to an employee by reason of employment . . ." but nowhere mentions tax forms or overstatement of income. *See* SMC 14.20.005 *et seq*. The state laws Plaintiff cites similarly do not have any clear bearing on the "lost tax deferred interest" she claims. *See* RCW 49.48.050 and 49.48.070. Plaintiff provides no legal support for expanding these laws to cover the tax claims she asserts. *See* Dkt. No. 64 at 19. Defendants' motion for summary judgment on Plaintiff's tax claims (Counts 12, 13, and 14) is GRANTED, and those claims are DISMISSED with prejudice.

### C.   Plaintiff's Improper Requests in her Response

#### 1.   Plaintiff's Request for Sanctions Against Defendant CDI (Dkt. No. 64)

In her response to Defendants' motion for summary judgment, Plaintiff, with little argument, asserts that Defendant CDI should be sanctioned "in the amount of fees and costs Taber incurred to respond to this motion plus additional monetary amounts and additional remedial actions to punish CDI's violations of RCW 4.84.185, FRCP 11(b)(1)–(4), and RPC 3.3(a)(1)–(4)." Dkt. No. 64 at 20.

Plaintiff (or her counsel) would have benefited from reading the rules she invokes. The Washington statute Plaintiff cites allows a "prevailing party" to seek sanctions for "opposing frivolous action or defense." RCW 4.84.185 (explaining that *after* a summary judgment order has been entered, the prevailing party may make a motion for payment of reasonable costs incurred in opposing the motion) (emphasis added). The Federal Rules of Civil Procedure require that a motion for sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Further, the motion "must be served under Rule 5, but it must not be filed or be presented to the court if the

1    challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected

2    within 21 days after service or within another time the court sets." *Id.* The Court therefore

3    DENIES Plaintiff's request for sanctions.

4            2.    **Plaintiff's Request to Estop Defendant from Making Certain Claims with regard to Payments**

5

6            As with her motion for sanctions, Plaintiff simply asserts Defendant should be estopped

7    from claiming the payment was for damages and estopped from applying the payment as an

8    offset. Dkt. No. 64 at 20. Further, her assertion is inconsistent with other representations she has

9    made with regard to the payments from Defendants. *See supra*, Section II.B.2.a.3. Based on the

10   clear dispute regarding the nature of the payments that is evident in the parties' pleadings and the

11   failure of Plaintiff to provide any authority whatsoever supporting the request, the Court DENIES

12   Plaintiff's request.

13        **D.    Combined Request for Relief from the Amendment Deadline and Request to Amend the Complaint (Dkt. No. 102)**

14

15           Once a district court has entered a scheduling order pursuant to Federal Rule of Civil

16   Procedure 16 setting a timetable for amending pleadings, "Rule 16(b), not Rule 15(a)" governs a

17   plaintiff's ability to amend their complaint. *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604,

18   607–08 (9th Cir. 1992) (affirming denial of a belated motion to amend). "A scheduling order is

19   not a frivolous piece of paper, idly entered, which can be disregarded by counsel without peril."

20   *Id.* at 610 (citation and quotation omitted). When a Court-ordered deadline for amending the

21   pleadings has already expired, the proposed amendment must be supported by a showing of

22   "good cause." *Id.* at 608. Good cause for purposes of Rule 16(b) is established where a scheduled

23   deadline "cannot reasonably be met despite the diligence of the party seeking the extension."

24   Fed. R. Civ. P. 16 advisory committee's note to 1983 Amendment. Additionally, a basic tenet of

1    federal court practice is that motions must "state with particularity the grounds for seeking the

2    order." Fed. R. Civ. P. 7(b)(1)(B).

3          Under the less stringent Federal Rule of Civil Procedure 15, a plaintiff may re-amend

4    their complaint "only with the opposing party's written consent or the court's leave," which

5    should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). There may yet

6    exist an "apparent or declared reason" to deny leave to amend, including, but not limited to,

7    "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

8    deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

9    of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178,

10   182 (1962); *see also Cobb v. Rodriguez*, 751 F. App'x 988, 990–91 (9th Cir. 2018) (upholding

11   denial of leave to amend complaint after scheduling order deadline because of plaintiff's "undue

12   delay in raising the claim and the prejudice to the opposing party that late amendment would

13   cause") (citations and quotations omitted); *Acri v. Int'l Ass'n of Machinists & Aerospace*

14   *Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986) (affirming denial of leave to amend), *cert.*

15   *denied*, 479 U.S. 821. "[E]ven under the liberal Rule 15 standard 'late amendments to assert new

16   theories are not reviewed favorably when the facts and the theory have been known to the party

17   seeking amendment since the inception of the cause of action.'" *Coleman v. Quaker Oats Co.*,

18   232 F.3d 1271, 1295 (9th Cir. 2000) (quoting *Acri*, 781 F.2d at 1398).

