UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDRA TABER,<br><br>             Plaintiff,<br><br>    v.<br><br>CASCADE DESIGNS, INCORPORATED, DAVID BURROUGHS, JOHN BURROUGHS, JOHN GEVAERT, JAMES COTTER, ERIC HOBBS, STEVE MCCLURE, HARRY ROSS, JANE/JOHN DOES 1 THROUGH 10, and the marital community of each non-business Defendant, CASCASE DESIGNS, INC. OPEN ACCESS PLUS IN-NETWORK MEDICAL BENEFITS, CASCADE DESIGNS, INC. WELFARE BENEFITS PLAN,<br><br>             Defendants. | CASE NO. 2:20-cv-01633-TL<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES AND DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION** |

Plaintiff Alexandra Taber seeks a motion to compel Defendants (collectively "Cascade") to furnish further responses to interrogatories and requests for production and to determine the sufficiency of Cascade's responses to requests for admission. Dkt. 147. Plaintiff also seeks $7,000 in attorney fees pursuant to Rule 37(a)(5). *Id.*

Plaintiff originally filed two motions (Dkts. 132 and 133), which were withdrawn and are consolidated in Dkt. 147. Cascade's response was filed to the original motions (Dkt. 141). In the consolidated motion, Plaintiff seeks an order compelling further responses to Interrogatories 1, 3,

1  4, 5, 6, 9, 10, 11, 17, 20, 21; RFPs 1, 7, 12, 13, 14, 15, 16, 17, 27, 28, 34, 35, 38, 39, 44, 47 and
2  that the Court deem admitted all Requests for Admission. The Court reviews Plaintiff's
3  discovery requests in the order set forth in Plaintiff's consolidated motion.

Nature of Action

Plaintiff sued Cascade alleging wrongful termination and for alleged wage withholdings stemming from delayed HSA contributions. Dkt. 1-1. In 2017, Plaintiff elected to contribute $6,300 to her HSA account and Cascade was to contribute $600. Dkt. 85 at 15, 26. Due to banking errors, Cascade untimely deposited these amounts into Plaintiff's HSA account, shortly after the 2017 contribution deadline. Dkt. 59 at 2-3, 60 at 1-3. In 2018, Cascade compensated Plaintiff $8,545.77 for alleged damages suffered. Dkt. 64 at 5, 10, 20. Plaintiff argues the late HSA contribution constitutes unlawful wage withholding, and seeks extensive damages, penalties, and fees. Two years later, Cascade laid off Plaintiff as part of a reduction in force. Dkt. 91 at 37. Plaintiff argues this was wrongful, claiming it was either because she complained about the alleged wage withholding or because of her age or gender.

On July 21, 2022, the Court dismissed fourteen of Plaintiff's claims. Dkt. 119. Plaintiff's Third Amended Complaint was filed on August 1, 2022. Dkt. 123.

Standard of Review

"Parties may [only] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[U]focused fishing expeditions" are discouraged by Fed R. Civ. P. 26(b) and by Local Rule 26(f). *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. at 607 (W.D. Wash. 2013).

ORDER ON PLAINTIFF'S MOTION TO
COMPEL DISCOVERY RESPONSES AND
DETERMINE SUFFICIENCY OF
RESPONSES TO REQUESTS FOR
ADMISSION - 2

Relevant information is limited "for purposes of discovery [as] information reasonably calculated to lead to the discovery of admissible evidence." *Lauer v. Longevity Med. Clinic PLLC*, C13-0860-JCC, 2014 WL 5471983, at *4 (W.D. Wash. Oct. 29, 2014). "To further the application of the relevance and proportionality standard[s], discovery requests and related responses should be reasonably targeted, clear, and as specific as possible." *Luken v. Christensen Grp. Inc.*, C16-5214 RBL, 2018 WL 1994121, at *1 (W.D. Wash. Apr. 27, 2018); *see also* LCR 26(f). Discovery requests that are not "targeted, clear, and as specific as possible" are facially overbroad. *See*, *DeFreitas v. Tillinghast*, 2:12-CV-00235-JLR, 2013 WL 209277, at *3 (W.D. Wash. Jan. 17, 2013). "In determining whether sought discovery is proportional to the needs of the case, the Court considers the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Opico v. Convergent Outsourcing, Inc.*, 2:18-CV-1579, 2019 WL 3067202, at *3 (W.D. Wash. July 12, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

