1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEXANDRA TABER,

                    Plaintiff,

    v.

CASCADE DESIGNS, INC., et al.,

                    Defendants.

CASE NO. 2:20-cv-01633-TL

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

This is an action for the mishandling of health savings account ("HSA") contributions and retaliatory termination, among other claims. This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 162), Individual Defendants' Motion for Summary Judgment (Dkt. No. 167), and Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 170). Having reviewed the Parties' briefing and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court decides the motions as follows.

## I.    BACKGROUND

The following facts are undisputed unless otherwise noted.

## A.     Factual Background

Defendant Cascade Designs, Inc. ("CDI") is a private company headquartered in Seattle, Washington, that engineers, tests, and manufactures outdoor equipment. Dkt. No. 60 (prior Sarchett declaration) ¶ 3. The remaining Defendants are various individuals affiliated with Defendant CDI:

- Defendant David Burroughs is an owner and minority shareholder. Dkt. No. 169 (Ross declaration) ¶ 3.

- Defendant John Burroughs is an owner and majority shareholder, and he previously sat on the Board of Directors. *Id.* ¶ 4.

- Defendant John Gevaert previously sat on the Board of Directors. *Id.* ¶ 5.

- Defendant James Cotter is a former CEO and previously sat on the Board of Directors. *Id.* ¶ 6.

- Defendant Eric Hobbs is former Corporate Counsel and previously served as Secretary. *Id.* ¶ 7.

- Defendant Steve McClure is a former Chief Financial Officer. *Id.* ¶ 8.

- Defendant Harry Ross is Human Resources Director. *Id.* ¶ 2.

Plaintiff Alexandra Taber is a former employee of Defendant CDI. Dkt. No. 60 ¶ 2. From September 5, 2016, to July 17, 2019, Plaintiff was employed as a SQL Business Intelligence Developer in Defendant CDI's IT department. *Id.* Plaintiff was primarily responsible for generating custom enterprise intelligence reports by pulling an array of operational data from SQL databases. Dkt. No. 163 (Prange declaration) at 18–19 (job description for "SQL Business Intelligence Developer"), 26–27 (51:10–52:4) (Plaintiff deposition).

In 2017, Defendant CDI offered employees a new, voluntary HSA benefit. Dkt. No. 165 (Sarchett declaration) ¶ 5. An employee could elect to contribute "a portion of her wages to an eligible HSA, through a pre-tax deduction from her paycheck." *Id.* If an employee chose to

participate, Defendant CDI would also contribute to the employee's account. *Id.* Contributions were to be made quarterly, and the funds could be used for qualified medical expenses. *Id.* Plaintiff enrolled in the benefit and completed several forms directing Defendant CDI to make HSA deductions from her paychecks in 2017 and 2018. Dkt. No. 163 at 35 (119:5–9), 43–44 (135:24–136:2); *see also* Dkt. Nos. 63-1–63-2 (Plaintiff's paystubs from 2017, 2018, and 2019); Dkt. No. 63-8 at 10–18 (Plaintiff's enrollment forms covering August 2017 to January 2019). Julie Sarchett and Vivian Gould were the employees with authority to deduct wages and deposit money into an HSA account. Dkt. No. 171-2 (interrogatories) at 3.

At the end of 2017, Plaintiff notified Defendant CDI that neither her HSA contribution of $6,300, nor Defendant CDI's contribution of $600, had been posted to her HSA account. *See* Dkt. No. 129 (answer) ¶¶ 4.28, 4.31. Defendant CDI's own investigation concluded that Plaintiff's 2017 contributions had indeed not been timely credited to her account. Dkt. No. 60 ¶¶ 7–8; *see also* Dkt. No. 129 ¶¶ 4.19, 4.21, 4.30; Dkt. No. 63-3 at 2–19 (Plaintiff's HSA statements for July–December 2017). In 2018, Defendant CDI's own investigation further concluded that Plaintiff's 2018 contributions had also not been timely posted to her account. *See* Dkt. No. 63-3 at 21–26 (Plaintiff's HSA statements for January–February 2018); Dkt. No. 129 ¶ 4.48; *see also* Dkt. No. 166 (Nygren declaration) ¶ 3.

On May 25, 2018, Defendant CDI paid all owed HSA contributions to Plaintiff. Dkt. No. 60 ¶¶ 9, 13; Dkt. No. 163 at 41–42 (126:23–127:14), 48 (146:13–23). Later, Defendant CDI also paid Plaintiff $8,545.77, which Plaintiff states was intended to compensate her for "the missed portions" of her 2017 and 2018 HSA contributions "and some of the additional expenses that [Plaintiff] had incurred to deal with [Defendant] CDI's mistake." Dkt. No. 163 at 49 (210:4–25). However, in a letter dated June 24, 2019, Plaintiff's tax advisor stated that the tax and investment impact for both the 2017 and 2018 errors totaled $11,232,77. Dkt. No. 176-2 at 4.

Plaintiff was terminated on July 17, 2019.[1] Dkt. No. 176-3 (answers to interrogatory) at 3. In November 2019, Plaintiff began employment with the University of Washington, earning a salary of $103,000.[2] Dkt. No. 163 at 24–25 (33:10–22, 34:14–24).

**B.   Procedural History**

On October 7, 2020, Plaintiff commenced the instant action in Washington state court. *See* Dkt. No. 1-1 (sealed). On November 5, 2020, Defendants removed the action to this District. *See* Dkt. No. 1.

On July 21, 2022, the Court granted in part and denied in part Defendants' motion for partial summary judgment. *See* Dkt. No. 119. The Court dismissed 14 claims, including Counts 3, 8–10, 12–14, 17, and 25–30. *Id.* at 29–30. The Court observed that other counts are not independent legal claims but remedies, including Counts 15–16, 20, 22, and 32–34. *Id.* at 5. Finally, the Court denied most of Plaintiff's motions for sanctions and other miscellaneous relief. *Id.* at 30.

Defendants now move for summary judgment on all remaining claims, both collectively and the individual defendants separately. *See* Dkt. Nos. 162, 167. Plaintiff also moves for partial summary judgment on her wage claims and certain defenses. *See* Dkt. No. 170.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a

---

[1] Defendants supply a declaration from Barry Paxman to help explain Plaintiff's termination. *See* Dkt. No. 164. Plaintiff moves to strike the Paxman declaration. *See* Dkt. No. 175 at 24–27. However, the Court does not rely on the declaration in its ruling. Therefore, Plaintiff's motion is STRICKEN as moot.

[2] According to Defendants, Plaintiff earns a higher salary at the University of Washington than when she was employed by Defendant CDI. Dkt. No. 162 at 12.

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The court must draw all justifiable inferences in favor of the non-movant. *Id.* at 255. The court does not make credibility determinations or weigh evidence at this stage. *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[W]here the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied.").

If the non-movant bears the burden of proof at trial, the movant only needs to show an absence of evidence to support the non-movant's case. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once such a showing is made, the burden shifts to the non-movant to show more than the mere existence of a scintilla of evidence in support of its case—the party must show sufficient evidence that a jury could reasonably find for the non-movant. *Id.* (citing *Anderson*, 477 U.S. at 252). Even if the non-movant does not have the burden of proof at trial, it must nonetheless show that a genuine issue of material fact exists by presenting evidence in its favor. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929–30 (9th Cir. 2009) (affirming summary judgment for plaintiff where defendants failed to show significantly probative evidence to dispute plaintiff's evidence). In short, the Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (citing Fed. R. Civ. P. 56(c)).