19         Plaintiff seeks to add an overtime wage count, add to a wage-record claim, and correct a

20   scrivener's error. Plaintiff insists that she had provided adequate notice to Defendants of an

21   overtime wage claim in her first and second amended complaints. Dkt. No. 102 at 4. As to the

22   wage-record claim, Plaintiff's motion provides scant detail on what she would like to flesh out

23   about that claim. *See generally*, Dkt. No. 102. Indeed, her summary of "relief requested" in the

24   motion to amend does not even mention the wage-record claim. *Id*. at 4. At most, Plaintiff states

that "she moves to amend to clarify that her wage-record claim includes CDI's false statements on paystubs concerning her hours worked." *Id.* at 5. What constitutes this "wage-record claim" is not readily apparent from the motion nor the redline showing the proposed amended complaint, due to inconsistent terminology used in the complaint and Plaintiff counsel's extensive use of footnotes which made some of them illegible. *See, e.g.*, *id.* (reproduced below).

> [6] *First Amended Complaint* (Dkt. # 41), *Second Amended Complaint* (Dkt. # 65), [Redacted] *Second Amended Complaint* (Dkt. # 91), ¶ 5.7.
> [7] *Second Amended Complaint* (Dkt. # 65), ¶ 5.7.
> [8] ~~COMBINED MOTION FOR RELIEF~~ Complaint (Dkt. # 91), ¶ 5.7.
>
> COMBINED MOTION FOR RELIEF
> FROM CASE SCHEDULE AND
> MOTION FOR LEAVE TO FILE THIRD
> AMENDED COMPLAINT - 4
> NO. 2:20- cv-01633TL

THE BARTON LAW FIRM
1567 Highlands Dr NE Ste 110-34
Issaquah, WA 98029-6245
(425) 243-7960 TheBartonLawFirm@GMail.com

Finally, Plaintiff seeks to revise an editing error that resulted in giving the phrase "Employer Defendants" the opposite meaning as intended. *Id.* Due to Plaintiff's editing error, paragraph 5.2 of the complaint defines the "Employer Defendants" as "Defendants Healthcare Plan and CDI in its capacity as the Healthcare Plan administrator" rather than as the other remaining defendants in the case. *Id.*; *see also id.* at 63 (redline showing the intended revision).

Denial of leave to amend in the instant case is warranted under both Rules 16 and 15. Though Plaintiff represents that "she has, in fact, been diligent" in her litigation of the present matter, she has failed to establish good cause for relief from the case schedule under Rule 16. *See* Dkt. No. 102 at 10. She cites no cause for having failed to "flesh out the overtime claim in her complaints like she did with other claims." *See id.* at 2. As evidence of her diligence, she describes fairly routine effort spent on litigating the matter that she chose to initiate. *Id.* at 6 (describing, for example, that Plaintiff had "responded to six motions and filed three motions"). Plaintiff does not explain why circumstances have changed enough to justify "add[ing] allegations and a separate count for overtime-wage damages" months after the amendment deadline has come and gone. *See id.* at 4. Plaintiff does not, for example, allege that she only

recently received access to her paystubs or other documentation giving rise to the claim. And any allegation to that effect would be belied by her insistence that she has already pled "a plausible claim for overtime-wage damages and [overtime-related] wage-record damages" in her earlier complaints. *See id*. at 9. Plaintiff has had ample time and opportunity to add or develop these allegations—including two prior complaint amendments. Instead, Plaintiff chose to seek amendment to the case schedule nearly four months after Defendants moved for summary judgment and three months after the deadline to amend the pleadings. *Compare* Dkt. No. 102 (motion for amendment filed on January 6, 2022) *with* Dkt. No. 59 (motion for partial summary judgment filed on September 16, 2021) *and* Dkt. No. 39 (minute order setting deadline for amended pleadings as October 6, 2021). Plaintiff bears the burden of furnishing a reason for late departure from the Court's scheduling order and from the federal rules of civil procedure, but she fails to provide adequate justification.

Even reviewing the motion to amend separately under Rule 15, at least three of the factors specifically listed in *Foman*—undue delay, repeated failure to cure deficiencies, and undue prejudice—provide reasons to deny leave to amend under Rule 15. Defendants opposed Plaintiff's motion for relief from the amendment deadline with a very short response brief, explaining that if the Court granted their pending motion to stay, Defendants would not need to respond until after the Court's summary judgment ruling. *See* Dkt. No. 105 at 1. Even so, Defendants made, in just three pages, arguments that they were not provided fair notice of the overtime claim, that the request to amend was the result of Plaintiff's undue delay and a repeated failure to cure deficiencies via prior amendments, that Defendants would be unduly prejudiced by the amendment, and that amendment would be futile. *Id*. at 2–4. Calling Plaintiff's claim that she had previously fleshed out an overtime claim "a misleading understatement," Defendants explained that the words "overtime" and "non-exempt" did not appear anywhere in the prior

complaints, that those prior complaints did not discuss the hours she had worked, and that the reference to the federal overtime statute was made as part of her requested remedies (rather than as a separate cause of action). *Id*. at 2. Plaintiff has already amended her complaint twice, with the second amendment request filed on the deadline for amending the pleadings. *See* Dkt. Nos. 85, 91, and 65. Defendants assert they would be prejudiced by having to conduct additional discovery regarding exemption and misclassification if Plaintiff were allowed to add these claims at such a late stage in the case (one month before discovery had been slated to end but-for the issuance of the stay pending the resolution of the pending motions). Dkt. No. 105 at 4; Dkt. No. 113. The *Foman* factors weigh against allowing the amendment.