## Discovery in Dispute

A.  Interrogatories and Requests for Production ("RFP")

On December 28, 2021, Plaintiff propounded her first discovery requests. Dkt. 142, Declaration of Scott M. Prange, at ¶ 3, Ex. A. Cascade responded to the Interrogatories on January 24 and RFPs on January 27, 2022. On January 28, 2022, this matter was stayed pending a ruling on Cascade's motion for partial summary judgment. Dkt. 112. The Court lifted the stay on July 26, 2022. Dkts. 113 and 121. Cascade supplemented its responses on February 21 and

March 31, 2023. Cascade withheld two privileged documents (in addition to privileged communications about the litigation after the suit was filed) for which a privilege log was provided. *Id.*, at ¶ 5, Ex. C.

    1.    <u>Interrogatories 1, 9, 20, 21 and RFP 7, 34, 35, 44, and 47</u>

Interrogatory 1 asks Cascade to provide "an explanation" as to "any claim, damage, or remedy sought in this lawsuit or asserted as an affirmative defense," which is denied, and to state, "all facts that support such denial or assertion."

Interrogatory 9 asks Cascade to "list all steps" taken to ensure that Plaintiff's HSA contributions were deposited.

Interrogatory 20 asks Cascade to identify each document and object that memorializes facts at issue in this lawsuit or discusses or supports the claims, denials of liability, defenses, offsets, damages, and/or remedies sought in this case.

Interrogatory 21 asks Cascade to identify each of Plaintiff's nearly 450 allegations in her 66-page Complaint that is denied, explain why it is denied, and state all facts that support the denial.

RFP 7 asks Cascade to produce all documents referenced in its initial disclosures.

RFP 34 asks Cascade to produce all documents for each allegation set forth in Section I through IV of the Second Amended Complaint that are denied.

RFP 35 asks Cascade to produce all documents for the past six years that "identifies, memorializes, enumerates, describes, explains, or discusses the following: each person who worked for CDI in a position, department, or division of CDI that was involved in the activities and/or events described in the Second Amended Complaint; each person who has knowledge of the events, activities, or claims at issue in this lawsuit regardless of whether that person worked for CDI; each such person's job position(s)/title(s) at CDI during the time of the events at issue; the dates that person held such position(s)/title(s) at CDI; the manner or method in which that person gained such knowledge; and the content of that person's knowledge about the activities and/or events described in the Second Amended Complaint.

RFP 44 asks Cascade to produce all document for the past eight years, that "identifies, memorializes, enumerates, describes, explains, or discusses the following: each person, business, or entity that you believe may have information or documents that address the facts, claims, cross claims, counterclaims, defenses, damages, remedies, denials of liability, and/or offsets in this case."

      RFP 47 asks Cascade to produce all documents that "identifies, memorializes, enumerates, describes, explains, or discusses the following: the facts, claims, cross claims, counterclaims, defenses, damages, remedies, denials of liability, and/or offsets in this case."

      Plaintiff argues that Cascade must respond to contention discovery requests. The Court has reviewed Plaintiff's Interrogatories 1, 9, 20, 21, and RFP 7, 34, 35, 44, and 47 and finds these discovery requests are overly broad. These discovery requests do not comport with Rule 26's proportionality standard, Rule 33's limit on the number of interrogatories a party may serve (*see* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 33(a)(1) ("a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."), and do not meet the local rules requirement that discovery requests be "reasonably targeted, clear, and as specific as possible." Local Rules, W.D.Wash. 26(f).