Finally, "when parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted). The court rules on each motion "on an individual and separate basis." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998)). However, it is not required that the court's discussion of the cross-motions be organized in separate sections, particularly where the central legal issues are the same. *See id.* (holding the district court acted properly where it summarized party's arguments, cited authority referenced by the party, and cited exhibits to a declaration submitted by the party).

### III.   DISCUSSION

As an initial matter, Plaintiff "does not oppose" dismissal of Count 21 ("Wrongful Discharge and Age and Gender Discrimination"), Count 23 ("Violations of ERISA § 502(a)(1)(B)"), and Count 31 ("Fraud, Constructive Fraud, Negligent Misrepresentation Regarding Failure to Provide COBRA Notice"). *See* Dkt. No. 175 (response to Defendants' motion) at 1. Accordingly, those counts are DISMISSED.

The remaining issues addressed in the Parties' cross-motions for summary judgment can be generally categorized as Plaintiff's wage claims (Counts 1–2, 4–7, and 11), retaliation claims (Counts 18–19), breach of contract claim (Count 24), and various affirmative defenses raised by Defendants.

### A.   Wage Claims

In Counts 1–2 and 6–7 (and related Counts 4–5 and 11 for damages), Plaintiff brings wage rebate and withholding claims under Washington's Wage Rebate Act ("WRA"), RCW 49.52.050 *et seq.*, and Seattle's Wage Theft Ordinance ("SWTO"), SMC 14.20.005 *et seq. See* Dkt. No. 123 (Third Amended Complaint) ¶¶ 5.2–5.5, 5.8–5.15, 5.22–5.23.

Defendants move for summary judgment on these counts. *See* Dkt. No. 162 at 13–16; Dkt. No. 180 (reply) at 7–12. The individual Defendants move for summary judgment on the additional grounds that there is no individual liability for these claims. *See* Dkt. No. 167 at 11–12; Dkt. No. 183 at 5–6, 8–12. Finally, Plaintiff cross-moves for summary judgment. *See* Dkt. No. 170 at 12–18; Dkt. No. 184 (reply).

The WRA states, in relevant part:

> Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who . . .

> Willfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . .

> Shall be guilty of a misdemeanor.

RCW 49.52.050(2). A person who violates this provision is liable in a civil action for "twice the amount of the wages unlawfully rebated or withheld" as well as "costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070. This liability does not attach where an employee "has knowingly submitted to such violations." *Id.*

The SWTO states, in relevant part:

> An employer shall pay all compensation owed to an employee by reason of employment on an established regular pay day at no longer than monthly payment intervals.

SMC 14.20.020; *see also* SMC 14.20.010 (defining "employer," "compensation," "employee," "pay day," and "payment interval"). A person who violates this provision is liable in a civil action for "reasonable attorney fees and costs and such legal or equitable relief as may be appropriate to remedy the violation," including but not limited to "the payment of any unpaid

compensation plus interest due to the person and liquidated damages in additional amount of up to twice the unpaid compensation." SMC 14.20.090.

### 1. Whether Wage Claims Are Precluded Because All Money Is Now Received

Defendants argue that Plaintiff received all HSA contributions (albeit untimely) and cannot recover additional consequential damages and interest under the WRA and SWTO. Dkt. No. 162 at 13–14; Dkt. No. 180 at 10–12; *see also* Dkt. No. 173 (response to Plaintiff's motion) at 13–14. Plaintiff argues that "[p]aying wages *eventually* is not a defense to a wage claim" and that she is entitled to additional damages. Dkt. No. 175 at 14–16 (emphasis in original).[3]

Defendants' only authority for their argument, *Coulombe v. Total Renal Care Holdings*, is not instructive. No. C06-504, 2007 WL 1367601 (W.D. Wash. May 4, 2007). There, the court granted summary judgment for one of the defendants on plaintiff's WRA claims. *Id.* at *7. Specifically, as to plaintiff's allegation that the defendant "fail[ed] to pay him certain salary increases and discretionary bonuses," the court found that plaintiff's own testimony "confirms that he received the salary increase that [defendant] allegedly owed," at the time it was owed (in 2004). *Id.* (citing deposition testimony). Defendants characterize the holding as "a WRA claim necessar[ily] fails where no monies were owed" (Dkt. No. 180 at 10; Dkt. No. 173 at 13), but the Court does not read *Coulombe* to go so far. Instead, *Coulombe* stands for the unremarkable proposition that a wage withholding claim does not lie where no wages were *ever* withheld.

In contrast, here, Plaintiff alleges that her wages were withheld in that she did not receive them when owed by statute. Defendants offer no authority or argument that the WRA and SWTO permit the delayed payment of owed money, or otherwise require that a plaintiff *still* be missing

---

[3] Plaintiff also argues that there was no "accord and satisfaction" for wage-violation damages. Dkt. No. 175 at 16–17. However, the Court does not understand Defendants to be arguing accord and satisfaction, but rather that the eventual transfer of all owed HSA contributions defeats an element of her claims.

the money at the time a withholding claim is brought. Indeed, it would be contrary to the

purposes of the WRA and SWTO to permit an employer to play indefinite "keep away" with an

employee's wages but later avoid liability simply because it *eventually* gives in. *See Brashear*

*Elec., Inc. v. Norcal Props., LLC*, 482 P.3d 955, 958 (Wash. Ct. App. 2021) ("A statute is

construed to effect its legislative purpose, while avoiding unlikely, absurd, or strained

consequences." (citing *Sanders v. State*, 207 P.3d 1245, 1248 (Wash. 2009))); *Allen v. Dameron*,

389 P.3d 487, 493 (Wash. 2017) ("The purpose of the WRA is clear; it is 'primarily a protective

measure . . . [with] the aim or purpose . . . to see that the employee shall realize the full amount

of the wages . . . he is entitled to receive from his employer, and which the employer is obligated

to pay . . . ." (quoting *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371, 375 (Wash. 1998))).

Finally, Defendants make additional arguments about available damages, which merit a

brief discussion. *See* Dkt. No. 162 at 13–14; Dkt. No. 180 at 10–11. Civil liability under the

WRA includes "twice the amount of the wages unlawfully rebated or withheld by way of

exemplary damages, together with costs of suit and a reasonable sum for attorney's fees."

RCW 49.52.070. Civil liability under the SWTO includes

> reasonable attorney fees and costs and such legal or equitable relief
> as may be appropriate to remedy the violation including, without
> limitation, the payment of any unpaid compensation plus interest
> due to the person and liquidated damages in an additional amount
> of up to twice the unpaid compensation.