Plaintiff labeled the instant motion as both a motion to amend and one for "relief from the amendment deadline." *See generall*y Dkt. No. 102. However, as discussed above, such a motion must be filed prior to the deadline at issue. Even reviewing the request under this alternative basis, Plaintiff has failed to justify relief from the deadline to amend the pleadings. Thus, Plaintiff will not be allowed to add any new claims to her complaint. Nonetheless, the Court will allow Plaintiff to correct *only* the scrivener's error made in earlier edits to the complaint. *See* Dkt. No. 102 at 5 (explaining that Plaintiff's counsel had mistakenly deleted the words "other than" from the second amended complaint while removing references to a dismissed defendant). To that limited extent, the motion for leave to amend is GRANTED. The remainder of the motion for leave to amend, and to amend the Court's case scheduling order, is DENIED.

### E.    A Note on "Technicalities"

The explicit purpose of the Western District of Washington's local rules is "to promote the just, efficient, speedy, and economical determination of every action and proceeding" while maintaining consistency with the federal rules. LCR 1(a). Adherence to these, and other, procedural rules aids the timely determination of litigants' motions. In extreme scenarios, a

"failure to adhere to the procedural rules [can] prevent[] a meaningful review" of a case. *See, e.g.*, *Wallace v. Bashas' Inc. Grp. Disability Plan*, 428 F. App'x 681, 682 (9th Cir. 2011) (dismissing appeal following "countless hours and numerous efforts" to review the hundreds of pages of unpaginated records submitted by appellant).

Perhaps in belated recognition of his many failures to comply with the procedural rules he must follow in the present litigation, Plaintiff's counsel lamented in one of his filings to the Court that "[t]he purpose of our justice system is not to ensure compliance with technicalities and rules" and, in a show of feigned respect for this institution, claimed that his client "respectfully submits that the legal system would expend more resources on these issues if [his client] is not permitted to pursue her overtime claims fully and required to file an appeal of this motion." Dkt. No. 102 at 13. The "technicalities" about which Plaintiff's counsel complains, when followed, enable the efficient conduct (and efficient disposition) of litigation. His repeated flouting of procedural rules has hampered this Court's review of the merits of the arguments presented. The Court cautions Plaintiff's counsel to become familiar with and comply with all rules applicable in this Court, as well any rule counsel cites. Future violations may result in sanctions.

## III.   CONCLUSION

For the foregoing reasons, the Court orders that:

(1) Defendants' motion for partial summary judgment (Dkt. No. 59) is GRANTED IN PART and DENIED IN PART, and the Court DISMISSES WITH PREJUDICE the following counts of Plaintiff's complaint:

- o **Count 3**: Willful Withholding of Wages in 2017 Due to Application of Payments to Ongoing Wage Debt
- o **Count 8**: Willful Withholding of Wages in 2018 Due to Application of Payments to Ongoing Wage Debt

o **Count 9**: Willful Withholding of Wages in 2019 Due to Application of Payments to Ongoing Wage Debt
o **Count 10**: Failure to Reimburse Paid Time Off
o **Count 12**: Failure to Reimburse Income Tax Refund on $500 Reported on 2018 W-2
o **Count 13**: Lost Tax Deferred Interest on IRA Contribution Lost Due to 2018 Income Inflation
o **Count 14**: Damages Resulting from HSA Overcontributions
o **Count 17**: Wrongful Withholding of Severance Pay in Retaliation for Making Wage Claim
o **Count 25**: Failure to Provide Taber and LT COBRA Notice
o **Count 26**: Breach of Fiduciary Duty for Failure to Provide COBRA Notice
o **Count 27**: Violations of the Washington State Consumer Protection Act for Failure to Provide COBRA Notice
o **Count 28**: Negligent Failure to Provide COBRA Notice
o **Count 29**: Breach of Healthcare Plan Contract
o **Count 30**: Equitable Estoppel Regarding COBRA Coverage

(2) Plaintiff's motion to strike portions of Defendants' partial motion for summary judgment and related declaration (Dkt. No. 68) is DENIED;

(3) Plaintiff's request for sanctions (Dkt. No. 64) is DENIED;

(4) Plaintiff's request that Defendants be estopped from claiming that their payment to Plaintiff was for damages regarding her HSA account and from applying the payment as an offset (Dkt. No. 64) is DENIED;

(5) Plaintiff's Motion for Relief from the Amendment Deadline & Motion to Amend (Dkt. No. 102) is DENIED IN PART and GRANTED IN PART to the limited extent specified to correct the scrivener's error;

(6) Plaintiff shall file her Third Amended Complaint within **fourteen (14) days** of this Order;

(7) Plaintiff's Motion for Relief from Deadline and Objection/Surreply (Dkt. No. 114) is DENIED; and

(8) The stay previously ordered is hereby LIFTED.

Dated this 21st day of July 2022.

Tana Lin
United States District Judge