      Plaintiff is correct that a party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and thus, an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact. However, the request must be appropriately framed and timed. Numerous federal courts, including this one, have held contention interrogatories which "systematically track all of the allegations in an opposing party's pleadings, and that ask for 'each and every fact' and application of law to fact that supports the party's allegations are an abuse of the discovery process because they are overly broad and unduly burdensome." *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007); *see also Olson v. City of Bainbridge Island*, 2009 WL 1770132, at *4 (W.D. Wash. June 18, 2009) (upholding "overly broad" objection to contention interrogatory which requested "all facts and all evidence" supporting a particular allegation); *Advocare Int'l, L.P. v. Scheckenbach*, 2009 WL

ORDER ON PLAINTIFF'S MOTION TO
COMPEL DISCOVERY RESPONSES AND
DETERMINE SUFFICIENCY OF
RESPONSES TO REQUESTS FOR
ADMISSION - 5

3064867, at *1 (W.D. Wash. Sept. 24, 2009).

The Court has discretion to not compel if the party responding to a contention request has already provided narrative responses that provide sufficient notice of the responding party's theories, *i.e.*, in their Answers and in pleadings referenced by the party (including arguments in connection with the motion to compel). *See*, *Advocare*, 2009 WL 3064867 at * 1. Here, Cascade provided narrative responses providing notice of its theories and referred Plaintiff to the specific pleadings and briefing in which the responses can be found. Dkt. 142, p. 9. In its First Supplemental Answer, Cascade referred to its "pleadings and extensive briefing of this case for Cascade's legal arguments and supporting facts including, but not limited to, Cascade's Partial Motion for Summary Judgment and Cascade's Answer to the Second Amended Complaint (Dkt. Nos. 59 and 92), including the Declaration of Julie Sarchett (Dkt. No. 60) and the Declaration of Kelsey Stiles (Dkt. No. 61) submitted in support of its Motion." Cascade also stated its willingness to meet and confer with Plaintiff to determine the intended scope of the requests.

The Court also notes RFP 35 seeks production of potentially confidential information relating to third-party employees (including contact information and job-related information). Plaintiff has failed to tailor this request or explain why information relating to other employees is relevant to her claims. Plaintiff's motion to compel further responses to Plaintiff's Interrogatories 1, 9, 20, 21, and RFP 7, 34, 35, 44, and 47 is **denied**.

    2.    <u>RFP 1 – Cascade's Initial Disclosures</u>

Plaintiff moves to compel a copy or a description by category and location of all documents identified in Cascade's initial disclosures. Plaintiff's initial complaint asserted nearly 450 factual allegations and 34 claims (many of which were later dismissed). According to

Cascade, it attempted at the outset of the case, to identify those broad categories of documents it believed were likely relevant to its defenses. Plaintiff argues Cascade is now obligated to produce all documents categorized in the initial disclosures.

While Plaintiff may guide her discovery efforts using the categories identified in Cascade's initial disclosures, Plaintiff must request specific documents or types of documents that may be relevant to her claims remaining after summary judgment and proportional to the needs of this case. A review of Cascade's responses reveals Cascade has produced responsive documents to Plaintiff's targeted requests and objected to others on the grounds they are overbroad or otherwise objectionable. Plaintiff has failed to identify any relevant, responsive document or category of document she believes Cascade is withholding. Thus, Plaintiff's motion to compel further response to RFP 1 is **denied**.

3. <u>Interrogatories 3, 4, 5 and RFP 12-17</u>

Plaintiff argues Cascade's responses to these discovery requests are cryptic and Cascade produced few or no documents relating to its failure to pay Plaintiff's wages and deposit into Plaintiff's HSA.

> Interrogatory 3 asks Cascade to list the names of all employees whose HSA contributions may have been withheld but untimely deposited, along with the dates and amount of the employees' deductions.

> Interrogatory 4 similarly asks Cascade to produce the same set of information regarding these employees, alongside detailed explanation of why each employee's HSA contributions were untimely deposited.