SMC 14.20.090(A). These categories of damages go beyond the simple amount of wages

withheld. Therefore, even where an employer eventually pays an employee the wages due for a

potential wage claim, suit can still be brought for other relief such as exemplary or liquidated

damages, as well as legal costs and attorney fees. *Jumamil v. Lakeside Casino, LLC*, 319 P.3d

868, 875 (Wash. Ct. App. 2014) (holding WRA claim could proceed even where plaintiff

received payment of wages due through a separate lawsuit "[b]ecause [plaintiff] is entitled to

costs and attorney fees in addition to the exemplary damages"). While Defendants attempted to make Plaintiff whole in 2019 (prior to the commencement of this lawsuit), the Parties clearly disagreed as to the correct amount. *See* Dkt. No. 176-1 at 2–11; Dkt. No. 176-2 at 3–4. Given Defendants' various representations about when the contributions were paid in full and additional payments made as well as what Plaintiff did with the payments, an open question remains as to the amount of damages to which Plaintiff might be entitled. These disputes of fact defeat Defendants' damages-related arguments. Plaintiff may therefore still pursue her theories of liability and general categories of damages.

### 2.     Whether HSA Contributions Are "Wages" or "Compensation"

Defendants argue that HSA contributions are not "wages" under the WRA or "compensation" under the SWTO. *See* Dkt. No. 162 at 14–15; Dkt. No. 180 at 7–10; *see also* Dkt. No. 173 at 10–11. Plaintiff argues that these contributions are indeed wages. *See* Dkt. No. 170 at 12–14; Dkt. No. 184 at 9–10; *see also* Dkt. No. 175 at 17–20.

#### a.     *"Wages"*

"The WRA does not define 'wage.'"  *LaCoursiere v. Camwest Dev., Inc.*, 339 P.3d 963, 967 (Wash. 2014). However, "[t]o give undefined terms meaning," Washington courts "may look to dictionary definitions and related statutes." *Id.* (citing *Garrison v. Wash. State Nursing Bd.*, 550 P.2d 7 (Wash. 1976) (dictionary) and *Dep't of Ecology v. Campbell & Gwinn, LLC*, 43 P.3d 4 (Wash. 2022) (related statutes)). "Ultimately, in resolving a question of statutory construction," Washington courts "will adopt the interpretation which best advances the legislative purpose." *Id.* (quoting *Bennett v. Hardy*, 784 P.2d 1258 (Wash. 1990)). "The [WRA] must be liberally construed to advance the Legislature's intent to protect employee wages and assure payment." *Schilling*, 961 P.2d at 375 (citing *Brandt v. Impero*, 463 P.2d 197 (Wash. Ct. App. 1969)).

In *LaCoursiere*, the Washington Supreme Court considered whether discretionary bonuses qualify as "wages" under the WRA. 339 P.3d at 967–68. In doing so, the court looked to the Minimum Wage Act ("MWA"), RCW 49.46 *et seq.*, which defines "wage" as "compensation due to an employee by reason of employment." *Id.* at 967 (citing RCW 49.46.010(7)). The court also looked to *Webster's* dictionary, which defines "wage" as "a pledge or payment of [usually] monetary remuneration by an employer esp. for labor or services [usually] according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits." *Id.* (citing Webster's Third New International Dictionary 2568 (2002)). The court observed that the bonuses "were not purely gratuitous" but instead "were due by reason of employment." *Id.* It concluded that the bonuses were wages "because the bonuses were already paid for work performed." *Id.* at 968.

In *Essig v. Lai*, the Washington Court of Appeals considered whether pay owed under an employment contract qualifies as "wages" under the WRA. 444 P.3d 646, 649–50 (Wash. Ct. App. 2019). There, the parties entered into an employment agreement by which the defendant agreed to pay the plaintiff for a minimum of two years, but the plaintiff stopped working after about a month and a half after the defendant did not pay the owed money or benefits. *Id.* at 648. The court rejected the defendant's argument that the owed pay did not constitute "wages" because the plaintiff did not perform any work: "[Defendant's] reading contradicts the 'by reason of employment' language used to describe wages in *LaCoursiere*" as well as "the plain language of the statute: the WRA refers to the employer's obligation to pay, not the employee's obligation to work." *Id.* at 649. Analogizing to cases involving awards of back pay, the court reasoned that the owed pay was by reason of employment and thus constituted "wages." *Id.* at 650.

1    Here, the Court finds that Plaintiff's own HSA contributions constitute "wages" under the

2  WRA. Plaintiff's salary is both "paid for work performed," *LaCoursiere*, 339 P.3d at 968, *and*

3  owed "by reason of employment," *Essig*, 444 P.3d at 649. Relevant to this case, Plaintiff was

4  employed by Defendant CDI and properly enrolled in the HSA program. *See* Dkt. No. 163 at 35

5  (119:5–9), 43–44 (135:24–136:2); Dkt. No. 171-8 at 6–7 (enrollment form); Dkt. No. 171-4

6  (program guidelines). Plaintiff's HSA contributions are simply money deducted from her salary.[4]

7  If Plaintiff did not opt for an HSA, she still would have been paid the money that otherwise

8  would have been contributed to her HSA account. Moreover, contrary to Defendants' assertion

9  (Dkt. No. 162 at 16), the "wage" status of these funds is not transformed by certain provisions of

10  the Internal Revenue Code ("IRC"): Defendant does not argue that the IRC preempts the WRA

11  (or SWTO), and the statute and regulation apply only for purposes of the tax statute. *See* 26

12  U.S.C. § 4975(c)(1) ("For purposes of this section . . . ."), 29 C.F.R. § 2510.3-102(a)(1) ("For

13  purposes of . . . [26 U.S.C. § 4975] only . . . .").[5]

14    However, the Court finds that Defendant CDI's employer contributions to Plaintiff's

15  HSA are *not* wages under the WRA as they are *not* owed "by reason of employment," *Essig*, 444

16  P.3d at 649, but by reason of Plaintiff's participation in the HSA program. As Defendants

17  explain, Defendant CDI's contributions are "entirely contingent on Plaintiff's participation in the

18  HSA and not based on her work in any way." Dkt. No. 162 at 14; *cf. Teamsters, Local 117 v.*

19  *Nw. Beverages, Inc.*, 976 P.2d 1262, 1263 (Wash. Ct. App. 1999) (finding no legislative purpose

20

---

21  [4] The Court notes this is also how Defendants characterize an employee's contributions in one of their declarations
22  supporting their motion: "[I]f an employee elected to contribute a portion of her wages to an eligible HSA . . . ."
Dkt. No. 165 ¶ 5.

23  [5] Additionally, both Parties have abandoned their ERISA-related arguments. *See* Dkt. No. 173 at 16 ("[Defendant]
CDI argues . . . that the amounts withheld from [Plaintiff's] paychecks are not 'wages' and are plan assets
24  *(regardless of whether the HSA is covered by ERISA)* . . . ." (emphasis added)); Dkt. No. 175 at 1 (conceding
dismissal of Count 23, which alleged ERISA violations).

"to convert contingent benefits into wages" in the MWA). Take, for example, a situation where employee A and employee B both make $2,000 per month, the employer contributes $50 per month for employees opting into an HSA program, and only employee A opts into the HSA program. In this situation, the employer pays both employees $2,000 per month for their work. However, it also pays employee A an additional $50 for the employee's HSA (and not for employee A's work) while it does not pay employee B the additional $50. *See also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, at 3 (Sept. 10, 2019) (concluding that employers' contributions to HSAs are distinguishable from wages and salaries and thus not "earnings" under Consumer Credit Protection Act because they "do not vary in proportion to the amount or value of employees' personal services" and "are not part of the employee's take-home pay").