Cascade objected to providing information regarding other employees. With respect to Plaintiff's HSA contributions, Cascade responded as follows:

> "[] In 2017, CDI deducted $6,300 from Plaintiff's compensation per her written instruction. CDI attempted to transfer these amounts to Plaintiff's HSA

account with HSA Bank in addition to a $600 employer contribution for the 2017 tax year. For reasons unknown to CDI, HSA bank did not accept these direct deposits on Plaintiff's behalf or credit them to her account with HSA Bank. [] Once Plaintiff provided requested documentation, CDI worked with HSA Bank to fix the 2017 contribution. On Plaintiff's behalf, CDI transferred $9,625 on March 6, 2018, and requested that HSA Bank allocate the $6,300 employee contribution and $600 employer contribution to Plaintiff for the 2017 tax year. The remaining $2,725 represented Plaintiff's employee elections for the 2018 tax year[.] Unfortunately, following a personnel change within CDI, CDI closed one of its bank accounts, not realizing it was the account from which HSA Bank was authorized to draw funds for HSA contributions. Because HSA Bank was unable to draw funds from CDI to complete the transfer, HSA Bank subsequently debited the $9,625 contribution from Plaintiff's HSA, without CDI's knowledge or notice to CDI, undoing CDI's intended correction. CDI did not immediately discover this action and was not immediately notified of the debit by Plaintiff. When Plaintiff notified CDI of the withdrawal, CDI transferred funds again, on May 25, 2018." Declaration of Julie Sarchett at ¶¶ 7,8, and 9.

Plaintiff contends this response is "cryptic" and she has follow-up questions. Plaintiff is free to follow-up on Cascade's response with depositions or additional written requests as authorized by the Civil Rules. For purposes of this motion, however, Cascade has sufficiently responded to the request with regard to Plaintiff's HSA contributions.

With respect to other employee's pay records, Plaintiff fails to explain why discovery of other employees' pay records is relevant to her claims or proportional to the needs of this case. Plaintiff offers no explanation why Cascade's specific objections to the scope of this request are deficient, other than to claim she heard a "rumor" that "other employees did not receive HSA payments when due." Plaintiff argues this speaks to Cascade's "willful motive." However, motive is not an element of Plaintiff's wage withholding claims.

> Interrogatory 5 asks Cascade to "identify each person that worked for CDI who . . . had the authority to authorize, implement, or supervise a deduction of money from a CDI employee's wages or deposit money into a CDI's employee's HSA account."

ORDER ON PLAINTIFF'S MOTION TO
COMPEL DISCOVERY RESPONSES AND
DETERMINE SUFFICIENCY OF
RESPONSES TO REQUESTS FOR
ADMISSION - 8

Cascade listed two individuals and indicated these individuals can be contacted through Cascade's counsel. Plaintiff argues Cascade should be compelled to provide contact information for one of the individuals identified as a speaking agent, and to explain why this person has been identified as a speaking agent and was "allegedly the only person responsible for HSA deposits."

Cascade provided the identity of two individuals in response to this interrogatory. If Plaintiff has follow-up questions, she may address them through counsel as is appropriate. Because Cascade has appropriately responded to and/or objected to these requests, Plaintiff's motion to compel further response to Interrogatories 3, 4, and 5 is **denied**.

RFP 12 through 17

RFP 12 and 17 seek Cascade's financial and banking records and records related to Cascade employees and their compensation. For example, RFP 12 requests contact information and all records related to amounts and deposits for any employee for whom an HSA deduction was made but not deposited. RFP 17 seeks records for the last eight years relating to "CDI's management of CDI's HSA plan…".

Plaintiff fails to explain how these are targeted and specific requests relevant to her claims and proportional to the needs of this case. The identity of other employees, their contact information, and records regarding their HSA contributions are not relevant to Plaintiff's claims. Cascade provided records pertaining to Plaintiff, her compensation, and her HSA contributions. Additionally, Plaintiff's request for "any and all materials" that even remotely "discusses CDI's management of CDI's HSA plan," without consideration of when Plaintiff worked, Plaintiff's claims, and when her claims allegedly arose, would produce voluminous materials wholly unrelated to Plaintiff's claims or defenses and would therefore not be proportional to the needs of

this case. *See Sweeney v. ManorCare Health Servs., Inc.*, No. C03-5320 RJB, 2005 WL 8173183, at *2 (W.D. Wash. Sept 23, 2005 (quashing a plaintiff's request for production that sought "any and all" documents related to a topic, rather than presenting a tailored request).

The Court anticipates parties will confer in good faith and agree to a reasonable scope of discovery that is relevant and proportionate to the claims at issue. Plaintiff's motion to compel further responses to RFP 12-17 is **denied**.