### b.   *"Compensation"*

The SWTO defines "compensation" as:

> payment owed to an employee by reason of employment including, but not limited to, salaries, wages, tips, overtime, commissions, piece rate, bonuses, rest breaks, promised or legislatively required paid leave, and reimbursement for employer expenses.

SMC 14.20.010. To the best of the Court's knowledge, there is no caselaw providing further guidance on the meaning of "compensation" as defined here.

However, for reasons similar to those given in the prior section, the Court finds that: (1) Plaintiff's HSA contributions constitute "compensation" under the SWTO because they are "payment owed to an employee *by reason of employment*," SMC 14.20.010 (emphasis added), and (2) Defendant CDI's HSA contributions are not "compensation" because they are not owed by reason of employment but rather by reason of Plaintiff's participation in the HSA program. *See supra* Section III.A.2.a. Moreover, the text of the SWTO provides additional support: "payment owed to an employee by reason of employment" includes (but is not limited to)

1   traditional forms of compensation for work performed like "salaries" and "wages" as well as

2   less-traditional forms like "rest breaks" and "promised or legislatively required paid leave," thus

3   evincing a broad understanding of "compensation" that nevertheless is tied to an employee's

4   status as employee rather than their voluntary participation in additional programs. *Cf. State v.*

5   *Roggenkamp*, 106 P.3d 196, 200 (Wash. 2005) (applying the doctrine of noscitur a sociis, "which

6   provides that a single word in a statute should not be read in isolation, and that 'the meaning of

7   words may be indicated or controlled by those with which they are associated'" (quoting *State v.*

8   *Jackson*, 976 P.2d 1229 (Wash. 1999))); *accord Jongeward v. BNSF Ry. Co.*, 278 P.3d 157, 164

9   (Wash. 2012) (same).

10       Therefore, Plaintiff's contributions to her HSA account constitute "wages" under the

11   WRA and "compensation" under the SWTO, but Defendant CDI's contributions to her HSA

12   account do not.

13      **3.**     **Whether HSA Contributions Were Lawfully Withheld Under the WRA**

14       Defendants argue that even if HSA contributions are "wages," an employer's deduction

15   of HSA contributions is exempted from the WRA. Dkt. No. 162 at 15–16; Dkt. No. 180 at 9–10;

16   *see also* Dkt. No. 173 at 11–13. Defendants cite RCW 49.52.060, which states in relevant part

17   that it is lawful

18               for an employer to withhold or divert any portion of an employee's
                      wages when required or empowered so to do by state or federal

19               law or when a deduction has been expressly authorized in writing
                      in advance by the employee for a lawful purpose accruing to the

20               benefit of such employee . . . .

21   *Id.* Defendants also cite WAC 296-126-028(2), which states, in relevant part:

22               During an on-going employment relationship, an employer may
                      deduct wages when the employee expressly authorizes the

23               deduction in writing and in advance for a lawful purpose for the
                      benefit of the employee.

24

1   *Id.*; *see also id.* ("Example 3. Employee benefits: Deductions have been specifically agreed upon

2   orally or in writing in advance by the employee and employer for monthly pension, medical,

3   dental, or other benefit plans."). Defendants argue that "it is undisputed that [Defendant] CDI

4   deducted Plaintiff's voluntary HSA contributions from her wages as compelled to do so by law

5   and as she authorized for her benefit." Dkt. No. 162 at 16. In response, Plaintiff argues these

6   statutes "do not authorize an employer to retain wages after payday," but instead "authorize an

7   employer to pay wages to a payee that the employee chooses or law determines." Dkt. No. 175

8   at 18; *see id.* at 18–19; *see also* Dkt. No. 184 at 10.

9          Here, the Court finds that these statutes do not preclude Plaintiff's claims. As Plaintiff

10   explains, these statutes "address *where* and *to whom* wages may [be] paid without violating the

11   WRA, but do not address *when* wages may be paid." Dkt. No. 175 at 19. Even as Plaintiff

12   authorized the deduction of wages for her HSA contributions, she did *not* authorize the retention

13   of those wages by her employer for an indefinite period. Under Defendants' reading, an

14   employer theoretically could deduct wages authorized by an employee for an HSA contribution

15   but never actually deposit the wages into the designated HSA account with no remedy for the

16   employee simply because the deduction was authorized. These statutes do not express such a

17   broad authorization that would, in effect, gut the purpose of the WRA: "to protect employee

18   wages and *assure payment*." *Schilling*, 961 P.2d at 375 (emphasis added). Therefore,

19   Defendants' argument fails.

20         **4.     Whether HSA Contributions Were "Willfully" Withheld Under the WRA**

21         Plaintiff argues that as a matter of law, Defendants willfully withheld her wages, entitling

22   her to relief under the WRA.[6] *See* Dkt. No. 170 at 16–18; Dkt. No. 184 at 4–7. Defendants argue

23

24   [6] In their motion, Defendants do not argue that they are entitled to summary judgment because their actions were not
willful as a matter of law. *See* Dkt. No. 162 at 13–16.

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT - 15

1  that Plaintiff has not made such a showing. *See* Dkt. No. 173 at 14–15; *see also* Dkt. No. 180 at

2  11–12.

3  "The critical determination in a case under RCW 49.52.070 for double damages is

4  whether the employer's failure to pay wages was 'willful.'" *Schilling*, 961 P.2d at 375. This test

5  is not "stringent." *Id.* Instead, "the employer's refusal to pay must be volitional." *Id.* "Willful

6  means 'merely that the person knows what he is doing, intends to do what he is doing, and is a

7  free agent.'" *Id.* (quoting *Brandt*, 463 P.2d at 199) (internal quotation marks omitted). "Where an

8  employer fails to pay wages owed, only two instances negate a finding of willfulness: (1) 'the

9  employer was careless or erred in failing to pay' or (2) 'a bona fide dispute existed between the

10  employer and employee regarding the payment of wages.'" *Wash. State Nurses Ass'n v. Sacred*

11  *Heart Med. Ctr.*, 287 P.3d 516, 521 (Wash. 2012) (quoting *Morgan v. Kingen*, 210 P.3d 995, 998

12  (Wash. 2009)) (internal quotation marks omitted); *accord Schilling*, 961 P.3d at 375–76

13  ("Carelessness or inadvertence negates the willfulness necessary to invoke double damages

14  under RCW 49.52.070 when the employer's failure to pay wages involves a legitimate error or

15  inadvertence."). "Ordinarily," the issue of willfulness "is a question of fact," though it can be

16  resolved on summary judgment where "there is no dispute as to the material facts." *Schilling*,

17  961 P.2d at 375.