4. <u>Interrogatories 10, 11; RFP 27-29</u>

Interrogatory 10 seeks the names of all Cascade managers for a seven-year period, their genders, management positions held, age range, and dates of each position.

Cascade provided the names of Plaintiff's direct-line of supervisors and managers who were responsible for the reduction in force that culminated in Plaintiff's separation, and their respective genders. Plaintiff offers no explanation for why the identity and gender of all Cascade managers, in all departments across the company, for the past seven years is relevant to her claim that she was wrongfully terminated.

<u>Interrogatory 11</u> asks Cascade to explain why Plaintiff was chosen as part of the reduction in force and to describe how Plaintiff's job duties were reassigned after her departure, if at all. Cascade responded: "Ms. Taber was a SQL BI Developer who was laid off on July 17, 2019 as part of a reduction in force based on her seniority. *See* Cascade's Motion for Partial Summary Judgment (Dkt. No. 59), including the Declaration of Julie Sarchett (Dkt. No. 60) submitted in support of its Motion." In a supplemental answer, Cascade stated that Taber was selected for termination because her job duties could be either "eliminated or absorbed" and that her duties were ultimately "eliminated". Plaintiff argues however, that Cascade should be

compelled to list the job duties that were allegedly eliminated and to explain recruiting actions it took for positions that included these job duties because Plaintiff received a job advertisement from a recruiter for an open position that included work she had done at Cascade.

Plaintiff's motion to compel further answer to Interrogatory 11 is **granted**. Cascade should describe how Plaintiff's job duties were reassigned after her departure, if at all.

<u>RFP 27, 28, and 29</u>

RFP 27 seeks documents for every employee laid off since 2015; RFP 28 seeks documents for every person assigned job duties formerly belonging to Plaintiff and the job duties after August 2019; RFP 29 requests documents spanning the past eight years as to all Cascade employees, their overtime, wage deductions, employer contributions, severance wages, paid time off amounts, wage record and paystubs.

Cascade responded to these requests by providing the names of employees chosen for the reduction in force within the applicable decisional unit, and their demographics, as well as all materials evidencing why specific employees were chosen. Plaintiff fails to explain how her requests are appropriately targeted or why Cascade's objections and responses are deficient. The requests as written are overly broad in scope and time, and the identity of third-party employees and their personal and job information is not relevant to Plaintiff's claims. Additionally, requiring Cascade to produce "any and all materials" related to all employees who have ever been laid off, without consideration of when Plaintiff worked, Plaintiff's claims, and when her claims allegedly arose, would produce voluminous materials wholly unrelated to Plaintiff's claims or defenses.

ORDER ON PLAINTIFF'S MOTION TO
COMPEL DISCOVERY RESPONSES AND
DETERMINE SUFFICIENCY OF
RESPONSES TO REQUESTS FOR
ADMISSION - 11

Plaintiff's motion to compel further response to Interrogatory 10; RFP 27-29 is **denied**. Plaintiff's motion to compel further response to Interrogatory 11 is **granted** as stated above.

5. Interrogatory 6

Interrogatory 6 asks Cascade to "explain why you did not pay Taber overtime wages," and to "state the facts supporting your decision."

Plaintiff was an exempt employee not eligible for overtime and there is no misclassification or overtime claim in this case. Therefore, the requested information is not relevant to any of Plaintiff's claims. Plaintiff's motion to compel further response to Interrogatory 6 is **denied**.

6. Interrogatory 17; RFP 37-39

Interrogatory 17 asks Cascade to identify all corporate officers and directors for a seven-year period.

Plaintiff argues that she is entitled to this information because she asserted multiple wage claims against individual defendants as "Employer Defendants". However, this request asks Cascade to identify all corporate officers for the past seven years. Plaintiff does not allege that Cascade's officers or directors for the past seven years were involved in any act subject to her claims.

RFP 37 seeks the personnel file of Julie Sarchett, an HR and payroll professional who helped process Plaintiff's HSA contributions. Plaintiff has not asserted any claims against Ms. Sarchett, Ms. Sarchett is not a party to this action, and it is not clear how her personnel file is in any way relevant to Plaintiff's claims.