18  Here, the Court finds that Defendants have presented sufficient evidence to overcome

19  summary judgment on the issue of willfulness. The crux of Plaintiff's argument is that Defendant

20  CDI failed to pay the HSA contributions "on **sixteen separate occasions** from August 3, 2017,

21  to February 15, 2018," including four times after learning that it was withholding her wages, and

22  did not make any reimbursement payments until nine months after the first failure. Dkt. No. 170

23  at 18 (emphasis in original); *see also* Dkt. No. 170 at 4–11 (pointing out possible weaknesses in

24  Defendant CDI's explanation for why its efforts to resolve the issue were delayed). But a

1    reasonable jury could credit Defendants' explanation instead: "[T]he delay in transferring the

2    HSA contributions to [Plaintiff's] HSA was inadvertent and caused by administrative and

3    banking problems." Dkt. No. 173 at 15. To that end, Defendants provide deposition testimony

4    and declarations supporting this explanation. *See* Dkt. No. 174 at 27–36 (27:4–33:11, 37:18–

5    39:8); Dkt. No. 60 ¶¶ 9–13; Dkt. No. 166 ¶ 3. While Plaintiff challenges the credibility of the

6    explanations due to shifts in reasons and a lack of documentary evidence supporting the

7    assertions (Dkt. No. 170 at 4–11), the Court does not make credibility determinations or weigh

8    the evidence on a summary judgment motion. *Munden*, 8 F.4th at 1044.

9         Defendants have raised a material dispute of fact as to whether they willfully withheld

10   Plaintiff's HSA contributions. As a result, the Court cannot conclude, as a matter of law, that

11   Defendants' actions were willful. Therefore, Plaintiff's argument fails.

12        **5.     Whether Defendants Are Liable Under the SWTO**

13        Plaintiff moves for summary judgment on liability for her SWTO wage claim. *See* Dkt.

14   No. 170 at 16; *see also* Dkt. No. 184 at 13 ("Plaintiff has moved only regarding *liability*, not

15   damages." (emphasis in original)). The Court has rejected Defendants' arguments regarding

16   "compensation" status and delayed receipt of money owed. *See supra* Sections III.A.1, 2(b).

17   Therefore, the question remains whether Defendants have violated the SWTO as a matter of law.

18   The Court notes that very little caselaw on the ordinance exists.

19        The SWTO states: "An employer shall pay all compensation owed to an employee by

20   reason of employment on an established regular pay day at no longer than monthly payment

21   intervals." SMC 14.20.020. By its plain language, then, the SWTO prohibits the late payment of

22   owed compensation, full stop. *See Darkenwald v. State Emp. Sec. Dep't*, 350 P.3d 647, 650

23   (Wash. 2015) ("[I]f the statute's meaning is plain on its face, then the court must give effect to

24

1    that plain meaning as an expression of legislative intent." (quoting *Dep't of Ecology v. Campbell*

2    *& Gwinn, LLC*, 43 P.3d 4, 9–10 (Wash. 2002))).

3            The Court has already found that Plaintiff's HSA contributions qualify as

4    "compensation" under the SWTO. *See supra* Section III.A.1.b. Moreover, Defendants concede

5    that "there was an inadvertent delay in transferring deductions to [Plaintiff's] HSA" (Dkt.

6    No. 129 ¶¶ 5.6, 5.8) and that they did not make any successful transfers of 2017 or 2018

7    deductions until May 25, 2018 (*see* Dkt. No. 60 ¶¶ 7–9). While Defendants claim that they

8    *attempted* a transfer sometime in 2017 (*id.* ¶ 7), they provide no documentation of that attempt,

9    and Plaintiff's own HSA statements show that Plaintiff did not *receive* those deductions in 2017.

10   *See* Dkt. No. 63-3 at 2–20 (July–December 2017 statements). Defendants also state that they

11   attempted a transfer on March 6, 2018, but that the transfer was ultimately undone (and, as a result,

12   inaccessible to Plaintiff). *See* Dkt. No. 60 ¶¶ 8–9; Dkt. No. 63-3 at 27–29 (March 2018 statement).

13           Regardless, the SWTO (unlike the WRA) does not require a finding of "willfulness," nor

14   does it contain any other intent requirement that might consider an employer's failed but

15   good-faith efforts to make timely payments. To be sure, this strict liability appears tempered by a

16   permissive remedies provision, which states that a successful plaintiff "*may* be awarded

17   reasonable attorney fees and costs and such legal or equitable relief *as may be appropriate to*

18   *remedy the violation*." SMC 14.20.090(A) (emphasis added). This damages provision contrasts

19   with that of the WRA, which states that a successful plaintiff "*shall* be liable" for double

20   damages for willful withholding. RCW 49.52.070 (emphasis added). But the SWTO requires

21   simply that an employer "pay" all compensation owed. SMC 14.20.020. It cannot be said that

22   Plaintiff was "paid" before she *actually received* her HSA contributions.

23

24

Therefore, the Court finds that Defendants are liable under the SWTO for the late payment of Plaintiff's own HSA contributions, with the amount of appropriate damages for the approximately one to nine months of delay in those payments still to be determined.

**6.      Whether Individual Defendants Are Liable**

The Individual Defendants argue separately that Plaintiff "has zero evidence supporting individual liability" for her wage claims. Dkt. No. 167 at 11; *see id.* at 11–12; Dkt. No. 183 at 5–12. Plaintiff opposes. *See* Dkt. No. 177.

To bring a claim for individual liability under the WRA, "a claimant must show both (1) the individual being sued is an officer, vice principal, or agent of the claimant's employer who has control over the payment of wages and (2) the individual willfully withheld the claimant's wages." *Allen*, 389 P.3d at 495 (citing RCW 49.52.050 and *Ellerman v. Centerpoint Prepress, Inc.*, 22 P.3d 795, 799 (Wash. 2001)); *see also Jumamil*, 319 P.3d at 878 ("[T]he employer must have knowledge of any wage withholding policies and fail to correct any improper wage withholding to be liable under RCW 49.52.070 for wage withholding."); *Durand v. HIMC Corp.*, 214 P.3d 189, 199 (Wash. Ct. App. 2009) ("A person is a 'vice principal,' and personally liable . . . in a wrongful withholding of wages case[,] when that person exercises control over the payment of funds and acts under that authority." (citing *Ellerman*, 22 P.3d at 799)).

Under the SWTO, an action may be brought "against the employer or other person violating [the SWTO]." SMC 14.20.090. An "employer" includes "any such entity or person acting directly or indirectly in the interest of an employer in relation to an employee." SMC 14.20.010.

The Court finds that Plaintiff has provided no evidence or authority (for some Defendants), or nothing beyond mere speculation (for other Defendants), to support a finding of individual liability for any of the Individual Defendants on Plaintiff's wage claims:

- **David Burroughs**

  - Defendants answered only that Defendant Burroughs had "some authority" regarding financial decisions, employee wages, and lawsuit settlements, and that authority ended on May 2, 2019. Dkt. No. 129 ¶¶ 1.16–1.18. The authority is not described.

  - Plaintiff provides an email conversation between her and Defendant Burroughs on August 8–9, 2019. *See* Dkt. No. 63-9 at 4–5. Defendant Burroughs indicates that he spoke to "Asif" the week before, and "Jill Lewis" a couple days prior, but he does not indicate what he spoke about with them or what was said. *Id.* at 4.

  - Plaintiff admits in her deposition:

    - "I don't know what David's contribution was or not." Dkt. No. 168 at 16 (224:7).

    - "I was not aware of what his authority was." *Id.* at 10 (174:13).

- **John Burroughs**

  - Defendants answered only that Defendant Burroughs had "some authority" regarding financial decisions, employee wages, and lawsuit settlements. Dkt. No. 129 ¶¶ 1.23–1.25. The authority is not described. Plaintiff provides no other evidence.

  - Plaintiff admits in her deposition:

    - "I do not know what John's contribution was or not." *Id.* (224:11).

    - "I don't know what John's authority within the company was." *Id.* at 11 (175:2–3).

    - "I don't know what John knew about my HSA contributions at the time." *Id.* (175:8–9).

    - "I don't know what Mr. [John] Burroughs had knowledge of." *Id.* (175:13).

- **John Gevaert**

  o  Defendants answered only that Defendant Gevaert had "some authority" to make financial decisions, which ended on October 20, 2017. Dkt. No. 129 ¶ 131. The authority is not described. Plaintiff provides no other evidence.

  o  Plaintiff admits in her deposition:

    ▪  "John was the CFO at the time, but I have no idea what he was or was not involved in." *Id.* (224:15–16).

    ▪  "I don't remember a specific date, but I know that John Gevaert was not with the company for most of the time that I was at CDI." *Id.* (175:16–18).

    ▪  "I don't remember exactly when John Gevaert left the company, so I cannot speak to what knowledge he had of my HSA contributions prior to him departing from the company." *Id.* (175:22–25).

    ▪  "I don't know what the scope of his role was, other than he was the CFO." *Id.* at 12 (176:7–8).

- **James Cotter**

  o  Defendants answered only that beginning November 29, 2017, and to the present, Defendant Cotter had "some authority" to make financial decisions, to decide whether to pay wages, and to settle lawsuits. Dkt. No. 129 ¶¶ 1.39–1.41. The authority is not described.

  o  Plaintiff provides one email conversation on October 21, 2020, involving Defendant Cotter. *See* Dkt. Nos. 178-1, 178-2. Defendant Cotter receives an email with some information about a proposal to make Plaintiff whole, and he responds, "Thanks / What was and was not paid to her?" Dkt. No. 178-1 at 2. Defendant Cotter says nothing else.

  o  Plaintiff admits in her deposition:

    ▪  "James Cotter was the CEO, I believe, of the company. I do not know what he knew or did not know." *Id.* at 16 (224:20–21).

- "I do not know to what extent, if any, Mr. Cotter knew about my issues around the HSA contributions." *Id.* at 12 (176:11–12).

- "I do not know the scope of Mr. Cotter's responsibilities with the company." *Id.* (176:16–17).

- **Eric Hobbs**

  o   Defendants denied that Defendant Hobbs had any authority to make financial decisions or to decide to pay wages from June 1, 2017, to the present. Dkt. No. 129 ¶¶ 1.47–1.48.

  o   Plaintiff provides an email dated July 15, 2019, in which Defendant Hobbs explains to Defendant Ross a potential proposal to "making [Plaintiff] whole." *See* Dkt. Nos. 178-1, 178-2.

  o   Plaintiff provides an email dated August 8, 2019, in which Defendant Hobbs instructs Julie Sarchett to issue a check to Plaintiff to "make her whole" for the issue with her HSA contributions. *See* Dkt. No. 176-2.

  o   Plaintiff provides an email conversation from July 26–August 12, 2019, between her and Defendant Hobbs in which the parties discuss and appear to negotiate the proposal to make her whole. *See* Dkt. No. 63-13 at 13–32.

  o   Plaintiff admits in her deposition:

    - "I do not know what Mr. Hobbs' involvement was in those payments, outside of him making decisions around what amounts I would be paid out of my accountant's assessment. Q: But those decisions came later after the late payments? A: Correct." *Id.* at 16–17 (224:25–225:5).

    - "I don't know what authority Mr. Hobbs has." *Id.* at 12 (176:21).

- **Steve McClure**

  o   Defendants answered only that Defendant McClure had "some authority" to make financial decisions until July 16, 2019. Dkt. No. 129 ¶ 1.55. The authority is not described.

    o      Plaintiff provides emails from April 2019 on which Defendant McClure is copied. *See* Dkt. Nos. 178-3, 178-4. The emails discuss the preparation of tax documents related to Plaintiff. *Id.* Defendant McClure does not say anything.

    o      Plaintiff admits in her deposition:

           ■    "Mr. McClure was also the CFO during the time that these mistakes were made. He is, again, the CFO, but I do not know the specifics of where the final authority on these decisions rested." *Id.* at 17–18 (225:22–226:1).

           ■    "Q: At what point did Mr. McLure become aware of the issues that you allege regarding the 2017 and 2018 contributions? A: I spoke to Mr. McLure in spring of 2019." *Id.* at 13 (177:18–21).

           ■    "I'm not aware of the specifics of his role within the company." *Id.* at 14 (178:3–4).

- **Harry Ross**

    o      Defendants answered only that Defendant Ross was the HR director until 2019. Dkt. No. 129 ¶ 1.61.

    o      Plaintiff provides emails from April 2019, July 2019, and October 2020. *See* Dkt. Nos. 178-1–178-4.[7] On the emails concerning tax document preparation (Dkt. Nos. 178-3, 178-4), Defendant Ross does not speak. On the emails concerning the proposal to make her whole (Dkt. Nos. 178-1, 178-2), Defendant Ross appears to simply relay information from Defendant Hobbs.

    o      Plaintiff also provides emails from April 2019 and July–August 2019. *See* Dkt. No. 63-13 at 11–35. On the April 2019 emails, Defendant Ross is copied in a discussion about tax document preparation but does not speak. *See id.* at 11–12. On the July–August 2019 emails, Plaintiff asks Defendant Ross about her severance contract, and Defendant Ross directs her to Defendant Hobbs, who then carries forward the conversation. *See id.* at 13–35. It is not clear which emails in the conversation Defendant Ross is copied on.

---

[7] Plaintiff also cites an additional email on which Defendant Ross is neither copied nor mentioned. *See* Dkt. No. 178-5.

○ Plaintiff admits in her deposition:

▪ "Mr. Ross was Julie [Sarchett]'s boss during the time that I was employed. I do not know where his authority started or ended regarding these payments." *Id.* at 18 (226:5–8).

▪ "Q: . . . [D]o you have any personal knowledge that he could have directed payroll or written a check? A: I don't know what Mr. Ross's scope of responsibility was." *Id.* at 14 (178:5–8).

Ultimately, Plaintiff neither provides any evidence that any of these individuals even *knew* there were issues regarding her HSA contributions until April 2019 at the earliest (and some cases, months after that) nor developed any such evidence. Plaintiff also neither provides nor develops evidence that these individuals had the *authority* to rectify the issues with her HSA contributions. While there is evidence that some individuals were included in email discussions about "making Plaintiff whole," there is no evidence that they *willfully* (that is, knowingly and intentionally) continued to withhold her wages. On the contrary, Plaintiff repeatedly admitted in her deposition that she has no knowledge or understanding whatsoever of the Individual Defendants' role in the situation. Therefore, all wage claims against all Individual Defendants are DISMISSED.

Accordingly, as to Plaintiff's wage claims, Defendants' motion for summary judgment is GRANTED IN PART as to employer contributions and DENIED IN PART as to the remainder, the Individual Defendants' motion is GRANTED, and Plaintiff's motion is DENIED as to the WRA claim and GRANTED IN PART and DENIED IN PART as to the SWTO claim.

**B.    Retaliation Claims**

In Count 18 (and related Count 19 for damages), Plaintiff brings a claim of wrongful termination based on retaliation under: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 215(a)(3), 216(b); (2) the MWA, RCW 49.46.100(2); and (3) the SWTO, SMC 14.20.090.

*See* Dkt. No. 123 ¶¶ 5.36–5.39. Defendants move for summary judgment on these counts, arguing that Plaintiff has not established a *prima facie* case. *See* Dkt. No. 162 at 19–20; Dkt. No. 180 at 12–16.[8] Plaintiff does not cross-move on these claims.

"To prevail on a retaliation claim under the FLSA, a plaintiff must first make a prima facie showing that: (1) [she] engaged in activity protected by the FLSA; (2) defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Stewart v. Masters Builders Ass'n of King & Snohomish Cntys.*, 736 F. Supp. 2d 1291, 1295 (W.D. Wash. 2010) (citing *Conner v. Schnuck Mkts.*, 121 F.3d 1390, 1394 (10th Cir. 1997)). "If a plaintiff meets this standard, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse action." *Id.* (citing *Conner*, 121 F.3d at 1394). "The burden thereafter shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual." *Id.*

Under the MWA, employers are prohibited "from discharging or 'in any other manner discriminat[ing] against any employee because such employee has made any complaint to his or her employer . . . that the employer has violated' Washington's minimum wage law." *Blackman v. Omak Sch. Dist.*, 466 F. Supp. 3d 1172, 1186 (E.D. Wash. 2020) (quoting RCW 49.46.100).[9]

---

[8] Defendants point out (*see* Dkt. No. 180 at 12) that Plaintiff argues in part as if one of her claims is a tort claim for wrongful termination as a violation of public policy. See Dkt. No. 175 at 22–23. Plaintiff has not pleaded this claim. *See generally* Dkt. No. 123. Therefore, the Court will disregard that portion of Plaintiff's arguments. See *United States ex rel. Dahlstrom v. Sauk-Suiattle Indian Tribe of Wash.*, No. C16-52, 2019 WL 4082944, at *6 (W.D. Wash. Aug. 29, 2019) ("The court will not allow [plaintiff] to inject a new theory of liability in response to [defendants'] motion for summary judgment."); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (stating that allowing plaintiffs to pursue new theory after close of discovery would prejudice defendant).

[9] Defendants cite *Washington v. Boeing Co.* for the standard for a MWA retaliation claim. 19 P.3d 1041 (2000). However, *Washington* concerns a retaliation claim under the Washington Law Against Discrimination ("WLAD"), not the MWA.

The Court also notes that "[i]t is unclear that this statutory provision [RCW 49.46.100(2)] creates a cause of action." *Blackman*, 466 F. Supp. at 1186. The provision states only that upon conviction of a violation, an employer shall be guilty of a gross misdemeanor. RCW 49.46.100(2). However, Defendants do not argue that Plaintiff cannot bring the claim; on the contrary, they appear to readily concede that a cause of action *does* lie, as the *Blackman* court also appears to accept even as it denied summary judgment for the defendant.

Finally, under the SWTO, "[n]o employer or any other person shall take any adverse action against any person because the person has exercised in good faith the rights protected under [the SWTO]." SMC 14.20.035(B). Retaliation is proven "upon a showing that an employer or any other person has taken an adverse action against a person and the person's exercise of rights protected . . . was a motivating factor in the adverse action, unless the employer can prove that the action would have been taken in the absence of such protected activity." SMC 14.20.035(E). There is a rebuttable presumption of retaliation if the adverse action occurs within 90 days of the affected person's exercise of rights. SMC 14.20.035(D). The employer may rebut the presumption with clear and convincing evidence that the adverse action was taken for a "permissible purpose." *Id.*

### 1.     Whether Plaintiff Engaged in Protected Conduct

Defendants make a brief argument that Plaintiff did not engage in protected activity only because HSA contributions are not "wages." *See* Dkt. No. 162 at 20; Dkt. No. 180 at 13. However, for the reasons explained above, the Court finds that an employee's HSA contributions are "wages." *See supra* Section III.A.2. Therefore, this argument fails.

### 2.     Whether Plaintiff Has Established Sufficient Evidence of Retaliatory Motive

More substantially, Defendants argue that Plaintiff supplies only "speculation," and no evidence, that her termination was motivated by retaliation. *See* Dkt. No. 162 at 20; Dkt. No. 180 at 13–16. In response, Plaintiff argues that questions of fact regarding Defendants' motivation prevent summary judgment on this issue. *See* Dkt. No. 175 at 20–28.[10]

The Court finds that a reasonable jury could conclude that Plaintiff's complaints regarding her HSA contributions were a "causal link" or "motivating factor" in the decision to

---

[10] Plaintiff argues explicitly only about retaliation under the SWTO, though she also brings claims under the MWA and FLSA, which share similar elements. *See* Dkt. No. 175 at 23–28.

terminate Plaintiff, or that she was terminated "because" of her protected activity. Plaintiff

argues that the "temporal proximity" (*i.e.*, less than twenty-three days) between her termination

on July 17, 2019, and a letter from her tax advisor sent to Defendant CDI sometime after June

24, 2019, supports her claim. *See* Dkt. No. 175 at 23–24, 27; *see* Dkt. No. 176-2 (letter); Dkt.

No. 129 ¶ 4.204. Plaintiff also shows that Defendant CDI advertised for her same type of

position two years after her termination. *See* Dkt. No. 176-5 (emails). To be sure, Defendants

dispute the meaning and value of this evidence. *See* Dkt. No. 180 at 13–16. But at this stage,

Plaintiff has presented sufficient evidence of a dispute of material facts regarding the causation

element of her *prima facie* retaliation claim to avoid summary judgment.

Additionally, Defendants' explanation for Plaintiff's termination has shifted during this

litigation. In their first supplemental answer to Plaintiff's Interrogatory No. 11, Defendants stated

that Plaintiff was terminated "as part of a reduction in force based on seniority." Dkt. No. 176-3

at 3. But in their second supplemental answer, Defendants stated that Plaintiff (and other

employees) were terminated "*not based on seniority*, but because their job duties could either be

eliminated or absorbed." *Id.* at 4 (emphasis added). Thus, this is not a situation, as Defendants

contend, "where an employer simply supplemented its explanation." *See* Dkt. No. 180 at 14.

Defendants explicitly disavowed their first explanation and presented an entirely new one,

creating a basis on which a jury could conclude that Defendants' stated reasons are pretextual.

*Cf. Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (finding no basis for

pretext where employee "was told from the outset" both reasons for her termination and

employer did not retract either reason but simply shifted between them). The credibility of

Defendants' non-retaliatory explanations for Plaintiff's termination should be left to a jury.

1

### 3.    Whether Individual Defendants Are Liable

2       The Individual Defendants argue separately that Plaintiff "set[s] forth no basis" for

3  individual liability under the FLSA, MWA, or SWTO. Dkt. No. 167 at 14; *see also* Dkt. No. 183

4  at 7–12. Plaintiff opposes. *See* Dkt. No. 177.

5       The FLSA makes liable any "employer" who violates its antiretaliation provision. *See* 29

6  U.S.C. § 216(b). "Employer" is defined to include "any person acting directly or indirectly in the

7  interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see Arias v. Raimondo*,

8  860 F.3d 1185, 1190 (9th Cir. 2017) ("The wage and hours provisions [of FLSA] focus on de

9  facto employers, but the anti-retaliation provision refers to 'any person' who retaliates."). The

10  MWA and SWTO also define an "employer" using the same "any person" language. *See*

11  RCW 49.46.010(4) (MWA); SMC 14.20.010 (SWTO).

12       For the reasons stated previously, the Court finds that Plaintiff has not provided any

13  evidence to support individual liability for Defendants David Burroughs, John Burroughs, Eric

14  Hobbs, Steve McClure, and Harry Ross. *See supra* Section III.A.6. In addition, Plaintiff admitted

15  in her deposition that she had no reason to believe any of these individuals participated in the

16  decision to terminate her. *See* Dkt. No. 168 at 7 (104:7–17) (D. Burroughs), 7–8 (104:18–105:14)

17  (J. Burroughs), 8 (105:20–23) (Hobbs), 8–9 (105:24–106:2) (McClure), 9 (106:3–7) (Ross).

18       However, the Court finds that Plaintiff has provided sufficient evidence to support

19  potential liability for Defendant James Cotter: In their second supplemental answer to

20  Interrogatory No. 11, Defendants state, "*Cascade's then CEO James Cotter*, Senior VP and

21  Chief Marketing Officer Chris Parkhurst, and Plaintiff's direct supervisor Chief Information

22  Officer Barry Paxman decided to include Plaintiff in the reduction of force." Dkt. No. 176-3 at 4

23  (emphasis added). Defendants' admission that Defendant Cotter was part of a collective decision

24

to terminate Plaintiff (whatever the reason for termination may be) is enough for a reasonable jury to conclude that Defendant Cotter may be personally liable.

Accordingly, as to Plaintiff's retaliation claim, Defendants' motion is DENIED, and the Individual Defendants' motion is GRANTED IN PART as to David Burroughs, John Burroughs, Eric Hobbs, Steve McClure, and Harry Ross, and DENIED IN PART as to James Cotter.

## C.   Breach of Contract Claim

Finally, in Count 24, Plaintiff brings a claim for breach of contract. *See* Dkt. No. 123 ¶¶ 5.45–5.46. Defendants move for summary judgment on this claim. *See* Dkt. No. 162 at 21. They argue that Plaintiff "fails to cite a single contractual obligation, let alone one that was breached." *Id.* Plaintiff's one-sentence response is: "Plaintiff has a claim for breach of the employment contract for failure to pay wages and breach of the HSA contract for failure to deposit the 2017 $600 quarterly compensation payment." Dkt. No. 175 at 28. Defendant replies that this is the "first time" Plaintiff asserts this claim and that Plaintiff still does not provide evidence of a contract or breach. Dkt. No. 180 at 16.

The Court agrees with Defendants. Plaintiff cites to no evidence in the record of an "employment contract" or "HSA contract," let alone a breach of that contract. *See Bailey-Medwell v. Hartford Life & Accident Ins. Co.*, No. C17-1697, 2018 WL 5264335, at *3 (W.D. Wash. Oct. 23, 2018) (citing *Storti v. Univ. of Wash.*, 330 P.3d 159, 163 (Wash. 2014)). The Court will not supply an argument where none is provided.

Accordingly, as to Plaintiff's breach-of-contract claim, Defendants' motion is GRANTED and Count 24 is DISMISSED.

## D.   Affirmative Defenses

Plaintiff moves for summary judgment on certain defenses to her wage claims. *See* Dkt. No. 170 at 18–22; Dkt. No. 184 at 8–9. Defendants oppose. *See* Dkt. No. 173 at 15–17.

1    Regarding Defendants' ERISA-based affirmative defense, Defendants correctly point out

2  that their argument that HSA contributions were lawful deductions and not "wages" is not an

3  affirmative defense but a legal argument against Plaintiff's wage claims. *See* Dkt. No. 173 at 15–

4  16. However, Defendants state that the ERISA defense applies to Plaintiff's then-pending ERISA

5  claim (*see* Dkt. No. 173 at 16 n.12) and previously dismissed severance claims (*see id.*). Plaintiff

6  has now conceded dismissal of her ERISA claim. *See* Dkt. No. 175 at 1. With no remaining

7  claims to which the ERISA defense applies, Plaintiff's motion is GRANTED as to this defense.

8    Regarding Defendants' "unpleaded" affirmative defense that "employer quarterly

9  compensation payments are contingent benefits" (Dkt. No. 170 at 2), Defendants correctly point

10  out that this argument is not an affirmative defense. *See* Dkt. No. 173 at 17. Plaintiff's motion is

11  DENIED as to this "defense."

12    Finally, regarding Defendants' accord-and-satisfaction affirmative defense, the Court

13  previously denied Defendants' request for summary judgment due to a genuine dispute of

14  material fact as to whether there was an agreement that made Plaintiff whole. *See* Dkt. No. 119

15  at 15–18. The genuine dispute of material fact still exists. Therefore, Plaintiff's motion is DENIED

16  as to this defense.

## IV.   CONCLUSION

17

18  Accordingly, it is hereby ORDERED:

19  (1)    Counts 21 (wrongful discharge), 23 (ERISA), and 31 (fraud) are DISMISSED.

20  (2)    As to Plaintiff's wage claims (and related damages claims) (Counts 1–2, 4–7, 11):

21        (a)    Defendants' motion is GRANTED IN PART as to employer

22              contributions and DENIED IN PART as to the remainder.

23        (b)    Individual Defendants' motion is GRANTED as to all Individual

24              Defendants.

      (c)      Plaintiff's motion is DENIED as to the WRA claim and GRANTED IN PART and DENIED IN PART as to the SWTO claim.

(3)      As to Plaintiff's retaliation claim (and related damages claim) (Counts 18–19):

      (a)      Defendants' motion is DENIED.

      (b)      Individual Defendants' motion is GRANTED IN PART as to Defendants David Burroughs, John Burroughs, Eric Hobbs, Steve McClure, and Harry Ross, and DENIED IN PART as to Defendant James Cotter.

(4)      As to Plaintiff's breach-of-contract claim (Count 24), Defendants' motion is GRANTED and the claim is DISMISSED.

(5)      As to Defendants' defenses, Plaintiff's motion is:

      (a)      GRANTED as to Defendants' ERISA-based affirmative defense and the defense is DISMISSED.

      (b)      DENIED as to Defendants' "unpleaded" defense.

      (c)      DENIED as to Defendants' accord-and-satisfaction defense.

(6)      Individual Defendants David Burroughs, John Burroughs, Eric Hobbs, Steve McClure, and Harry Ross are DISMISSED from this action.

This Order resolves Defendants' Motion for Summary Judgment (Dkt. No. 162), Individual Defendants' Motion for Summary Judgment (Dkt. No. 167), and Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 170).

Dated this 8th day of December 2023.

Tana Lin
United States District Judge