RFPs 38-39 are sweeping requests for all documents that evidence any "business/ professional relationship" between Cascade and any other entity and all documents in any way

1  related to Cascade's corporate officers and directors. These requests are on their face overbroad,

2  unduly burdensome, and disproportionate to the needs of this case. Plaintiff refused to narrow the

3  scope of these requests and offers no cogent explanation here of why Cascade should be

4  compelled to produce materials that are not even remotely related to this litigation. *See Sweeney*,

5  2005 WL 8173183 at *2 (quashing a plaintiff's request for production that sought "any and all"

6  documents related to a topic, rather than presenting a tailored request).

7        Plaintiff's motion to compel further responses to Interrogatory 17; RFP 37-39 is **denied**.

8  B.    <u>Requests for Admission</u>

9        On December 21, 2021, Plaintiff propounded 350 requests for admission ("RFAs)

10  (seeking authentication of 174 documents). Dkt. 142, Prange Decl., at ¶ 4, Ex. B. About a week

11  prior to the stay, on January 20, 2022, Cascade objected to the RFAs for failing to limit the range

12  of issues for trial because Cascade's pending motion for summary judgment was likely to

13  eliminate many of Plaintiff's 34 claims. Shortly after the Court's ruling dismissing many of

14  Plaintiff's claims on July 21, 2022, Cascade proposed responding to a subset of RFAs,

15  eliminating those no longer relevant to the case or which were duplicative. Plaintiff did not

16  respond to this proposal for over six months, and ultimately refused to drop any of her RFAs. On

17  March 3, 2023, Cascade supplemented its response, responding to all RFAs and authenticating

18  all materials within its control. However, Cascade objected to 180 duplicative RFAs because the

19  112 documents Plaintiff sought to authenticate were either illegible (47) or not in Cascade's

20  custody (65).

21        Plaintiff argues all requests for admissions should be deemed admitted because Cascade's

22  responses were three days late (*if* they mailed the responses), Cascade made only boilerplate

23

objections without showing diligent inquiry, duplicative requests do not justify failing to respond, and because Cascade served the responses late, Defendants cannot now object if some of the documents "were somewhat blurry." Dkt. 150, p. 7.

The Court disagrees. Fed. R. Civ. P. 36(a)(6) directs the Court to require the non-moving party to answer a request for admission unless an objection is justified; it does not require that requests be deemed admitted. Cascade responded to the 350 requests for admission, admitted the authenticity of 88 documents, and preserved its objections. Plaintiff fails to specify any specific RFA that was not answered or any legally deficient response or objection. Because all requests were either admitted or denied, the Court declines to deem the RFAs admitted based merely on a three-day delay. In addition, there appear to be issues involving duplicative RFAs and RFAs that may no longer be relevant to Plaintiff's remaining claims that the parties should be able to resolve.

According to Cascade, the parties previously agreed to identify those RFAs that were still relevant and not duplicative after many of Plaintiff's claims were dismissed in August of 2022, but Plaintiff refused to drop any requests. Dkt. 141 at 11; Dkt. 142, Prange Decl., at ¶ 4, Ex. B. Cascade also points out that for approximately 169 documents, there were two requests asking (1) for an admission the document is authentic and (2) an admission concerning sentences that were restated from the document. Requests for admission that simply restate sentences from a previously authenticated document are "unreasonably duplicative and cumulative". *See K.C.R. v. Cnty. of Los Angeles*, No. CV 13-3806 PSG SSX, 2014 WL 3433925, at *4 (C.D. Cal. July 14, 2014). Based on the foregoing, Plaintiff's motion to deem the RAFs admitted is **denied**.

ORDER ON PLAINTIFF'S MOTION TO
COMPEL DISCOVERY RESPONSES AND
DETERMINE SUFFICIENCY OF
RESPONSES TO REQUESTS FOR
ADMISSION - 14

Accordingly, it is **ORDERED** Plaintiff's motion to compel further answer to Interrogatory 11 is **granted**; Cascade should describe how Plaintiff's job duties were reassigned after her departure, if at all. The remainder of Plaintiff's motion to compel and her request for monetary sanctions (Dkt. 147) is **DENIED.**

DATED this 25th day of April, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge